**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS/SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THOMAS PAUL CALDWELL and** | § | |
| **JOSHUA JAYME OLIVAREZ** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AUDREY GOSSETT LOUIS,** | § | **Civil Action No.: 5:26-cv-2527** |
| **Individually;** | § | |
| **JENNIFER THARP, Individually and** | § | |
| **in her Official Capacity;** | § | |
| **JAMES STEWART, Individually** | § | **COMPLAINT** |
| **and in his Official Capacity as Sheriff** | § | |
| **of Wilson County, Texas;** | § | |
| **SAMMY MARK McCRARY,** | § | |
| **Individually;** | § | **Jury Trial Demanded** |
| **JESSICA FRAZIER, Individually;** | § | |
| **GREGORY DICKERMAN,** | § | |
| **Individually;** | § | |
| **CLINTON GARZA, Individually;** | § | |
| **JOSEPH DUBS, Individually;** | § | |
| **COMAL COUNTY, TEXAS; and** | § | |
| **WILSON COUNTY, TEXAS,** | § | |
| **Defendants.** | § | |

Plaintiffs allege as follows:

## PLAINTIFFS' EXHIBITS FOR COMPLAINT

Plaintiffs incorporates these exhibits by reference and in full into the Complaint:

Ex. 1 — June 15, 2023, excerpt from audio recording transcript reflecting notice to Defendant Stewart of record discrepancies, sworn contradictions, and reported misconduct within the Wilson;

Ex. 2 — August 2023, email communications with employees from Louis's office containing false representations used to attempt to obtain Caldwell's emails, with Sheriff Stewart copied;

Ex. 3 — October 2023, EEOC Email with report attached sent to Stewart;

Ex. 4 — September 29, 2023, Louis OAG Request;

Ex. 5 — December 2023, Recusal / Appointment Order;

Ex. 6 — November 21, 2024 referral letters Caldwell gave to Texas Ranger Bradley Freeman and FBI Special Agent Monroe Giese requesting investigations from their agencies into public corruption;

Ex. 7 — Bee County Memorandum;

Ex. 8 — June 27, 2025, McCrary 32-page Document;

Ex. 9 — June 27, 2025, McCrary 5-page Document;

Ex. 10 — July 1, 2025, Tharp Transmittal Letter to Judge Russell Wilson;

Ex. 11 — July 2, 2025, Response document filed by attorney Ricardo Cedillo on behalf of Dubs, First public release of report, confirms Tharp release to Dubs;

Ex. 12 — July and October 2025 Bar Grievance Materials

Respectfully submitted this 16th day of April, 2026.

By: /s/ [signature]

Tom Caldwell
Attorney in charge for Plaintiffs
Texas Bar No. 24086154
Tom Caldwell Law PLLC
1427 3rd St.
Floresville, Texas 78114
Tel. (210) 355-5874
Fax. (210) 348-3736
Email: tomcaldlaw@gmail.com

# EXHIBIT 1

## Excerpts taken from Whisper Transcript from Recording of Stewart Meeting on June 15, 2023 in Caldwell's office and from Dickerman's Report and Stewart's statement from Dubs arrest.

## I. NOTICE OF SPECIFIC INCIDENT MISCONDUCT (BOOKING / CUSTODY IRREGULARITIES)

—False custody record / unlawful detention exposure:

"It appears that her liberty was denied for 22 hours… our records show they were."

"We checked the next morning and it showed her in a cell… she never even made it back to your jail."

"This right here looks like a full meal deal… when she didn't, in fact, go through anything like anybody else."

—System failure acknowledged as actionable issue:

"If we short walk somebody, we need to make sure this is done… because this right here… is concerning."

## II. NOTICE OF EVIDENCE / RECORD FAILURES

—Missing fingerprint evidence:

"There's no fingerprints in your system… We don't know where the fingerprint card went."

—Failure to properly enter records:

"That should have been entered in the system as soon as it hits Heather's office."

## III. NOTICE OF CRIMINAL CONDUCT BY EMPLOYEE

—Explicit statement of ongoing criminal case:

"This is an open criminal case right now… a legitimate criminal case… against one of your employees."

## IV. NOTICE OF FALSE STATEMENTS / FABRICATION / INVESTIGATIVE MISCONDUCT

—Direct accusation against lieutenant:

"He lied about it… that right there… fits making a false statement to an investigator."

—Specific false statement identified:

"He said the only LE interaction she had was with Smalls… and that's not true."

—Corroborating contradictory evidence:

"I've got a video… I've got a statement… she's going to say what happened."

—Failure to document officer conduct:

"He didn't do a report? Not at all."

## V. NOTICE OF PATTERN / CULTURE / DEPARTMENT-WIDE PROBLEMS

—Broad dissatisfaction and complaints:

"Everyone's mad at y'all… HR is mad… we're not getting documents…"

—Morale and retention issue:

"You've got a morale problem… you keep losing people left and right."

## VI. NOTICE OF POLICY / SUPERVISION FAILURES

—Delegation failure:

"I think you're delegating responsibilities to certain people you might want to rethink."

—Failure to control subordinates:

"You back them 100%."

## VII. NOTICE OF IMPROPER DISCLOSURE / MISUSE OF INFORMATION

—Confidential records improperly released:

"These are confidential and not releasable… and these were released… he's going to sue the county."

—Criminal statutory violations identified:

"He violated two statutes… misuse of information."

—Admission of improper release by Stewart:

"We shouldn't have released that type of information."

## VIII. NOTICE OF SEXUAL HARASSMENT / EMPLOYMENT LIABILITY

—Active complaints reported:

"We've gotten some complaints… inappropriate statements… inappropriate touching."

—Fear preventing reporting:

"The complainants are afraid to come forward… they're afraid."

## IX. NOTICE OF SYSTEMIC LIABILITY EXPOSURE

—Explicit liability warning:

"That right there is a big liability… for you."

"The moment anything else happens, the county's liable."

## X. NOTICE OF TRAINING / POLICY DEFICIENCIES

—Training issue explicitly identified:

"This is a training issue."

—Need for corrective measures:

"Training on records release… something to that effect."

—Operational defect creating constitutional risk:

"If we check someone in, does it put them in a cell… that's a glitch… that's a risk."

**JIM STEWART**
**WILSON COUNTY SHERIFF'S OFFICE**
**800 TENTH ST.**
**FLORESVILLE, TEXAS 78114**
**830-393-2535**

Written Statement

On June 6th, 2023, about mid- afternoon, Investigator Olivarez stopped by my office and advised me he was going to see the Judge to get a warrant issued for [redacted]. A short time later he returned with the warrant.

Lt. Dubs was seated in my office and Investigator Olivarez was standing in the door. I instructed Lt. Dubs to make sure a magistrate was available. Then contact [redacted] to notify her that a warrant had been issued and give her the opportunity to self- surrender. Thus being able to expedite the service of the warrant.

Lt. Dubs indicated he understood the instruction. Investigator Olivarez stated his office would not have an issue with the warrant being served in that manner. They left my office and I had no further interaction with regards to the service of the warrant.

About a week later Tom Caldwell, County Attorney, asked me to come by his office. He advised me that his office had opened a criminal investigation into Lt. Dubs, regarding his actions in relation to the service of the warrant on [redacted]

His recommendation was for me to ask Lt. Dubs to resign, due to the criminal investigation and possible charges.

On June 20th, 2023 I called Lt. Dubs into my office and advised him of the ongoing criminal investigation and offered him the opportunity to resign. Lt Dubs asked what crime he had committed. I told him I did not know the statute, but it pertained to misconduct in the service of the warrant on [redacted]. Lt. Dubs stated he had done nothing wrong and was not going to resign. He asked for more information about the investigation and was advised I could not disclose any information on an open investigation.

Lt. Dubs was placed on Administrative Leave with pay, pending the outcome of the investigation.

Jim Stewart
Sheriff, Wilson County

arrest report.

1.5 On January 12, 2024, I conducted an interview with Wilson County Sheriff, Jim Stewart. The interview was conducted at the Wilson County Sheriff's Office in Floresville. The following details are not a word for word transcription, but a summary of the interview with Stewart. Stewart advised up to about seven months ago, he had a really good professional relationship with Caldwell. Stewart wasn't quite sure how the relationship between his office and the county attorney's office went bad, but it all started when Dubs was arrested. Stewart is not aware of any other criminal complaints that Caldwell has generated against any other Wilson County employees in the past. Stewart is not aware of any person that brought any criminal allegations to Caldwell regarding Dubs. Stewart became aware of Dubs' criminal complaint when Caldwell called him and requested for Stewart to meet him in his office. Caldwell handed Stewart a copy of the email that Olivarez sent to Dubs requesting any supplemental reports and/or body camera footage of the arrest. Caldwell told Stewart that Dubs lied when he responded to Olivarez's email. Stewart asked Caldwell what he lied about. Caldwell told Stewart he didn't want to go there. Stewart felt that Caldwell was implying that he would be interfering with his investigation when questioning him. Caldwell told Stewart he needed to give Dubs an opportunity to resign or fire him. Stewart called Dubs into his office that same day and advised him of the criminal allegation against him and told him he would have the opportunity to resign. Dubs told Stewart he wasn't going to resign because he hasn't done anything wrong. Stewart said he didn't have any evidence to fire Dubs, therefore placed Dubs on administrative leave. Stewart contacted Caldwell and told him he needed to have everything he had related to Dubs' investigation, however got no response.

1.6 Stewart held the commission for the Wilson County Investigators that worked for Caldwell and requested to speak with the investigator working Dubs' investigation. Caldwell told Stewart he could not speak to the investigator and any contact he wanted with the investigator had to go through him. Stewart was upset that one of his investigators was working an investigation without his knowledge. Stewart requested for an outside agency to investigate the criminal allegations on Dubs and contacted the Texas Rangers. Shortly after contacting the Rangers for an outside agency to investigate, there was a criminal complaint and warrant issued for Dubs.

1.7 On June 19, 2023, Caldwell requested to meet with Stewart and Chief Deputy Garza, and they met in Chief Garza's office. Caldwell advised Stewart of some human resource complaints involving Dubs and another patrol sergeant, [redacted] Caldwell also advised Stewart and Garza of potential criminal charges against Garza for releasing some documents. Stewart said he was not aware of any human resource investigations involving any of his deputies before this meeting. Stewart said that there was an extensive human resource investigation on his employees, and he had no knowledge of the specific allegations, only they were involving sexual harassment allegations. Stewart said Caldwell told him that if Dubs was gone these other allegations would go away.

1.8 Stewart was made aware of the criminal charges involving [redacted]

# EXHIBIT No. 2

## Email exchange between Caldwell, Stewart, Louis and staff, and Wilson County IT regarding misrepresentations made to County employees in attempt to access prosecutor files. August -Nov 2023

**From:** [redacted]
**Subject:** FW: San Antonio Express PIA
**Date:** August 1, 2023 at 4:01 PM
**To:** Tom Caldwell tcaldwell@wilsoncountytx.gov

JH

**From:** William Richmond <william.richmond@81stda.org>
**Sent:** Tuesday, August 1, 2023 3:33 PM
**To:** [redacted]
**Cc:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Subject:** San Antonio Express PIA

[redacted]

We've received a request from the San Antonio Express-news for all emails between Jim Stewart, Clint Garza, and any employees from the Wilson County Attorney's Office, including Tom Caldwell, from June 1, 2023-July 20, 2023 (so only emails that include all three- Jim, Clint and WCAO employee). If you can run the request, and also tabulate the amount of time it took you to do the request, plus time that a server had to run to process the request, that'd be great.

Best,

J. William Richmond
Assistant District Attorney
81st Judicial District Attorney's Office
1105 A Street
Floresville, TX 78114
Phone: (830) 393-2200
Fax: (830) 393-2205

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not addressed to you directly, then please contact me immediately.

**From:** [redacted]
**Subject:** FW: San Antonio Express PIA
**Date:** August 2, 2023 at 1:19 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov, Tom Caldwell tcaldwell@wilsoncountytx.gov

JH

Jim / Tom, We received the below Open Record Request for e-Mails from your offices. Please let me know how you would like me to proceed.

Thank you,

[redacted]
--IT Director
--Wilson County, Texas

---

**From:** William Richmond <william.richmond@81stda.org>
**Sent:** Wednesday, August 2, 2023 10:46 AM
**To:** [redacted]>
**Cc:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Subject:** RE: San Antonio Express PIA

[redacted]

Instead of running a query for all emails between Jim Stewart, Clint Garza, and any employee from the WCAO, please run a query for any email between Jim Stewart and/or Clint Garza, and any WCAO employee. Also, I spoke with the requestor, who has agreed to narrow her request from any WCAO employee to just the attorneys employed by WCAO (this would include Tim Caldwell.

Best,

J. William Richmond
Assistant District Attorney
81st Judicial District Attorney's Office
1105 A Street
Floresville, TX 78114
Phone: (830) 393-2200
Fax: (830) 393-2205

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not addressed to you directly, then please contact me immediately.

---

**From:** William Richmond
**Sent:** Tuesday, August 1, 2023 3:28 PM
**To:** [redacted]
**Cc:** Jim Stewart <JStewart@wilsoncountytx.gov>

**From:** **William Richmond** william.richmond@81stda.org [redacted]
**Subject:** Public Information Request, San Antonio Express
**Date:** August 3, 2023 at 5:54 PM
**To:** Tom Caldwell tomcaldlaw@gmail.com
**Cc:** Jim Stewart JStewart@wilsoncountytx.gov

Mr. Caldwell,

I'm assisting the Sheriff's Office with an open records request that they received, and which I've attached to this email. The requestor has asked for all communications between Jim Stewart, Clint Garza, and employees of the Wilson County Attorney's Office from June 1-July 27, 2023. The requestor has agreed to narrow the scope from employees to just attorneys with the County Attorney's Office. Once I have gathered the responsive information, I will email it to you, or if the file is too large, I will copy it onto a USB stick and drop it off at the County Attorney's office, and you may determine whether or not to ask for an Attorney General determination. If you do decide to ask for a determination, please let me know so that I can hold off on turning anything over until the Attorney General has made their decision.

Best,

J. William Richmond
Assistant District Attorney
81st Judicial District Attorney's Office
1105 A Street
Floresville, TX 78114
Phone: (830) 393-2200
Fax: (830) 393-2205

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not addressed to you directly, then please contact me immediately.

San Antonio Express-News

ExpressNews.com | mySA.com

Emilie Eaton, Investigative Reporter
420 Broadway Street, San Antonio, TX 78205
Email: eeaton@express-news.net
Cell: 707-366-2248

July 17, 2023

Wilson County Sheriff's Office
Attn: [redacted], Records Clerk
800 10th Street, Floresville, TX 78114

To whom it may concern:

I hope this letter finds you well. I am writing to make a formal request for public records under the Texas Public Information Act (TPIA), Chapter 552 of the Texas Government Code. Specifically, I am requesting:

1. All communications, including but not limited to emails and text messages, exchanged between Jim Stewart, Clint Garza, and any employees of the Wilson County Attorney's Office, including County Attorney Tom Caldwell, from June 1, 2023 to the date that this request is processed.

To facilitate the efficient processing of this request, if the County seeks to deny any or all of my request, I ask that you contact me prior to requesting a ruling from the Office of the Attorney General to see if I would be willing to modify my request. Please cite each specific exemption you feel justifies the refusal to release the requested records.

I also request that any potential fees for duplication or administrative costs be waived. Given the public importance of the requested information, I believe that a fee waiver is justified under Section 552.267 of the Texas Government Code.

If you have any questions regarding this request, please do not hesitate to contact me via the information provided above. I appreciate your attention to this matter and look forward to receiving a response within the timeframe specified by the TPIA.

Sincerely,

Emilie Eaton

Emilie Eaton

**From:** **Tom Caldwell** tcaldwell@wilsoncountytx.gov
**Subject:** Re: Public Information Request, San Antonio Express
**Date:** August 3, 2023 at 6:31 PM
**To:** William Richmond william.richmond@81stda.org
**Cc:** Jim Stewart JStewart@wilsoncountytx.gov

Mr. Richmond or Sheriff Stewart,

What day was this request received by the Sheriff's Office? If you do not know, please identify who would know and provide their number.

Best,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

> On Aug 3, 2023, at 5:54 PM, William Richmond <william.richmond@81stda.org> wrote:
>
> <DOC072023-07202023113944.pdf>

**From:** **Tom Caldwell** tcaldwell@wilsoncountytx.gov
**Subject:** Re: Public Information Request, San Antonio Express
**Date:** August 7, 2023 at 12:17 PM
**To:** William Richmond william.richmond@81stda.org, Audrey Louis audrey.louis@81stda.org, Leslie Carranza leslie.carranza@81stda.org
**Cc:** Jim Stewart JStewart@wilsoncountytx.gov, Henry L. Whitman, hwhitman@wilsoncountytx.gov, [redacted]e [redacted]

Mr. Richmond,

I apologize, but I am confused. As your email is worded, you state you are assisting the SO with an PIA request made to THEM. The attachment corroborates that. However, your previous email sent to [redacted] with Jim Stewart cc'ed that specifically stated that the PIA request from the EN was made to the DA's Office. Why the discrepancy?

Also, the email you sent to [redacted] did not include anyone from my office. It is highly concerning that the DA's office would undertake this without looping in the Office of the County Attorney. Please provide an explanation for this.

These requested items are not something that would be within your agencies purview to provide or even receive from Wilson County. The request is for our emails. Not the 81st DA's Office. My understanding is your agency has no jurisdictional civil authority to respond on Wilson County or the Sheriff's behalf absent MY expressly requesting your assistance and consenting to Ms. Louis or her designees operating under my civil authority. If I am incorrect about this, please point me to the statutory authority that clarifies the point. To that end, I appreciate you trying to help, but my office will handle this open records request and response to the requestor. Since I was looped in late, the ten days to request an exception letter has passed and the County now has to respond.

To be perfectly and crystal clear—myself nor [redacted] will provide your office with any responsive material to this request or any others you may receive that are not directly connected to the 81st and a County department. Then, we would only do so after we reviewed the material and discussed it with your office. **If you have already received documents or anything else potentially response from the Sheriff or anyone from his department, I need you to forward those materials to me immediately, and then destroy any copies on your end.**

In closing, please do not make any inference about the tone of this email. I merely am making sure this is concise and clear. This never should have been brought to the DAs Office. The County is dealing with numerous issues right now involving this Sheriff's Administration that your office would be well-advised to stay clear of.
That being said, I mean no personal affront to you sir. You are just doing your job. I remain,

Respectfully,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

> On Aug 3, 2023, at 5:54 PM, William Richmond <william.richmond@81stda.org> wrote:
>
> Mr. Caldwell,
>
> I'm assisting the Sheriff's Office with an open records request that they received, and

**From:** **Jim Stewart** JStewart@wilsoncountytx.gov
**Subject:** Re: Public Information Request, San Antonio Express
**Date:** August 9, 2023 at 2:55 PM
**To:** Tom Caldwell tcaldwell@wilsoncountytx.gov, William Richmond william.richmond@81stda.org, Audrey Louis audrey.louis@81stda.org, Leslie Carranza leslie.carranza@81stda.org
**Cc:** Henry L. Whitman, Jr. HWhitman@wilsoncountytx.gov, [redacted]

At the time the request was received I had been notified by the County Attorney that his office would not represent the Sheriff's Office. I took the open records request to the District Attorney's office for advice and direction. The District Attorney's office agreed to handle the request.

Get Outlook for iOS

---

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, August 7, 2023 12:17:19 PM
**To:** William Richmond <william.richmond@81stda.org>; Audrey Louis <audrey.louis@81stda.org>; Leslie Carranza <leslie.carranza@81stda.org>
**Cc:** Jim Stewart <JStewart@wilsoncountytx.gov>; Henry L. Whitman, Jr. <HWhitman@wilsoncountytx.gov>; [redacted]
**Subject:** Re: Public Information Request, San Antonio Express

Mr. Richmond,

I apologize, but I am confused. As your email is worded, you state you are assisting the SO with an PIA request made to THEM. The attachment corroborates that. However, your previous email sent to [redacted] with Jim Stewart cc'ed that specifically stated that the PIA request from the EN was made to the DA's Office. Why the discrepancy?

Also, the email you sent to [redacted] did not include anyone from my office. It is highly concerning that the DA's office would undertake this without looping in the Office of the County Attorney. Please provide an explanation for this.

These requested items are not something that would be within your agencies purview to provide or even receive from Wilson County. The request is for our emails. Not the 81st DA's Office. My understanding is your agency has no jurisdictional civil authority to respond on Wilson County or the Sheriff's behalf absent MY expressly requesting your assistance and consenting to Ms. Louis or her designees operating under my civil authority. If I am incorrect about this, please point me to the statutory authority that clarifies the point. To that end, I appreciate you trying to help, but my office will handle this open records request and response to the requestor. Since I was looped in late, the ten days to request an exception letter has passed and the County now has to respond.

To be perfectly and crystal clear—myself nor Mr. Holcombe will provide your office with any responsive material to this request or any others you may receive that are not directly connected to the 81st and a County department. Then, we would only do so after we reviewed the material and discussed it with your office. **If you have already received documents or anything else potentially response from the Sheriff or anyone from his department, I need you to forward those materials to me immediately, and then destroy any copies on your end.**

In closing, please do not make any inference about the tone of this email. I merely am making sure this is concise and clear. This never should have been brought to the DAs Office. The County is dealing with numerous issues right now involving this Sheriff's Administration that your office would be well-advised to stay clear of.
That being said, I mean no personal affront to you sir. You are just doing your job. I remain,

Respectfully,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means

**From:** **William Richmond** william.richmond@81stda.org
**Subject:** RE: Public Information Request, San Antonio Express
**Date:** August 9, 2023 at 3:18 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov, Tom Caldwell tcaldwell@wilsoncountytx.gov, Audrey Louis audrey.louis@81stda.org, Leslie Carranza leslie.carranza@81stda.org
**Cc:** Henry L. Whitman, Jr. HWhitman@wilsoncountytx.gov, [redacted]

---

Mr. Caldwell,

After further speaking with Sheriff Stewart, we are in agreement that the Wilson County Attorney's Office should handle this open records request.

I have received a series of printouts and emailed screenshots of text messages from the Sheriff's Office that were potentially responsive to the request. Since you're handling the request on behalf of the Sheriff's Office, I will drop it off at the County Attorney's Office for your review.

Best,

J. William Richmond
Assistant District Attorney
81st Judicial District Attorney's Office
1105 A Street
Floresville, TX 78114
Phone: (830) 393-2200
Fax: (830) 393-2205

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not addressed to you directly, then please contact me immediately.

---

**From:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Sent:** Wednesday, August 9, 2023 2:55 PM
**To:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>; William Richmond <william.richmond@81stda.org>; Audrey Louis <audrey.louis@81stda.org>; Leslie Carranza <leslie.carranza@81stda.org>
**Cc:** Henry L. Whitman, Jr. <HWhitman@wilsoncountytx.gov>; [redacted]
**Subject:** Re: Public Information Request, San Antonio Express

At the time the request was received I had been notified by the County Attorney that his office would not represent the Sheriff's Office. I took the open records request to the District Attorney's office for advice and direction. The District Attorney's office agreed to handle the request.

Get Outlook for iOS

---

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, August 7, 2023 12:17:19 PM
**To:** William Richmond <william.richmond@81stda.org>; Audrey Louis <audrey.louis@81stda.org>; Leslie Carranza <leslie.carranza@81stda.org>

**From:** **Tom Caldwell** tcaldwell@wilsoncountytx.gov
**Subject:** Re: Public Information Request, San Antonio Express
**Date:** August 9, 2023 at 3:19 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov
**Cc:** William Richmond william.richmond@81stda.org, Audrey Louis audrey.louis@81stda.org, Leslie Carranza leslie.carranza@81stda.org, Henry L. Whitman, Jr. HWhitman@wilsoncountytx.gov, [redacted], Clint Garza CGarza@wilsoncountytx.gov, [redacted]

Sheriff Stewart,

I understand what you did Sir. That was crystal clear. However, the letter I provided informed you to retain counsel. You will probably need it moving forward for a multitude of things. The DA cannot represent you or perform civil legal work on your agencies behalf. She lacks the authority unless I request her to. Given her track record of handling sensitive information, I would never do that. My letter to you was very detailed on how you are to proceed. I recommend you bring up the issue in the next Commissioner's Court. I am happy to be there to explain or answer any questions, including your own.

Further, the request implicates another County office of which you do not have any right or authority to agree to allowing an outside agency access to their emails. A prosecuting agency, no less. The very same one that arrested one of your officers six weeks ago, and that you feel is persecuting you and your Chief Deputy. To make matters worse, the DA's Office misrepresented the facts surrounding the request when the ADA emailed our IT person to convey this was THEIR request made TO them by the SA Express News that THEY had to process. Al the while, my agency was kept out of the loop. Sir, I am having difficulty thinking this wasn't just a coincidence or a misunderstanding. This is the exact same thing that happened in the Dubs case. We have information about highly irregular behavior and everyone else involved wants to explain it as "misunderstandings." I want an explanation from the 81st DA's office. Not you.

In the meantime, if your agency receives anything unrelated to a felony pending in the 81st, but involving the County, I will continue to provide advice to [redacted] on what she should do as I have done since I got here. As my letter stated, I am still dedicated to the success of your agency and its employees. So consider that portion of my letter to be modified by this letter. I have served your agency for years before you got here and never had any issues with open records requests or otherwise.

Finally, we are finalizing the human resources report, and would like to set up a meeting in the next few weeks to sit down with you to go over the findings and the recommendations and suggestions for improvement to avoid what happened from reoccurring. Let me know. I remain,

Respectfully,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

> On Aug 9, 2023, at 2:55 PM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:
>
> At the time the request was received I had been notified by the County Attorney that his office would not represent the Sheriff's Office. I took the open records request to the District Attorney's office for advice and direction. The District Attorney's office agreed to handle the request.

**From:** **Tom Caldwell** tcaldwell@wilsoncountytx.gov
**Subject:** Re: Public Information Request, San Antonio Express
**Date:** December 1, 2023 at 10:43 PM
**To:** Audrey Louis audrey.louis@81stda.org, William Richmond william.richmond@81stda.org

Ms. Louis,

To date, I have not received a response to the below email sent to you both August 7, 2023, where I asked your agency to clarify a very significant misrepresentation your Assistant District Attorney (Richmond) made to the IT Director for Wilson County concerning open records requests the District Attorney's Office alleged received from the San Antonio Express News. The representation made was clearly false. The DA's Office never received the request from the Express News. The Sheriff's Office had and none of the information requested involved your office at all.

Using this misrepresentation, your office requested emails to and from an Elected Prosecutor (Me), who you knew was part of a team of professionals conducting an internal County human resources investigation that (before your intrusion) didn't involve any person or persons from your office. Further, your Assistant included the Sheriff in his email to our IT Director, but omitted the one person who actually is charged with responding to open records requests that involve Wilson County and also who has duties under the Rules of Professional Conduct to protect client material and communications—ME.

You knew of the internal investigation, because the Sheriff and other employees and former employees admitted that they had or were receiving guidance from you about how to respond to the investigation. As you should know, you are prohibited from engaging in the private practice of law under the Professional Prosecutors Act, unless requested by myself as my designee or the statute authorizes it for a specific purpose. That is exactly what you were doing when "guiding" or "advising" any of these persons.

Further, because I did not learn of the request until after the ten business day period had expired, Wilson County was deprived of the ability to seek a ruling from the OAG about the material and I was required to release it all. I had no issue doing so because I think open government is very important, but these acts could have prevented me from representing my client, the County of Wilson fully. Thankfully, the requestor at the Express News was gracious and understanding enough to allow for redactions of items of a very sensitive nature involving our employees.

So, for the SECOND time maam, I am respectfully requesting an explanation from you about these actions.

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

> On Aug 7, 2023, at 12:17 PM, Tom Caldwell <tcaldwell@wilsoncountytx.gov> wrote:
>
> Mr. Richmond,
>
> I apologize, but I am confused. As your email is worded, you state you are assisting the SO with an PIA request made to THEM. The attachment corroborates that. However, your previous email sent to [redacted] with Jim Stewart cc'ed that specifically stated that the PIA request from the EN was made to the DA's Office. Why the discrepancy?

# EXHIBIT No. 3

# Email and Final EEO Report sent to Stewart in October 2023

**From:** **Tom Caldwell** tcaldwell@wilsoncountytx.gov [redacted]
**Subject:** Final Report concerning interagency complaints
**Date:** October 17, 2023 at 7:26 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov
**Cc:** Henry L. Whitman, hwhitman@wilsoncountytx.gov
**Bcc:** Josh Olivarez jolivarez@wilsoncountytx.gov

---

Sheriff Stewart,

Please see the attached final report that outlines the investigation into the complaints received in June of 2023 and about the mishandling of documents in June and December of 2022. I will be sending a copy under separate cover to the County Commissioners that doesn't contain this narrative. I also am required to send a copy of the report to the six complainants along with instructions on what their rights are. I do not want any of them to say the County did not properly advise them on what their options were.

The listed goals of the investigation have been met, and the findings contained within it are all supported by evidence that was provided to the Committee or myself. This evidence has been collected and is to remain in the confidential litigation file we opened in the event that any of these persons elect to sue you, Garza, the SO, or the County. All interviews were recorded and will remain in this file, however, if [redacted] wants a copy of her interview, she is free to make a request in writing and it will be provided to her. This option is available for yourself and the Chief as well if you like.

I hope you review this report with an open mind and use it to make positive change in your agency. That was always its purpose.

On a different note, the report as you can see is very anonymous. No one involved except you, Chief Deputy Garza, and myself are identified by name. When this all began, I told you and the Chief both about the nature of the complaints, but want to take this time to make sure that it is clear in writing that the initial complaint received by [redacted] concerned inappropriate conduct by Lt. Joseph Dubs, and [redacted] The conduct complained of by both was found to have happened.

Further, the release of documents by Chief Garza also was confirmed to have occurred. The fact pattern concerning the manner the documents were collected and then released was also confirmed by an outside agency (TCOLE) to be an offense. Your Chief, during his interview, stated he disagreed with how you handled the [redacted] matter, and he took it upon himself to fix that. And here we are.

Out of professional courtesy, I am letting you know that the people in this email, and my Chief Investigator are the only persons aware that TCOLE was provided information and confirmed the offense. As you know, TCOLE does not handle criminal matters, we reached out to them to determine the proper procedures for placement of documents in a file and provided them with the information about what happened here. They came back with the opinion an offense occurred, which incidentially was the same offense I informed you and Garza of in June. I have attached it here as well.

We did not request any action be initiated on their end. We also have not initiated any as well. This is a different scenario than what occurred with Dubs. So, I am going to defer to you to determine what to do about these issues in your department.

My office remains available to provide assistance or advice to you, but only provided you are actually going to heed it.

Respectfully,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at

that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

**WCSO HR Report and Findings FINAL.pdf**

---

▼ Code GV - Government Code

- **Title 5.:** Open Government; Ethics
- **Subtitle A.:** Open Government
- **Chapter 552.:** Public Information
- **Subchapter I.:** Criminal Violations

**§ 552.352.** - Distribution Or Misuse Of Confidential Information.

(a) A person commits an offense if the person distributes information considered confidential under the terms of this chapter.

(a-1) An officer or employee of a governmental body who obtains access to confidential

▼ Code GV - Government Code

- **Title 5.:** Open Government; Ethics
- **Subtitle A.:** Open Government
- **Chapter 552.:** Public Information
- **Subchapter I.:** Criminal Violations

**§ 552.352.** - Distribution Or Misuse Of Confidential Information.

(a) A person commits an offense if the person distributes information considered confidential under the terms of this chapter.

(a-1) An officer or employee of a governmental body who obtains access to confidential information under Section 552.008 commits an offense if the officer or employee knowingly:

(1) uses the confidential information for a purpose other than the purpose for which the information was received or for a purpose unrelated to the law that permitted the officer or employee to obtain access to the information, including solicitation of political contributions or solicitation of clients;

(2) permits inspection of the confidential information by a person who is not authorized to inspect the information; or

(3) discloses the confidential information to a person who is not authorized to receive the information.

(a-2) For purposes of Subsection (a-1), a member of an advisory committee to a governmental body who obtains access to confidential information in that capacity is considered to be an officer or employee of the governmental body.

(b) An offense under this section is a misdemeanor punishable by:

(1) a fine of not more than $1,000;

(2) confinement in the county jail for not more than six months; or

(3) both the fine and confinement.

(c) A violation under this section constitutes official misconduct.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 249, Sec. 7.01, 7.02, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 1089, Sec. 2, eff. Sept. 1, 2003.

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

| | |
|---|---|
| **To:** | **Sheriff Jim Stewart, Wilson County Judge, and Members of Wilson County Commissioner's Court** |
| **From:** | **Tom Caldwell, Wilson County Attorney** |
| **Copies:** | **Human Resources Investigative Committee, file** |
| **Subject:** | **Final report concerning human resources inquiry into complaints received about members of the Wilson County Sheriff's Office** |
| **Date:** | **October 17, 2023** |

## PREFACE AND PURPOSE

1. This report is the culmination of an internal human resources investigation that was initiated in late June of 2023, by Tom Caldwell, the Wilson County Attorney, in response to numerous internal complaints potentially involving the Wilson County Sheriff's Office (hereafter "WCSO") senior leadership and regarding allegations concerning—to wit: the release of confidential material of a highly sensitive and private nature concerning employees to outside third parties; and how the release of this information had discouraged reporting of continuing practices within the department that appear to have created an ongoing hostile work environment for sworn and unsworn employees of the Wilson County Sheriff's Office. This report has been prepared by the County Attorney, based upon the evidence collected by the special purpose committee appointed to neutrally gather facts and information to aid him in writing this report.

2. The purposes of the investigation was to investigate, confirm or rule out allegations made, to identify and isolate the nature and scope of any violations, and finally if any allegations were confirmed—to offer recommendations to the agency to remediate any issues to protect the complainants, future employees, and the agency moving forward to comply with employment discrimination laws and county policies. The purposes and scope of this inquiry was not to punish or assign fault upon anyone, or criticize or disrupt the leadership or daily operations of the department; it was always to focus on "What happened or is going on?" and "How do we

improve moving forward?" This benefits the agency in particular and ultimately all County departments. All the information contained within this report is supported by evidence and statements collected, and had been preserved in accordance with County policy and the law.

3. The nature of the complaints, identities of the offenders, and the focus and goals of the inquiry was clearly explained to the Sheriff and Chief Deputy before the inquiry began and was stressed to them throughout the investigation. The identities of the original complainant and subsequent complainants were withheld from the Sheriff and Chief Deputy. Participation by employees of the WCSO was strictly voluntary, but the Sheriff was urged to cooperate and to encourage his staff to cooperate as well. The Sheriff pledged his full support but numerous interviewees reported throughout the interview process that the Sheriff and Chief Deputy were consistently unclear or vague with WCSO employees about the reasons and purposes of the investigation and the role of the County Attorney's Office in it. Because of the recent arrest of a WCSO deputy, many employees were under the impression the inquiry was of a criminal nature and they might potentially be in trouble.

4. Based upon these reports from interviewees, it seemed the Sheriff and Chief Deputy took little to no action to dispel employees misconceptions about the purpose of the inquiries despite being expressly advised of the purposes by the County Attorney and the committee. At times, it appeared that their behavior seemed to encourage these misconceptions. For example, the Sheriff on numerous occasions told his staff that his offices were "bugged." The Sheriff and Chief Deputy also conducted most group meetings outside of the Sheriff's offices, in the parking lot or auto shop, often in triple digit heat.

5. Whether the Sheriff actually believed that the County Attorney or some other agency had actually installed listening devices in his offices was not determined, as it was not relevant to the inquiries before the committee. However, these type of actions had the net effect of creating resistance and fear that impeded the inquiry significantly because most employees were nervous about even having to speak to the human resources committee. For all they have done, the committee is to be commended for their professionalism, patience, and empathy. Once these employees learned what the actual reasons for their interviews was, almost all were very cooperative and forthright.

## BACKGROUND

6. Issues were first reported on or around June 14, 2023, after a WCSO employee contacted Human Resources Director Jalyn Bodiford by phone after hours. The employee complained about two uniformed employees in the Criminal Investigations Division (CID). The nature of the complaints were language from one Deputy that the complainant felt was inappropriate, offensive, and degrading to her and other females. Her second complaint was about another employee who she stated touched her person often in a manner that she found to be inappropriate and offensive. The employee stated she was afraid to report the conduct to the leadership at the WCSO because of the way the Sheriff and Chief had handled a previous situation where four females had filed written complaints about sexual harassment and someone had released their statements and everyone in the agency knew, including the subject of the complaints. She also did not want to make an internal report because the subjects of her complaint were in her opinion, favored and would be protected by the Chief.

7. At the conclusion of the call, Ms. Bodiford immediately notified County Attorney Tom Caldwell, who launched at that time, an informal inquiry. This consisted of him speaking to numerous WCSO employees, many of which circumstantially confirmed the subject matter of her complaints about the inappropriate behavior and language and that the individual had spoken to others about her complaints. These short interviews with current and former employees also confirmed the release of the statements written by other female employees in June of 2022. The release was apparently well known within the organization and other area police departments, but the Director of Human Resources was not notified of it until this employee contacted her approximately a year later.

8. The County Attorney, on June 15th and 19th 2023 respectively, briefed and attempted to assist the Sheriff and Chief Deputy to handle the complaints internally. However, the County Attorney noted that both senior leaders of the WCSO were resistant to cooperating with any human resources based inquiries into the employment complaints that had been received outside of their agency. Both the Sheriff and Chief Deputy made it clear they did not want County human resources examining anything in their department. Thus, given the nature of the complaints, and the resistance by the Sheriff and Chief Deputy that the County Attorney encountered, the County Attorney, after conferring with the Wilson County Judge, decided to proceed forward with initiating a formal investigation into the workplace complaints that had been received as is required by law and policy.

## DETAILS OF THE INVESTIGATION

9. To avoid any appearances that the investigation was not impartial or was unfair, on June 26, 2023, the County Attorney appointed a three person committee of inter-county professional or department-head level personnel with human resources and legal experience to initiate an internal human-resources focused investigation into the complaints and issues that had been identified informally. The investigative committee consisted of an Assistant County Attorney, the Director of Human Resources, and the Wilson County Auditor, herein after referred to as the "HR Committee". The HR Committee was instructed by the County Attorney that the sole purposes of the investigation was to gather information to:

*a.) confirm or rule out any allegations of sexual harassment, discrimination, retaliatory employment practices, or improper handling of such allegations;*
*b.) identify and isolate the nature and breadth of any possible policy violations;*
*c.) preserve all records or evidence in the event they were needed later; and*
*d.) if any allegations were confirmed—to offer recommendations to the agency of corrective actions to remediate the issues to protect the complainants, future employees, and the agency moving forward, and to comply with employment discrimination laws and county policies.*

10. Certain individuals were identified as potentially having relevant information regarding the nature of the complaints. Some individuals had confided to the original complainant that they were willing to be interviewed, but only if they could do so with some degree of anonymity from the WCSO administration. Others were selected at random to provide the HR Committee with a broad spectrum of former and current employees of the WCSO to provide their insight on the current working environment and also to best protect the individuals identities who wanted to speak about their experiences without fear of retaliation. In-person interviews were scheduled and conducted of the following individuals: the Sheriff and Chief Deputy, eleven current employees, and five former employees. The County Attorney and an Investigator from his office interviewed another former employee separately. Also reviewed was the personnel file of the former employee who had resigned from the department, text messages between the Sheriff and County Attorney, a criminal complaint against the Sheriff and Chief Deputy filed by the former employee who had resigned, email correspondence between this individual and the Chief Deputy, and audio recordings made during interviews and a video recording provided by one complainant.

11. The interviews were conducted with all witnesses separately, except for a married couple. With the exception of possibly seeing each other in passing between interviews, none of the interviewees were aware of any others being interviewed. All live interviews were recorded to aid the HR Committee in capturing the interview subject matter and to prevent incorrect reporting. All interviewees were informed that the interview was voluntary, but the subject matter was strictly confidential.

**Issue 1- Were documents of a sensitive and confidential nature concerning internal complaints mishandled or released by a member of the WCSO Administration?**

**Conclusion— YES**

12. The first part of the investigation related to the release of written statements written by four employees which detailed an ongoing problem the four employees were experiencing with a particular sergeant who had resigned from the from the WCSO in June of 2022. Statements of this nature are legally protected from release without the express permission of the complainant. Statements or complaints filed that are not properly secured could potentially disrupt a workplace or place the person making the complaint at risk for further harm. A person's identity who makes a complaint which could result in a Texas Workforce Commission or Equal Employment Opportunity Commission charge of discrimination is not guaranteed to be held confidential, but it is to be protected strictly.

13. The HR Committee reviewed a complete copy of the former sergeant's personnel file that had been provided by the WCSO. Copies of the four statements written by the four females were confirmed to be in the file and to have been released to the Texas Commission on Law Enforcement and also to the subject of the complaints. The Sheriff and Chief Deputy were unable to produce the original letters given to them. They offered no explanation for the current location of the originals. The originals and an envelope they purported were placed in appear to have been lost.

14. The committee interviewed the four individuals who had written the statements back in June of 2022. These statements all listed to some degree or another inappropriate and harassing behaviors based on sex and gender in addition to other more policy-related complaints. The four employees offered direct examples of the inappropriate comments made by this former employee to them respectively and apart for the others. The statements specifically identified that the

individual had made comments that were sexual and vulgar in nature to them while they worked with him or near him.

15. The HR Committee also interviewed a male former deputy who first learned of the complaints of sexual harassment made by these individuals in and around June of 2022. This former patrol deputy had been told by two of the females of the conduct, he then informed the first supervisor above the individual being complained of, a patrol lieutenant, who was also a former employee.

16. The HR Committee confirmed that on or about June 13, 2022, the former Lieutenant was contacted at his home by the male deputy. This former Lieutenant indicated during his interview that he immediately called the Sheriff and was instructed by him to "conduct an investigation," The Sheriff, when interviewed, denied that he had ordered the investigation and that this former Lieutenant had initiated this investigation on his own.

17. Notwithstanding the discrepancy of who initiated what, the moment the former Lieutenant was notified and then notified the Sheriff, was the time a full and complete investigation should have been initiated and conducted. County policy expressly states that complaints of this nature are to investigated promptly and thoroughly and all records are to be kept confidential if at all possible and kept in a separate file from the employees regular file. However, the HR Committee noted that most interviewees were not able to clearly define any policies or procedures of the WCSO that concern what to do when sexual harassment or other complaints are made, other than report it to your immediate supervisor. These employees also did not seem to be aware of what the County's policies were in this regard either.

18. The extent of this "investigation" was the collection of the letters. Two of the women, were willing to sign their statements. Two other women absolutely refused to identify themselves in their complaints for fear of retaliation. They indicated that they did not believe the assurances of confidentiality they received and they would suffer repercussions in their employment if they identified themselves in their complaints. The two employees who did sign their names stated during their interviews that they were assured by the Sheriff[1] that any investigation would be confidential and relied upon those assurances when they signed their statements.

---

[1] During his interview, The Sheriff denied he ever said this to any of the Complainants. He then clarified that if he did say it, he did not remember.

19. On or around the early evening of June 13, 2022, the Sheriff texted the County Attorney a photo of the first page of what was to become the written complaint of one of the subjects. It was not signed, nor did it identify the author. The Sheriff and County Attorney spoke briefly at that time by text and then on the phone. The County Attorney advised the Sheriff this was a very serious matter that needed to be investigated immediately and also to be kept strictly confidential. The Sheriff did not disclose to the County Attorney there were multiple complainants. The County Attorney does not recall any further requests from him or his office at that time about the situation, but later learned that the former sergeant had resigned.

20. The former Lieutenant stated he placed all the written statements he received in a manila envelope, and wrote something to the effect of "CONFIDENTIAL, NOT FOR FILE" on the outside[2]. The Sheriff confirmed reviewing the letters but denied receiving them in an envelope. The Deputy Chief confirmed he received the letters from the former Lieutenant and that they were in an envelope. However, he was unable to remember if there was any writing on the envelope. When the County Attorney met with the Chief and Sheriff on June 19th, he reviewed the file and the letters were loosely placed inside and there was no envelope.

21. On June 14, 2022, Sheriff Stewart called the former employee into his office to discuss the complaints. The meeting was attended by the Sheriff, the former Lieutenant, and the former sergeant. The individual was informed by the Sheriff that he had heard about "stuff" and that he had two options: either resign with an honorable discharge; or remain but that he would be placed on administrative leave without pay and an internal investigation would be done and he would take action based upon the findings appropriately. The Sheriff indicated to the individual that he found the complaints he had received valid. The former sergeant asked what the nature of the complaints were and was told by the Sheriff that no information would be given to him. The former Lieutenant did not speak during the meeting but confirmed the sequence of events and conversation during his interview. The individual, when interviewed, also confirmed what occurred. The individual decided to resign effective immediately. The Sheriff processed this resignation and issued a TCOLE form F5 separation document that same day that classified the former sergeant as leaving with an honorable discharge in good standing.

22. Chief Deputy Garza was out of the office this particular week. When he returned to work the following Monday, he was given the letters by the former Lieutenant The Deputy Chief stated during his interview that he disagreed with the Sheriff's handling of the entire situation

---

[2] The former Lieutenant did not remember exactly what he wrote, but steadfastly maintained he wrote some type of markings that indicated the contents were not to be released.

and that the issuance of an honorable discharge in good standing was not proper. He stated and the former Lieutenant confirmed that he had said at the time that "he had to have something" to put into the former employee's file. The Chief instructed the former Lieutenant to also write a statement and the Chief confirmed in his interview that he placed all the statements in the file, but they were not in an envelope and were without any designation that they were to be kept confidential or held from release.

23. The following facts are somewhat in dispute. During his interview, the former Lieutenant stated that at the time the Chief and himself had this conversation, the Lieutenant informed the Chief of the confidentiality of the letters and that they were not to be placed in the former sergeant's file. He also stated that the Chief was aware that the individual was not aware of the letters or their content nor had he been provided an opportunity to respond to them. The Lieutenant stated that the Chief disagreed with him and told him that the letters would be made a permanent part of the former sergeant's personnel file.

24. During the Deputy Chief's interview, he denied being told anything by the former Lieutenant but stated that he believed those letters had to be included in the file. He also admitted that he had spoken to the County Attorney in December when the individual had requested a copy of his file and the County Attorney told him that the file belonged to Wilson County, not the individual, and as a rule should never be released. The file could be viewed in person by the subject of the file, but should not be emailed to people. When pressed about this, the Deputy Chief then stated that he disagreed with the County Attorney on this and that they have disagreed about other things also in the past, such as how discharges on separation documents are to be determined. The Chief stated that he went with what he thought was required by TCOLE and not the guidance from the County Attorney.

25. Subsequently, in and around December of 2022, the Chief Deputy had a subordinate scan the file and he then uploaded it to the TCOLE system, where it was reviewed by an agency that the individual had applied for employment with. The individual also requested a copy for himself around this time, and the Chief personally emailed the file to the individual in a series of three emails. Chief Garza admitted to doing both of these actions. The former sergeant did not get hired by the other agency and was told the reason was because there was "something in his file." This prompted the individual to review what he had been sent by the Chief Deputy and that was when he first learned that letters had been written about him back in June of 2022. He was able to determine the identity of two of the four complainants and started asking current deputies why these females would say what they had said about him. Soon there after, all four

females learned of the release and all stated this placed them in significant fear for their safety. This would have been around January 2023. Soon the entire department was aware of the leaked statements. Several of the affected females stated during their interviews that they were treated differently afterwards. Some of their current supervisors were friends with the former sergeant and treated them in a hostile manner after learning what had happened. They also stated they were nervous about if they would be supported by certain deputies if they got into trouble or a dangerous situation, because those deputies remained friends with the former sergeant. One of the affected employees resigned from the agency on her own volition because of these concerns after being an employee of the WCSO for almost a decade.

26. Because some of the original female employees expressed concern that the former sergeant may possibly retaliate against them, the County Attorney personally contacted him and requested he come into the office to discuss the matter. He agreed to be interviewed by the County Attorney and one of the CAO Investigators. This individual confirmed that from the statements he received from the Chief, he learned the identities of two of the female employees who signed their letters, but not the other two. He stated that he has no issues or personal animus upon the employees who made the four statements. His anger and frustration is with the WCSO administration and what he believes the Sheriff and Chief Deputy did to him after he had resigned. He stressed that he would never attempt to get back at or not support the deputies who wrote the letters if they needed help. He admitted that the nature of the conduct complained about him in the letters were not proper in any sense of the word, but he stressed that if he did in fact talk in an inappropriate manner, he never meant to make any female co-workers uneasy. He spoke calmly and credibly during his interview about his lack of anger at any of the female employees, and also how prevalent a casual attitude about inappropriate topics and subject matter is within the WCSO.[3]

**Issue 2- Is there a reasonable likelihood that a hostile work environment exists within the Wilson County's Sheriff's Department that is impeding the effectiveness of the agency?**

**Conclusion— YES.**

27. According to the law in the United States: A "hostile work environment" is a workplace where there are serious ongoing instances of harassment and discrimination against persons and

[3] Subsequent to this interview, the County Attorney reached out to each of the four 2022 complainants to advise them that the individual was not going cause them problems or issues, but to notify him immediately if the individual did.

the persons with protected characteristics such as race, color, religion, sex and pregnancy, national origin, age (40 or older), disability or genetic information are or could be reasonably related to the reason(s) for the treatment.

28. Additionally, a hostile work environment exists for all employees regardless of any protected characteristics when the harassing or discriminatory conduct is also applied to persons who report or attempt to report the conduct and the toxic atmosphere created by the employer is so severe and pervasive it interferes with all individual's abilities to effectively perform their jobs; creates an intimidating, offensive, threatening or humiliating work environment where the likelihood of reporting is highly discouraging or even impossible due to the potential of retaliation; or the environment causes a situation where a person's psychological well-being is adversely affected.

29. The HR Committee interviewed numerous current employees, specifically the employee (identified as CP1 for the purposes of this report) who had made the call to human resources on June 14, 2023 and other female employees this employee had identified that she stated were hesitant to report anything. The HR Committee also interviewed other current and former employees as well.

30. During the interview with CP1 regarding her complaints against two members of the WCSO's CID unit, CP1 stated that she has often been in or near group conversations in the offices of the WCSO where the subject matter discussed involves graphic descriptions of sex acts where women are being demeaned or topics that involve women being less than equals to men. She conceded that many people at the WCSO will use off-color language or discuss inappropriate subject matter, but the individual she was complaining of is by far the worst and makes many females uncomfortable by his speech. She is afraid to say anything because of his rank within the department, so she avoids him as much as possible. Her complaint about the other member of CID stemmed largely from inappropriate touching and not much with offensive speech. He routinely made her and others uncomfortable with how he would look at them or casually touch them. She presented the committee with a video she had that showed exactly what she was complaining of. The individual came into an area to speak to several employees who were already present, then for whatever reason he crossed a sizable distance to walk past CP1 and place his hand palm down on the small of her back as he walked by. The video has no audio, but clearly shows the touching. He continues past her to another part of the room and she almost sprints from the room. The HR Committee reported they had no reason to believe this employee is making up or embellishing her claims. CP1 did admit that she has never told him to stop his

unwanted touching. She explained that she was afraid of what could happen to her if she called him down.

31. Numerous other interviewees confirmed that the language used sometimes in the office and department-wide was probably not appropriate and also that there existed in the administrative areas of the WCSO an atmosphere where talk of a sexually inappropriate nature occurs on an almost daily basis. However, many said that the profession itself is grittier than your average workplace and they have just always accepted it. In many ways, these employees are correct. However, no workplace should foster an environment where a person who doesn't like sexually charged or inappropriate conversations cannot speak up and inform the offender of such, to at least give the offender the opportunity to remedy the behavior at the lowest level.

32. It also was almost unanimously reported by interviewees to the HR Committee that it is well established unwritten policy within the WCSO that complaints of any nature are not to be made to the Wilson County Human Resources Department and that all complaints would be addressed internally within the department. The Sheriff and Chief Deputy confirmed this policy by stating that any complaining individual should go through the chain of command to have any such complaints addressed, as such complaints should be handled internally. Both even stated separately they didn't understand why they had to inform human resources of anything about their department. They both seem to have the impression that the WCSO is supposed to enjoy almost near independence from the rest of the County government, of which it is only a part. The Sheriff and Chief Deputy both also did not seem to understand when there may exist reasons an employee could not report to them, i.e. because they or someone near them may be the subject of the complaint. During their interviews, the HR Committee reported that both the Sheriff and Chief Deputy claimed to be unaware of any interpersonal or morale problems within the agency. However, since this administration took office in January of 2021, the WCSO has had almost eighty employees leave the agency in one way or another. Some were long term employees who worked under the previous administration for far less salary. Most were new hires, who worked briefly, then left.[4] The HR Committee was not tasked with determining why there have been so many separations, but it is unlikely and illogical to think that a turnover rate of over 80 percent in less than three years can all be attributed to low wages or better opportunities elsewhere.

33. While almost all current and former employees interviewed validated and confirmed the unspoken policy that no complaints should be made outside the department, the reasons they

[4] Records reviewed confirmed these separations were all either former administration employees retained by the current one, or new employees hired by the current administration.

offered for this belief varied. The Sheriff, Chief Deputy and a few employees who were squarely supportive of the administration, explained that the administration was best suited to fix any internal issues. This is typically correct, provided leaders have instituted a workplace culture that fosters and supports reporting and applies the "zero tolerance" policy of Wilson County evenly and consistently. The majority, however, explained that they did not think the administration would do a thing to fix a complaint that they did not want to fix, but wanted to keep anything that could embarrass the leadership or agency from getting beyond their sphere of control.

34. Almost all of the persons interviewed confirmed to some degree they feared that something negative would happen to them, i.e. they would be fired, retaliated against, records would be created and placed into their file to prevent them from working in law enforcement ever again, or the livelihoods of themselves or even family out in the community would be affected if they crossed the administration or went outside of the agency to report anything. This sentiment was echoed by many of the other persons interviewed who were not even complainants about anything. The consensus was that if you go against certain members of the WCSO Administration, you will regret it.

35. One deputy who was interviewed reported that because of their participation in the investigation, they have been made to feel blocked out and isolated by their fellow employees. This individual also stated they have been restricted from serving in some of the roles they previously performed without any written reasons offered of any performance issues or complaints. This individual feels they will be fired imminently because the administration is aware of the individuals participation in the HR Committee inquiry.

36. In speaking with the various employees, past and present, it is very clear that there exists to some degree, a toxic work environment within the WCSO. The reasons offered by interviewees pointed out various people employed by the agency in leadership positions that created or fostered this environment. Naming these individuals is counterproductive to the constructive intent and purposes of this report and as such, is not necessary. However, interviewees reported conduct such as bullying and openly mocking deputies that were felt to not be good law enforcement officers or that were out of shape or needed to lose weight were commonplace. They also identified that choice assignments or promotions were strictly based upon favoritism and demonstrated loyalty, instead of merit or time in service. Some of the terms used to describe the management environment of the WCSO were: "unprofessional," "completely inflexible," "played favorites," "heavy-handed," "their way only," and "vindictive."

37. The Sheriff personally, was never identified as a person who was hostile to staff. Most interviewees stated that the Sheriff was probably a good leader, but was largely absent most of the time. The main issue identified about the Sheriff was that he enabled the current situation by allowing certain individuals and leaders to do whatever they wanted in the department and that he had supported them completely in the past when any type of complaint was lodged internally or externally.

38. In closing, the release of the complaints written by the four female employees in June of 2022 and the public embarrassment and fear these females reported to the HR Committee that they have experienced (and continue to experience) after they were released contributed to an environment that discourages employees of the WCSO from coming forward to report any violations of their or any ones else's rights within the WCSO. This theme was repeated by numerous interviewees. Both the Sheriff and Deputy Chief told the HR Committee that if they had received them, all complaints would have been investigated fully and unacceptable behaviors would not have been tolerated. However, these same leaders are directly responsible for creating the current environment in place at the WCSO that suppresses such complaints or treats them so casually that the persons making the complaints are singled out instead. This is a textbook toxic work environment that the WCSO should not tolerate or condone.

**HR COMMITTEE FINDINGS**

The County Attorney has reviewed the evidence and material collected by the HR Committee and has also reviewed the following findings made by the HR Committee based upon the stated goals they were given when they began.[5] The County Attorney concurs with each of these findings and ratifies, adopts, and incorporates them for all purposes into this report:

A. THE HR COMMITTEE FINDS that a full and complete investigation concerning the allegations made by four female employees in or around June of 2022 was not conducted in accordance with established guidelines related to the investigation of EEOC-type complaints or in accordance with Wilson County policy;

B. THE HR COMMITTEE FINDS however, that the administration of the WCSO did NOT violate the existing written policy at the time by failing to notify human resources;

[5] *See paragraphs 2 and 9 supra.*

C. THE HR COMMITTEE FINDS that the confidentiality of four previous complainants was violated in a reckless and very public manner within the department which created for them a threatening or humiliating work environment;

D. THE HR COMMITTEE FINDS that the allegations of sexual harassment and inappropriate behavior by the two parties reported by the complainant on June 14, 2023 are FOUNDED;

E. THE HR COMMITTEE FINDS however, that the perpetrators were never told their behavior was inappropriate or to stop and incidences of this type of behavior are so widespread within the department that it is feasible the perpetrators would have stopped if asked. Given the facts and circumstances presented, the HR Committee would NOT recommend either employee be terminated, but would recommend some level of discipline such as formal written reprimands and possibly brief suspensions without pay, as both perpetrators were leaders in the agency and were both purportedly experienced law enforcement officers;

F. THE HR COMMITTEE FINDS situations like the two founded complaints are not likely to reoccur in the future if the agency were to receive training and implement proper reporting and investigation practices and also practiced consistent and swift discipline for those who violate EO policies;

G. THE HR COMMITTEE FINDS that while there is a County policy addressing sexual harassment and discrimination reporting in the workplace, it is not adhered to within the WCSO;

H. THE HR COMMITTEE FINDS that when harassing or discriminatory conduct has occurred within the WCSO, employees and supervisors are unaware of the proper policies or procedures to address and report the conduct;

I. THE HR COMMITTEE FINDS that it is more likely than not, employees of the WCSO are afraid to report misconduct and believe that there is no confidentiality or protection if they do and they likely will be subject to retaliation; and

J. THE HR COMMITTEE FINDS that it is more likely than not that the problems within the agency stem from the lack of clearly defined policies within the department to address employee and workplace matters such how to safely make complaints of harassment or retaliation, how leaders can protect victims of such conduct, and finally, how leaders address perpetrators.

## RECOMMENDATIONS

The County Attorney recommends that the following corrective measures should be taken immediately:

- All members of the WCSO and then all employees county-wide should receive initial training on EEOC, Discriminatory Practices, Sexual Harassment in the Workplace, and Retaliation[6];

- All members of the WCSO and all employees county-wide should receive follow up training on these subjects at least semi-annually;

- The WCSO and the County should establish a mechanism for reporting and support for employees claiming to be the subject of any form of harassment or discrimination which prohibits internal reporting or handling only;

- All departments of the County should be required to designate at least one other person for every fifteen employees, besides a department head or senior leader within the department who shall serve as the EEO Trainer/Liaison(s) for that department. This individual(s) shall receive higher level training in EEO and other discriminatory practices and shall work directly with their department head and Human Resources to ensure that proper reporting and practices are being followed in each department;

- Management and professional development training for all employees in any leadership position, to include Elected officials, that includes:

    - a focus on interpersonal relations with subordinates and other County leaders,
    - leadership and supervisory training to teach the importance of morale to a department's effectiveness,
    - training about how leadership (bad or good) directly contributes to high turnover rates of employees, and workplace safety or apathy,
    - proper methods of conducting any type of employment investigations, and
    - legal requirements and practices related to employment investigations, reporting, record keeping and confidentiality;

- All members of the WCSO, all employees county-wide, and all elected officials should receive a class on the Wilson County personnel manual and shall sign off on the training received; and

---

[6] This recommendation has already been placed in motion before this report was released. County Judge Whitman issued a County-wide memorandum on 09/18/2023 prescribing mandatory training for all County Employees and non-elected department heads. Elected officials were encouraged to participate as well. The scheduling is still being determined.

- Require written employment-related (non-law enforcement) policies within the WCSO which adhere to County policies and that require proper reporting outside of the agency to Human Resources, and/or the County Judge without exception.

## CONCLUSION

Based upon my experiences dealing with employment issues as both a leader in the military and in a first responder agency, and also as an attorney who has focused primarily on employment law matters since becoming licensed, it is my opinion that the issues outlined in this report currently affecting the WCSO are largely easy to resolve. The recommendations above will go a long way to fixing the training issues the WCSO is facing. I am confident the issues that led to these complaints would not have happened in an environment that consistently requires proper conduct in the workplace and that encourages legitimate open-door policies that allow an employee access to leaders, with assurances that the subject matter will be taken seriously and also, to the extent possible, to be handled discreetly or confidentially.

This open-door policy however, has to be humble enough to support an employee's decision to go knock on the open door of a different county department such as Human Resources, which is required to keep that door open for individuals needing to make a report. Human Resources also is required to keep the department head or County Judge in the loop. This is never to be adversarial or considered to be one department working against another. It is always supposed to be focused on the best interests of Wilson County and the employee.

I cannot repeat enough that the purpose of this report is and always has been to make the Wilson County Sheriff's Office a better place to work and also to assist its leaders. The employees of the WCSO could on any given day potentially face life and death situations where support from each other is crucial. They need to be able to depend upon each other and depend upon their leaders. **This requires trust in both directions.** There is very little trust currently in the WCSO. The findings above illustrate a good place for the Sheriff's Office (and all other County Departments) to begin to examine their current practices with a focus on improving their departments, and ultimately to provide better service to their employees and the citizens of Wilson County. I remain,

Respectfully,

Tom Caldwell, Wilson County Attorney

# EXHIBIT No. 4

## Request from Louis to OAG for Assistance
## September 29, 2023

**Audrey Gossett Louis**
**DISTRICT ATTORNEY**
1105 A Street
Floresville, Texas 78114

**OFFICE:** (830) 393-2200
**FAX:** (830) 393-2205

## 81ST JUDICIAL DISTRICT ATTORNEY'S OFFICE

**1st Assistant, Frio & LaSalle**
Leslie Carranza

**Atascosa ADA**
Ryan Wright
Erika Price

**Karnes Prosecutor**
Audrey Vasquez

**Wilson ADA**
Lorena Whitney
Marc Ledet

**BPU ADAs**
Kenny Lam
Catherine Hayes

**Appeals, Forfeiture, & Open Records ADA**
Will Richmond

**Investigators**
Chief Roland Trevino
Todd McCrohan

**Criminal Analyst**
Karen Dziuk

**Budget/Grant Manager**
Eladia Torres

**Victim Assistance Coordinator**
Katie Quinney

**Administrative Asst.**
Regina Taylor
Stacy Cowan
Alyssa Lerma
Veronica Magana

**Receptionist**
Barbara Jaskinia

September 29, 2023

Chief Jason Anderson
Texas Office of the Attorney General
Criminal Investigations Division
PO Box 12548
Austin, Texas 78711

RE: Allegation of Official Oppression by Wilson County Attorney Tom Caldwell

Chief Anderson,

My office has received two complaints regarding Wilson County Attorney, Tom Caldwell committing the offense of Official Oppression. One from a lieutenant with the Wilson County Sheriff's Office who was arrested by Caldwell's investigator for False Statement to a Peace Officer. The lieutenant claims he was intentionally subjected to an arrest Caldwell knows was unlawful. Caldwell then recused himself from the case on July 6, 2023, claiming he was a witness, and requested the Guadalupe County Attorney's Office handle the case. However, it is alleged that Caldwell continued to use his position to attempt to further investigate the matter, which is what the second complaint alleges, as well as a threat to the sheriff to "open a case" on the complaining deputy if she did not turn over a recording Caldwell believed she possessed that included statements regarding the lieutenant arrested.

I am requesting your office investigate all potential offenses surrounding this allegation, including any additional county officials. My office is willing to prosecute and pursue any charges resulting from the investigation.

Your consideration is greatly appreciated. If you have any questions or concerns, please do not hesitate to contact me directly.

Sincerely,

Audrey Louis
81st Judicial District Attorney
210-213-7274 cell

# EXHIBIT No. 5

## Louis Recusal and Tharp Appointment

CAUSE NO. ____________

| | | |
|---|---|---|
| IN RE THE MATTER OF | § | IN THE DISTRICT COURT |
| | § | |
| | § | 81st/218th JUDICIAL DISTRICT |
| | § | |
| THOMAS PAUL CALDWELL, et al | § | WILSON COUNTY, TEXAS |

**ORDER APPROVING RECUSAL OF DISTRICT ATTORNEY'S OFFICE**

On this day came on to be considered the Motion of Audrey Gosset Louis, District Attorney for the 81st Judicial District, to recuse that office concerning two complaints, of Official Oppression, against Thomas Paul Caldwell, County Attorney of Wilson County, and/or employees of his office. The Motion is Approved, and pursuant to Art. 2.07(b-1) Tex. Code Crim. Pro., the District Attorney for the 81st Judicial District is disqualified in this matter.

An Attorney Pro Tem. will be appointed, pursuant to Art. 2.07(a) Tex. Code Crim. Pro., in the near future.

December 8, 2023.

Russell Wilson
_______________________________
Judge Presiding

CAUSE NO. ________

| | | |
|---|---|---|
| IN RE THE MATTER OF | § | IN THE DISTRICT COURT |
| | § | 81st/218th JUDICIAL DISTRICT |
| | § | |
| | § | |
| THOMAS PAUL CALDWELL, et al | § | WILSON COUNTY, TEXAS |

## ORDER APPOITNG ATTORNEY PRO TEM

Pursuant to Art. 2.07(a) Tex. Code Crim. Pro., the Honorable Jennifer Tharp, Comal County Criminal District Attorney, and/or such assistants as she may designate, is appointed to perform the duties of the office of District Attorney, concerning two complaints, of Official Oppression, against Thomas Paul Caldwell, County Attorney of Wilson County, and/or employees of his office, and any ~~subsequent~~ prosecutions stemming from said investigation.

December 14, 2023.

Russell Wilson

Judge Presiding

FILED FOR RECORD in WILSON COUNTY TX
the 14 day of Dec, 2023
at 2:05 P.m.
By: Deborah Bryan
Deborah Bryan, District Clerk or by Deputy Clerk

# EXHIBIT No. 6

## Referral Letters provided to Ranger Bradley Freeman and Special Agent Monroe Giese on November 21, 2024 with additional materials in separate flash drives provided to each officer.

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

---

November 21, 2024

***VIA hand delivery receipted by Ranger Bradley Freeman, Tx Rangers Public Integrity Unit***

Texas Rangers Public Integrity Unit
c/o Texas Department of Public Safety
5805 North Lamar Blvd Austin, TX 78752-4431

RE: Formal request by prosecuting attorney for initial investigation of possible offenses against public administration by numerous identified individuals.

To Whom:

I am the current County Attorney for Wilson County, Texas, which is located near San Antonio, in the 81st and 218th Judicial Districts. I have held this office since January, 1, 2017. I did not run for re-election and will be leaving office December 31, 2024. In the past eighteen months or so, my office has received reports from employees and private citizens, and also reports and notifications from the following county offices or departments: human resources, Auditor, County Judge, all four Justice of the Peace offices, and Wilson County Information Technology of conduct, acts, or omissions that on their face are clearly improper and highly unethical. The undersigned, on information and belief, is of the firm opinion after corroborating almost all of the allegations made or reports received, that many of these reported issues are also criminal violations of the laws of the State of Texas by public officials and public employees.

**In accordance with Tex Govt. Code §411.0253, please consider this a formal referral from a sitting prosecuting attorney requesting the Public Integrity Unit of the Texas Rangers conduct an initial investigation into numerous complaints and reports received about acts and occurrences by named public officials and employees confirmed to have occurred since June of 2023 to the present that would cause a reasonable person to suspect that misconduct has occurred that meets the elements of numerous offenses against public administration as defined under the statute.**

In my current role, I am aware that some manner of investigation by the PIU has been requested by the 81st Judicial District Attorney and is ongoing. However, numerous complaints herein presented either specifically or indirectly implicate the current 81st Judicial District Attorney and members of her staff, and members of the Wilson County Sheriff's Office. By law, under §§ 2.02 and 2A.103 of the Code of Criminal Procedure, the County Attorney is empowered to act with all the authority of a District Attorney in the event the sitting District Attorney is unable to perform their duties. The nature of the additional allegations being presented here preclude the current District Attorney from performing her duties related to this referral. I am confident the PIU will be able to work with the Regional Administrative Judge to have a suitable special prosecutor appointed in the event charges are referred related to either formal referral the PIU is investigating.

For the record, this is not the first time I have sought outside assistance from agencies about some of the issues I now present. Prior to this request, the undersigned made numerous attempts to elicit investigative assistance from agencies in the surrounding areas to investigate some of these claims. Without even a cursory review, every entity rejected the request.[1] I met in person with the District Attorney of Bexar County in the late summer of 2023, who declined my request. My last request for assistance was around that same time to the Office of the Attorney General Criminal Investigations Division, which also was denied summarily. However, soon thereafter, I was notified that I was under investigation by them at the behest of the District Attorney. To my knowledge, that investigation remains open, however, I nor any member of my office have been charged with any crime. Since my last attempt to get assistance outside this jurisdiction, my office has continued to receive complaints or reports of more alleged misconduct, as recent as earlier this month.

This Formal Referral Request is being accompanied by a flash drive with complaint-based folders that contain complaint information, reference documents, statements or recordings received, summaries of the acts and occurrences alleged against individuals acting singularly or in concert with others, and other supporting material. A master complainant and witness list is also being provided which lists persons who possibly have knowledge of relevant information and what individual or agency complaint or report they are associated with.

The material being provided is not necessarily exhaustive. Additional material concerning some of these complaints exists and is in the possession of my office or other Wilson County offices and will be furnished upon request of an actual investigating officer. However, the material being provided should be sufficient for an investigator reviewing it in an objective and neutral manner to make a determination concerning if on the face of the statements or documents and material provided, there is reasonable suspicion that an offense against public administration has been committed.

---

[1]Rejection notifications provided in flashdrive.

Much of the material being provided is of a sensitive nature, related to civil and administrative matters affecting Wilson County related to the alleged conduct of some of the individuals complained upon herein. Some of the information relates to what appears to be criminal investigations initiated in retaliation against individuals known to have filed complaints or reported possible violations of law against members of the agency. Most of the allegations against any one individual also implicate other individuals to such a degree to create the appearance of collusion and an organized ongoing pattern of criminal conspiracy to either harm someone or protect the actors or conceal their acts. For these reasons, and because some of the complainants continue to be employed by the agencies, I request this information be kept strictly confidential to the extent that it can for their protection.

The following public officials and public employees have either been named specifically in a complaint or are connected in some manner to the allegations of misconduct:

81st Judicial District Attorney Audrey Gossett Louis;
81st Judicial Assistant District Attorney Lorena Whitley;
81st Judicial Assistant District Attorney William Richmond;
81st Judicial District Attorney Investigator Roland Trevino; and
81st Judicial District Attorney Investigator Daniel Kaufman;

Texas Ranger Terry Snyder;

Wilson County Sheriff Jim Stewart;
Wilson County Chief Deputy Clinton Garza;
Wilson County Investigator Lieutenant Joseph Dubs;
Wilson County Investigator Lt. Darrell Collins (narcotics);
Wilson County Sgt. Investigator Daniel Small;
Wilson County Sgt. Investigator Billy Mitchell (evidence);
Wilson County Sgt. Investigator Jeffery Dugi;
Wilson County Sgt. Investigator Zared Derby;
Wilson County Sgt. Investigator Daria Fowler;
Wilson County Sgt. Investigator Samuel Emerson;
Wilson County Sgt. Investigator Mark Hastings (narcotics);
Wilson County Patrol Sgt. Steven Orr;
Wilson County Patrol Sgt. Michael Marr (narcotics);
Wilson County Patrol Sgt Maddie Dominguez;
Wilson County Patrol Deputy Zachery Garcia;
Wilson County Detention Captain/Jail Administrator Amanda Pena
Wilson County Detention Lt. Adam Guerrero;
Wilson County Detention Lt. Natalie Ruiz;

Former Wilson County Detention Lt. Mace Martinez[2];
Wilson County Detention Sgt. Justin Resendez

Former Wilson County Sergeant Investigator David Smith (evidence); and
Former Wilson County Sergeant Investigator Jason Hind (narcotics)
Former Wilson County Patrol Deputy Carmen Mero

Wilson County Commissioner Gary Martin, Pct 1.
Wilson County Commissioner Jeffery Pierdolla, Pct. 3
Wilson County Employee Joseph Sears, Pct 3.

This list is not exhaustive. There may be other parties or accessories unknown to this office or the complainants that were involved in the subject matter of the complaints, reports, or statements received.

In closing, your agency is required by statute to accept and review this formal request. However, I understand that the Public Integrity Unit reserves the right to not act if the Unit determines the evidence or material reviewed is insufficient to demonstrate a reasonable suspicion that an offense against public administration occurred. I also understand that an "offense against public administration" means those enumerated in Tex Govt. Code § 411.0252. From my review of the statutes and of media coverage about cases your unit has handled in the past, these complaints appear to contain allegations and subject matter your unit of the Texas Rangers is required to investigate. Some of the allegations also require outside agencies such as the FBI and DEA to investigate. I trust your unit will give them the very same neutral, objective scrutiny you are giving the current complaint(s) you are investigating that you received from the 81st Judicial DA.

In the event your unit, for whatever reason, elects to summarily reject this referral and all the complaints and reports contained herein without a determination of any kind of whether an offense occurred on some variation of the allegations made and evidence presented do not appear to rise to an "offense against public administration," I request that your agency notify myself immediately, even if I have left my public office, and also notify my successor, who is aware of this referral. Then forward everything you have received to a proper agency to investigate the complained upon conduct to make a determination of whether any offense has occurred. These complaints and reports are all not simply explained away as inadvertent error, misunderstanding, or incompetence. Those are all benefits of the doubt that have already been extended repeatedly to these agencies before this referral was initiated but are inapplicable given the continued nature of the acts and allegations and no discernible evidence that any official involved is in fact ever going to hold their own accountable.

---

[2] Martinez and Resendez are actually complainants, but reported their participation in what appears to be an offense.

To dispel any assumptions of political or personal motivation by the undersigned, I close with this declaration:

**Any complaints provided for investigation at this time concerning any alleged misconduct or illegal acts by any elected official or peace officer, etc. named herein have been corroborated independently with documents, reports, statements and/or other evidence or testimony of disinterested persons. The corroborating evidence supports the allegations enough that the undersigned has no other option but to make this request to your agency.**

Please let me or my successor know if you require any additional assistance. I remain,

Respectfully,

TOM CALDWELL
Wilson County Attorney

cc: file

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

---

**On Nov 21, 2024,**

**1 manila envelope packet containing:**

**a flash drive of eight folders with documents provided by the Wilson County Attorneys office in support of the folder identified subject matter**

**and**

**1 five page letter of referral from Wilson County Attorney Tom Caldwell**

**was given to:**

________________________________________

presented
To Freeman.
Did not sign

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

November 21, 2024

***VIA hand delivery receipted by Special Agent Monroe Giese, Federal Bureau of Investigation***

Federal Bureau of Investigation
San Antonio Field Office
5740 University Heights Blvd.
San Antonio, Texas 78249

RE: Formal referral by local prosecuting attorney for investigative aid and assistance from the Federal Bureau of Investigation and other relevant units of the Department of Justice.

To Whom:

I am the current County Attorney for Wilson County, Texas, which is located near San Antonio, in the 81st and 218th Judicial Districts. I have held this office since January, 1, 2017. I did not run for re-election and will be leaving office December 31, 2024. In the past eighteen months or so, my office has received reports from employees, private citizens, and also reports and notifications from other county offices or departments, i.e. human resources, Auditor, County Judge, all four Justice of the Peace offices, and Wilson County Information Technology of conduct, acts, or omissions that on their face are clearly improper and highly unethical. The undersigned, on information and belief, is of the firm opinion after corroborating almost all of the allegations made or reports received to enough a degree to credibly assert that many of these reported issues are criminal violations of the laws of the State of Texas and the United States by public officials and public employees.

**Please consider this a formal referral from a sitting prosecuting attorney requesting the relevant section(s) of the FBI or DOJ responsible for investigating criminal (and civil) violations of Federal public corruption and "color of law" deprivations under 18 U.S.C. §§241, 242; pattern and practice misconduct under 34 U.S.C. § 12601 or any violations of civil rights or retaliation for reporting violations of law or other violations of law uncovered**

**by investigators that are alleged to or appear to have been committed by state and local government public officers or servants.**

In my current role, I am aware that some manner of investigation by the Texas Rangers and/or FBI has been requested by the 81st Judicial District Attorney and is ongoing. However, numerous complaints herein presented likely have not been reported to the investigating agencies because the complaints or reports specifically or indirectly implicate the current 81st Judicial District Attorney and members of her staff, and members of the Wilson County Sheriff's Office. By law, the County Attorney of Wilson County is charged with substantially the same duties as a District Attorney and is empowered and duty-bound to act to protect the residents of their jurisdiction, to uphold the laws of the United States of America and the State of Texas and to always see that justice is done. I implore the FBI to promptly examine the material being provided and assist to restore confidence in this community's governance by its leaders.

Concurrent with this request, I am making one to the Texas Rangers Public Integrity Unit also. However, some of the complaints contained herein relate to ongoing EEOC issues concerning multiple, repeated acts of sexual harassment and retaliation and violations of civil rights laws. Prior to this request, the undersigned made numerous attempts to elicit investigative assistance from state and local agencies in the surrounding areas to investigate some of these claims without any success. Since my last attempt to get assistance outside this jurisdiction, my office has continued to receive complaints or reports of more alleged misconduct, as recent as earlier this month.

This Formal Referral Request is being accompanied by a flash drive with complaint-based folders that contain complaint information, reference documents, statements or recordings received, summaries of the acts and occurrences alleged against individuals acting singularly or in concert with others, and other supporting material. A master complainant and witness list is also being provided which lists persons who possibly have knowledge of relevant information and what individual or agency complaint or report they are associated with.

The material being provided is not necessarily exhaustive. Additional material concerning some of these complaints exists and is in the possession of my office or other Wilson County offices and will be furnished upon request of an actual investigating officer. However, the material being provided should be sufficient for an investigator reviewing it in an objective and neutral manner to make a determination concerning if on the face of the statements or documents and material provided, there is reasonable suspicion that an offense(s) has been committed or is ongoing.

Much of the material being provided is of a sensitive nature, related to civil and administrative matters affecting Wilson County related to the alleged conduct of some of the individuals complained upon herein. Some of the information relates to what appears to be criminal investigations initiated in retaliation against individuals known to have filed complaints or reported possible violations of law against members of the agency. Most of the allegations

against any one individual also implicate other individuals to such a degree to create the appearance of collusion and an organized ongoing pattern of criminal conspiracy to either harm someone or protect the actors or conceal their acts. For these reasons, and because some of the complainants continue to be employed by the agencies, I request this information be kept strictly confidential to the extent that it can for their protection.

The following public officials and public employees have either been named specifically in a complaint or are connected in some manner to the allegations of misconduct:

81st Judicial District Attorney Audrey Gossett Louis;
81st Judicial Assistant District Attorney Lorena Whitley;
81st Judicial Assistant District Attorney William Richmond;
81st Judicial District Attorney Investigator Roland Trevino; and
81st Judicial District Attorney Investigator Daniel Kaufman;

Texas Ranger Terry Snyder;

Wilson County Sheriff Jim Stewart;
Wilson County Chief Deputy Clinton Garza;
Wilson County Investigator Lieutenant Joseph Dubs;
Wilson County Investigator Lt. Darrell Collins (narcotics);
Wilson County Sgt. Investigator Daniel Small;
Wilson County Sgt. Investigator Billy Mitchell (evidence);
Wilson County Sgt. Investigator Jeffery Dugi;
Wilson County Sgt. Investigator Zared Derby;
Wilson County Sgt. Investigator Daria Fowler;
Wilson County Sgt. Investigator Samuel Emerson;
Wilson County Sgt. Investigator Mark Hastings (narcotics);
Wilson County Patrol Sgt. Steven Orr;
Wilson County Patrol Sgt. Michael Marr (narcotics);
Wilson County Patrol Sgt Maddie Dominguez;
Wilson County Patrol Deputy Zachery Garcia;
Wilson County Detention Captain/Jail Administrator Amanda Pena
Wilson County Detention Lt. Adam Guerrero;
Wilson County Detention Lt. Natalie Ruiz;
Former Wilson County Detention Lt. Mace Martinez[1];
Wilson County Detention Sgt. Justin Resendez

Former Wilson County Sergeant Investigator David Smith (evidence); and
Former Wilson County Sergeant Investigator Jason Hind (narcotics)

---

[1] Martinez and Resendez are actually complainants, but reported their participation in what appears to be an offense.

Former Wilson County Patrol Deputy Carmen Mero

Wilson County Commissioner Gary Martin, Pct 1.
Wilson County Commissioner Jeffery Pierdolla, Pct. 3
Wilson County Employee Joseph Sears, Pct 3.

This list is not exhaustive. There may be other parties or accessories unknown to this office or the complainants that were involved in the subject matter of the complaints, reports, or statements received.

The complaints and reports being provided range from:

- illegal release of confidential records to prevent persons from being able to secure employment;
- illegal sexual harassment and hostile work environment;
- retaliation for reporting EEOC violations;
- threats of or actual deprivations of a persons rights under color of law for illegal purposes or to discredit or conceal illegal misconduct;
- official oppression;
- missing large quantities of seized methamphetamines that were in the custody and control of the Wilson County Sheriff's Office;
- repeated instances of evidence being "inadvertently" destroyed or lost by CID investigators or members of the District Attorneys Office;
- repeated instances of perjury by persons acting under color of law; and
- illegal access to individuals location data in violation of the 4th Amendment as clarified by the holding of *Carpenter v. United States*, 585 U.S. 296;

This list is not exhaustive. It is merely a brief snapshot of many of the complaints and alleged violations. In closing, to dispel any assumptions of political or personal motivation by the undersigned, I make the following unsworn declaration:

**Any complaints provided for investigation at this time concerning any alleged misconduct or illegal acts by any elected official or peace officer, etc. named herein have been corroborated independently with documents, reports, statements and/or other evidence or testimony of disinterested persons. The corroborating evidence supports the allegations enough that the undersigned has no other option but to make this request to your agency.**

Please let myself or my successor know if you require any additional assistance. I remain,

Respectfully,

TOM CALDWELL
Wilson County Attorney

cc: file

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

**On Nov 21, 2024,**

**1 manila envelope packet containing:**

**a flash drive of eight folders with documents provided by the Wilson County Attorneys office in support of the folder identified subject matter**

**and**

**1 five page letter of referral from Wilson County Attorney Tom Caldwell**

**was given to:**

________________________________

# EXHIBIT No. 7

## Memorandum placed in Bee County personnel file of Plaintiff Olivarez

# BEE COUNTY SHERIFF'S OFFICE

Randy J. Aguirre - Sheriff

1509 E. Galloway Beeville, Texas 78102
Phone: (361) 362-3221 Fax: (361) 362-3227

01/16/2025
I received a phone call from San Patricio County Sheriff's Office Sgt. Investigator Rose Ramos ref: Joshua Olivarez. She was conducting a background investigation on a separate individual for her own agency and learned from her investigation, in an unknown way, that a Bee County Sheriff's Office employee Joshua Olivarez was pending criminal indictment from an incident in Wilson County, Texas. Sgt. Ramos informed me of her findings as a courtesy between law enforcement agencies.

01/16/2025
I contacted Wilson County Sheriff's Office Chief Deputy Clint Garza who informed me that when Joshua Olivarez worked for the Wilson County Attorney's Office, he was involved in arresting a Wilson County Sheriff's Office Lieutenant and there was controversy surrounding the legalities of that arrest. Chief Deputy Clint Garza directed me to speak with Texas Attorney General Investigator Greg Dickerman (512) 997-548, who was currently handling the investigation and change of venue.

01/16/2025
I contacted Texas Attorney General Investigator Greg Dickerman who advised that Joshua Olivarez was indeed the target of a criminal investigation involving the arrest of a Wilson County Sheriff's Office Lieutenant. Investigator Dickerman informed me that Joshua Olivarez had signed an affidavit for the arrest of the Lieutenant based on a civil accusation and not a criminal charge. Investigator Dickerman would not reveal any other particular details regarding the actual case but he did inform me that the criminal case on the suspect, Joshua Olivarez, was currently pending Grand Jury Indictment in Comal County, Texas after change of venue.

01/17/2025
Bee County Sheriff Randy Aguirre was briefed on the internal investigative findings and that Joshua Olivarez failed to disclose the details of his involvement as a suspect in a Texas Attorney General criminal investigation on his original application for employment. A meeting with Sgt. Joshua Olivarez ensued and he submitted his resignation, terminating his employment with the Bee County Sheriff's Office.

Russell Kirk
Chief Deputy
Bee County Sheriff's Office

# EXHIBIT No. 8

## McCrary 32 page report signed on June 27, 2025

**THE STATE OF TEXAS**
**VS**
**THOMAS CALDWELL,**
**JOSHUA OLIVAREZ, AND**
**DWAYNE MERCER**

**DISTRICT COURT**
**OF**
**WILSON COUNTY, TEXAS**

I, Sammy McCrary, Chief Felony Prosecutor of Comal County, Texas will not prosecute Thomas Caldwell [redacted]), Joshua Olivarez [redacted] or Dwayne Mercer [redacted] for offenses of Official Oppression, Tampering with a Government Record, Perjury or False Statement to a Peace Officer (arising from the arrest of Joseph Dubs) alleged to have been committed on or about June 28, 2023, for the following reasons:

Sgt. Greg Dickerman with the Special Crimes Unit of the Texas Attorney General's Office was assigned to investigate Wilson County Attorney Thomas Caldwell for the offense of Official Oppression. The Comal County Criminal District Attorney's Office was appointed as Attorney Pro Tem by Russell Wilson, Judge of the 218th District Court, after Audrey Louis, District Attorney for the 81st Judicial District, recused her office from the investigation of Caldwell. District Attorney Louis recused her office because, at the time, Caldwell had announced that he was running against her for the office of District Attorney. Sgt. Dickerman has now submitted his report detailing his investigation, as well as various documents and statements that he collected as part of his investigation, and his conclusions concerning which offenses were committed.

The facts of this case include a tangled mess of public officials and peace officers in Wilson County. This includes two other investigations that the Comal County Criminal District Attorney's Office is not assigned to. However, those cases are intertwined with this case in a way that makes it necessary to discuss them in evaluating this case.

## SUMMARY OF DICKERMAN'S INVESTIGATION

The first part of Sergeant Dickerman's investigation arises from the arrest of Alena Gutierrez-Berlanga for an offense under Texas Government Code §572.034 for failing to file a personal financial statement. Ultimately, Dickerman concluded that Wilson County Attorney's Office Investigator Joshua Olivarez committed an offense of Official Oppression by arresting her for that offense. That offense is addressed in a separate non-prosecution affidavit.

The second part of Sergeant Dickerman's investigation also arises from Berlanga's arrest. That part of the investigation concerns the arrest of Wilson County Sheriff's Department Deputy Joseph Dubs for an offense of False Report to a Peace Officer because of circumstances surrounding Berlanga's arrest. Ultimately, Dickerman concludes that "there is insufficient evidence at this time to show that Thomas Caldwell committed an offense." (page 19 at 1.59). However, he finds that Wilson County Attorney Investigator Dwayne Mercer committed the offense of Official Oppression when he swore out a complaint alleging that Dubs was intentionally deceitful and thereby subjected Dubs to an arrest that he knew was unlawful. (page 20 at 1.61).

Sergeant Dickerman does not mention and does not seem to address whether Joshua Olivarez could be criminally liable for the offense of Official Oppression based on the arrest of Joseph Dubs. Additionally, he does not address the possibility of whether any of the parties committed any other offenses such as Tampering with a Government Record, Perjury, or False Statement to a Peace Officer. This non-prosecution affidavit covers all of those potential offenses by the above-named parties.

## ARREST OF ALENA GUTIERREZ-BERLANGA

Ms. Alena Gutierrez-Berlanga ran a no kill shelter in Wilson County. She had also run for office on one prior occasion. According to some of the documents submitted, including one statement that refers to her as a political gadfly, it would appear that she had also irritated one or more of the public officials in Wilson County.

This matter began with Alena Gutierrez-Berlanga filing to run for House District 31 in the March 1, 2022 primary election. As a candidate for office, she was required to file a variety of financial documents. Those documents included a personal financial statement that was required to be filed with the Texas Election Commission (TEC) pursuant to Texas Government Code 572.021. Based on documents from the Texas Election Commission, Ms. Berlanga failed to file any of the required documents. Once the TEC determined that Berlanga had failed to file the personal financial statement as required, they had a statutory duty to send a written statement of the determination to the appropriate prosecuting attorney of the state under Texas Government Code §572.031.

The TEC carried out its duty under Texas Government Code 572.021 by sending a letter to Wilson County Assistant District Attorney C. Ellison on December 9, 2022. The referral letter also had a packet of documents that were business records

of the commission. Those documents included records to establish the actions the commission took attempting to get Berlanga to comply with Texas Government Code §572.021. Those records included copies of two reminder letters that were mass emailed to all candidates on February 1, 2022, and February 10, 2022, to remind them of the February 14, 2022, filing deadline for their personal financial statements.

After the referral letter was sent, there were a number of email communications sent between Wilson County Attorney Thomas Caldwell and various employees and officials with the TEC. Those persons include David Guilianelli (a custodian of records for TEC), Mark H. Pillsbury (Asst. General Counsel for TEC), and J.R. Johnson (the Executive Director of the TEC). It should be noted that many of the communications from Caldwell were an attempt to get someone at the TEC to act as a complainant against Berlanga.

On December 16, 2022, Caldwell posed several questions to Pillsbury including "I assume the TEC is the complainant, by and through you?" On February 28, 2023, Pillsbury responded to this question, "No. Prosecution is based out of Wilson County." He tried to explain that the statute just required that he (on behalf of the TEC) notify the local prosecutor. Subsequently, through communications with David Guilianelli, Caldwell was finally able to obtain an affidavit from Guilianelli dated May 30, 2023, stating that Berlanga had failed to file her personal financial statement as required on February 14, 2022, and that she had still not filed it as of the date of the affidavit (well over a year later).

Six days later, on June 6, 2023, Joshua Olivarez, an investigator with the Wilson County Attorney's Office, swore out a complaint against Alena Gutierrez-Berlanga in front of Wilson County Justice of the Peace Jared Shaw. The probable cause affidavit consisted of a single paragraph in which Olivarez specifically cited the affidavit of David Guilianelli. It averred that Guilianelli was a credible person and indicated that his affidavit was the basis of the charges against Berlanga. It indicated that Berlanga was a candidate for House District 31 in the March 1, 2022 primary election and that she failed to file a personal financial statement due on February 14, 2022, as required by Texas Government Code 572.031. The affidavit also stated, "The above-named defendant committed an offense if the individual was a state officer, candidate, or state party chair and knowingly and willfully failed to file a financial statement as required."

## ARREST OF JOSEPH DUBS

After the Wilson County Attorney's Office obtained the arrest warrant against Alena Gutierrez-Berlanga from Wilson County Justice of the Peace Jared Shaw, they sought assistance from the Wilson County Sheriff's Department in serving said warrant.

Wilson County Sheriff Jim Stewart gave a written statement concerning this matter. In his statement, he provided the following details:

> On June 6th, 2023, about mid- afternoon, Investigator Olivarez stopped by my office and advised me he was going to see the Judge to get a warrant issued for Alena Berlanga. A short time later he returned with the warrant.
>
> Lt. Dubs was seated in my office and Investigator Olivarez was standing in the door. I instructed Lt. Dubs to make sure a magistrate was available. Then contact Ms. Berlanga to notify her that a warrant had been issued and give her the opportunity to self- surrender. Thus being able to expedite the service of the warrant.
>
> Lt. Dubs indicated he understood the instruction. Investigator Olivarez stated his office would not have an issue with the warrant being served in that manner. They left my office and I had no further interaction with regards to the service of the warrant.
>
> About a week later Tom Caldwell, County Attorney, asked me to come by his office. He advised me that his office had opened a criminal investigation into Lt. Dubs, regarding his actions in relation to the service of the warrant on Ms. Berlanga.
>
> His recommendation was for me to ask Lt. Dubs to resign, due to the criminal investigation and possible charges.

As part of his investigation, Sergeant Dickerman also interviewed Investigator Joshua Olivarez. According to Dickerman's report, Olivarez provided the following information:

> Olivarez said he began the Berlanga investigation when the Texas Ethics Commission referred them an investigation alleging Berlanga violated a campaign finance law. After receiving the referral, Olivarez subsequently obtained an arrest warrant for Berlanga. Olivarez decided to have the sheriff's office serve the arrest warrant on Berlanga because the county attorney's office has history with Berlanga and have ongoing dealings with her and didn't want to strain the relationship with her. The sheriff's office has dealt with Berlanga many times and Dubs has a good working relationship with her. Stewart asked Dubs to advise Berlanga of the warrant and advise her they were going to allow her to turn herself into the Wilson County Jail without going through the normal booking process. Olivarez said Daniel Small facilitated the process of Berlanga turning herself in. Olivarez said he was aware that Dubs was tasked with contacting Berlanga to advise her of the warrant and that she was going to be allowed to turn herself in. Olivarez did not ask Dubs to ask any investigative questions when he contacted her.

(Dickerman's Report, pages 12-13 at 1.30).

From both Sheriff's Stewart's statement and Olivarez's interview, it is uncontroverted that Olivarez met with Dubs in the Sheriff's office. He was fully aware that Dubs was contacting Berlanga to advise her of the arrest warrant. He also approved the process where she would be allowed to go turn herself in without going through the normal booking process.

During his interview, Olivarez also stated that, a few days after Berlanga's arrest and release, he sent an email to Dubs, at the request of Caldwell, asking if there were any supplemental reports or body camera footage related to Berlanga's arrest. (Dickerman's Report, page 13 at 1.31). This is the email:

**From:** Joshua Olivarez <JOlivarez@wilsoncountytx.gov>
**Sent:** Friday, June 9, 2023 2:23 PM
**To:** Joseph Dubs <JDubs@wilsoncountytx.gov>
**Cc:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Subject:** Report/BodyCam

Lt. Dubs,

Can you get me a copy of any supplement reports and body cam footage for the arrest of Berlanga. I can pick up early next week when they are ready.

Thanks

Josh

It should be noted that Thomas Caldwell was courtesy copied on this email.

Dubs responded Olivarez's email saying there were no supplemental reports or body camera footage and the only contact Berlanga had with law enforcement was with Small when she was fingerprinted. (id.) This is that email:

| | |
|---|---|
| **From:** | Joseph Dubs |
| **Sent:** | Friday, June 9, 2023 2:54 PM |
| **To:** | Joshua Olivarez |
| **Subject:** | RE: Report/BodyCam |

We have report. No body cam as she turned herself in to JP1's office and the only contact with LE was being fingerprinted, which was done by Investigator Small, and Investigators don't wear body cams unless on crime scenes.

Dickerman's report indicates that Olivarez did not respond to Dubs' email. During his interview, Olivarez said he read Small's arrest report and it appeared to be a standard misdemeanor arrest report to him. Olivarez said he believed Dubs should have called in a supplement to Small's report saying he made contact with her prior to her arrest. Olivarez acknowledged he read in Small's report that Dubs did contact Berlanga to advise her of the warrant earlier in the day. (id.)

It is this two email exchange that ultimately led to Dubs arrest. The premise is that Dubs committed False Report to a Peace Officer when he failed to tell Olivarez that he had contacted Berlanga and that he intended to deceive Olivarez.

As the Sheriff stated in his report, Thomas Caldwell opened an investigation into Dubs shortly after the Berlanga arrest. This is confirmed by the following email:

**From:** Tom Caldwell
**Sent:** Tuesday, June 20, 2023 1:21 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Joshua Olivarez <JOlivarez@wilsoncountytx.gov>
**Subject:** Request for additional evidence in re Dubs, Joseph CONFIDENTIAL COMMUNICATION RELATED TO ONGOING CRIMINAL INVESTIGATION

Sheriff,

Please consider this official written notice that Lt. Joseph Dubs is the subject of an active open criminal investigation related to his participation in an arrest on or around June 6, 2023. Subsequent to this arrest, he made certain misstatements about his participation to my investigator and myself that we believe rise to the level of violations of certain Penal statutes. I defer to you on how you approach this situation, but you are strongly urged to immediately revoke all his access to any county or law enforcement systems and place him on some form of leave pending a determination by my office and any subsequent prosecution which may result. We also are examining other discrepancies that occurred during this particular arrest that could be of a criminal nature, but at this time, we suspect to be data entry errors made by staff. In the event that we receive additional evidence concerning this, I will promptly make you aware if I am able to.

At your earliest convenience, could you collect the following which we believe is or could be probative of criminal conduct:

1. A copy of facility camera footage from Tuesday, June 6, 2023 from 3:00 p.m to 7:00 p.m. for the following areas— The lobby of the main jail, the hallway leading down to the JP offices, the hallway outside of the JP offices, the booking area of the jail, and if available any footage from the squad room area;

2. A copy of all SO documents created during the arrest of Alena Berlanga, dob 12/12/1970;

3. A copy of Lt. Dubs complete personnel file and any other documents in the SO's possession concerning his employment that may not be releasable except to other law enforcement agencies; and

4. I need the following members of the WCSO to prepare official statements about their interactions with Lt. Dubs: Sheriff Jim Stewart, Deputy Chief Clint Garza, Sgt-Investigator Daniel Smalls, and Detention Sgt. Adam Guerrero;*

*We are seeking information about what Lt. Dubs was instructed to do, what he instructed others to do, and what he disclosed to you during your meeting with him this morning. We

have contacted Ms. Reyna and will get her statement.

As this is an official criminal investigation, I want to stress that Lt. Dubs is not to be allowed access to any witnesses, or to review or revise any existing documentation. This includes Ms. Berlanga. We are considering requesting an outside agency to finalize the investigation but have not done so at this time. I will advise you if that changes.

I also believe that numerous policy violations occurred and suggest your office open an internal investigation at well, to wit: numerous common police practices related to the treatment and handling of arrested persons that are required by your agency were modified for inexplicable reasons or ignored altogether and not completed during this arrest. This tends to suggest your agency is not objective in the performance of its duties. I know that is not the case, but the optics of this situation could lead a reasonable observer to think otherwise.

I am sorry to have to bring this matter to your attention. I remain committed to assisting you and your office to the fullest extent of the law and my ability. I do not consider the acts of any employee to be representative of your agency.

Best,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Sheriff Stewart sent the following email in response to Caldwell:

**From:** Jim Stewart JStewart@wilsoncountytx.gov
**Subject:** RE: Request for additional evidence in re Dubs, Joseph CONFIDENTIAL COMMUNICATION RELATED TO ONGOING CRIMINAL INVESTIGATION
**Date:** June 20, 2023 at 2:39 PM
**To:** Tom Caldwell tcaldwell@wilsoncountytx.gov

We will begin gathering the requested information.

After the initial email exchange between Stewart and Caldwell, there was no further communication between them for six days (at least not in the materials provided in response to the Grand Jury subpoena). Then, on June 26, 2023, there is a flurry of emails between the sheriff and Caldwell. The exchange begins with Sheriff Stewart inquiring about any documentation in the following email:

On Jun 26, 2023, at 11:42 AM, Jim Stewart
<JStewart@wilsoncountytx.gov> wrote:

**I have had Lt. Dubs on leave for a week. If I am to continue this leave I need to have some justification on file. This being documentation of a criminal violation or other administrative violation to the degree that leave with pay is warranted.**

Later that afternoon, Caldwell replies as follows:

**From:** Tom Caldwell
**Sent:** Monday, June 26, 2023 3:09 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff,

Not to sound like a lawyer, but I guess my answer depends---What is the status of the requests for the additional documents and video? If I can get those asap, I can finalize our end. Does Lt. Dubs wish to make a statement? That is up to him.

Here is the list from my previous email on the 20th—

1. A copy of facility camera footage from Tuesday, June 6, 2023 from 3:00 p.m. to 7:00 p.m. for the following areas— The lobby of the main jail, the hallway leading down to the JP offices, the hallway outside of the JP offices, the booking area of the jail, and if available any footage from the squad room area;

2. A copy of all SO documents created during the arrest of Alena Berlanga, dob 12/12/1970;

3. A copy of Lt. Dubs complete personnel file and any other documents in the SO's possession concerning his employment that may not be releasable except to other law enforcement agencies; and

4. I need the following members of the WCSO to prepare official statements about their interactions with Lt. Dubs: Sheriff Jim Stewart, Deputy Chief Clint Garza, Sgt-Investigator Daniel Smalls, and Detention Sgt. Adam Guerrero;*

*We are seeking information about what Lt. Dubs was instructed to do, what he instructed others to do, and what he disclosed to you during your meeting with him this morning.

Let me know when and I or someone else will come get. So Josh or any other investigators under your commission doesnt have to be involved.

Also, I am trying to document the Richard Nichols thing and need a statement from you and Clint if you dont mind to square up the file I am making in case Richard sues. We have to anticipate that he is going to. He has told numerous people he is.

Let me know,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Sheriff Stewart responds to Caldwell by pointing out that he (Caldwell) and Olivarez would be witnesses and that he would only turn the requested documents over to an official investigator assigned to the case. He also tells Caldwell that he is going to reinstate Dubs to duty in the following email:

On Jun 26, 2023, at 3:47 PM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:

Since you advised me that yourself and Investigator Olivarez are witnesses to this occurrence, there is not an official investigator to handle the requested items. I would only be comfortable turning this over to the investigator handling the case. The information you have requested is currently being compiled and will be in my possession.

Until I receive documentation to support the accusation, Lt. Dubs will be reinstated to duty.

Caldwell did not take that very well. Within an hour, he replies to the Sheriff and tells him that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquires, [a]re we going to have issues with your facility accepting this prisoner." He also offers to take Dubs to Karnes County if the Sheriff prefers that. His email is below:

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, June 26, 2023 4:45:27 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff,

Additionally, your email misstates what we discussed. We are not "witnesses" like those at your office that we asked you to compile statements from.

"We" are a licensed Peace Officer conducting an official investigation and a prosecutor for the same office. We are not "conflicted out" or unable to proceed with this prosecution despite your threat to remove my investigators commissions. That sounded danger-close to me to violating numerous provisions found in Title 8 of the Texas Penal Code.

The case against Dubs is proceeding. You may continue to interfere or attempt to hinder it if you desire, but that is a VERY bad idea. Reinstate this officer at your discretion. You have been advised of why that is not a good idea for your agency and for the County, yet persist in defending him.

We will have an arrest warrant issued NLT Tomorrow afternoon. Are we going to have issues with your facility accepting this prisoner? We can take him to Karnes if you like. Let me know and I will arrange it.

Tom Caldwell
Wilson County Attorney

The Sheriff responds, again asking to see what evidence has been collected against Dubs:

On Jun 26, 2023, at 4:48 PM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:

I agree, all I'm asking is for you to show me what you have collected.

Get Outlook for iOS

Caldwell then sends a final message to Stewart refusing to discuss the case and telling him that he "had numerous opportunities to handle this in-house."

**From:** Tom Caldwell tcaldwell@wilsoncountytx.gov
**Subject:** Re: Lt. Dubs Administrative Leave
**Date:** June 26, 2023 at 5:00 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov
**Bcc:** Josh Olivarez jolivarez@wilsoncountytx.gov

Sheriff,

With all due respect Sir, I am done discussing this case with you. You have had numerous opportunities to handle this in-house. Now it will be handled as I stated at the beginning.

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Two days after this exchange, in which Caldwell specifically told Sheriff Stewart that they would get a warrant for Dubs "NLT," Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs. The arrest warrant affidavit signed by DA Investigator Mercer specifically stated:

> On or about June 19th, 2023, I, Dwayne Mercer (Investigator for the Wilson County Attorney's Office), was asked to review a case against Wilson County Sheriff's Office employee identified as Lt. Joseph Dubs, whom the Wilson County Sheriff's Office employs as a Lieutenant. Joseph Dubs is the supervisor of the patrol and criminal investigation divisions. I reviewed all statements and supporting facts in this case, and the findings are listed below.

On June 6th, Investigator Joshua Olivarez requested an arrest warrant on an individual from Justice of the Peace PCT #1 Judge J. Shaw. Once the warrant was issued, Investigator Joshua Olivarez hand-delivered all documents related to the warrant to Joseph Dubs. After receiving complaints surrounding the June 6th arrest and through a sworn statement received from Judge Shaw, it was determined that the individual that was arrested on June 6th had contact with other law enforcement officers, including Investigator Small. Judge Shaw stated that the individual arrested on June 6th appeared at his office shortly before 5 pm that day; that individual stated that Joseph Dubs went to their property and notified them of the active arrest warrant.

On or about June 9th, 2023, Investigator Joshua Olivarez (Investigator for the Wilson County Attorney's Office) submitted an official request in furtherance of an ongoing criminal investigation via Email to Joseph Dubs (jdubs@wilsoncountytx.gov). Emails were sent and received on Wilson County's official email server. Investigator Joshua Olivarez requested a copy of any supplement reports and body cam footage related to an arrest on June 6th, 2023. Joseph Dubs was assigned to facilitate the arrest, and Investigator Joshua Olivarez had first-hand knowledge of this. Shortly after sending the request Joseph Dubs responded, "We have report. No body cam as she turned herself into JP1's office and the only contact with LE was being fingerprinted, which was done by Investigator Small, and Investigators don't wear body cams unless on crime scenes."

After reviewing incident report# 23-010816 from Investigator Small, it stated that Joseph Dubs had already contacted the individual arrested on June 6th as they are known. Investigator Small went on to say that Joseph Dubs had made arrangements for them to turn themselves in before 5 pm. After a review of the statement and report, it was found that Joseph's official answer to the request was false. Joseph, with intent to deceive, knowingly made a false statement that was material to a criminal investigation.

Investigator Mercer swore to these facts as set out in the probable cause affidavit in front of Judge Kenneth Griffin (Justice of the Peace Precinct 2) on June 28, 2023. According to the Report prepared by Investigator Olivarez, Judge Griffin issued a warrant for Dubs' arrest for the offense of False Statement to a Peace Officer.

Later, on the night of June 28, 2023, there were a couple of more emails between Thomas Caldwell and Investigator Olivarez concerning the Dubs case:

On Jun 28, 2023, at 22:31, Joshua Olivarez <JOlivarez@wilsoncountytx.gov> wrote:

Tom,

Do we have a time frame on the requested documents and video requested from the Sheriff's Office. Dwayne has also requested radio logs and vehicle gps for Dubs assigned county vehicle. Additionally requesting video of the outside cameras of the sheriffs office for June 6th.

Josh

Get Outlook for iOS

**From:** Tom Caldwell tcaldwell@wilsoncountytx.gov
**Subject:** Re:
**Date:** June 28, 2023 at 10:57 PM
**To:** Joshua Olivarez JOlivarez@wilsoncountytx.gov
**Cc:** Dwayne Mercer dmercer@wilsoncountytx.gov

I will speak to the Sheriff tomorrow about getting it. Im curious if there will be pushback.

I fully expect the Defendant to resist and fight.

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

These emails were both sent after 10 p.m. Although Olivarez indicated that Dwayne was requesting documents and videos, it appears that Mercer had already sworn out an arrest warrant affidavit and gotten an arrest warrant for Dubs. Caldwell's response stated, "I will speak to the Sheriff tomorrow about getting it. Im curious if there will be pushback." However, as noted above, there had already been an exchange between Caldwell and Sheriff Stewart on June 26, 2023, wherein the Sheriff pointed out that Caldwell and Olivarez would be witnesses and that he would only turn the requested documents over to an official investigator assigned to the case.

Finally, in his report, Olivarez stated that on June 30, 2023, arrangements were made with Sheriff Stewart for Dubs to turn himself in on the outstanding warrant. Olivarez wrote, "I met with Joseph Dubs at the Wilson County Sheriff's Office and executed the warrant, then booked him into jail."

## ANALYSIS:

Although the Comal County Criminal District Attorney was not assigned to the case against Joseph Dubs, it seems clear that an evaluation of the case against him is necessary to determine the propriety of the charge suggested against Mercer by Dickerman. Simply put, if there is probable cause that Dubs committed that offense, there can be no criminal offense of Official Oppression for arresting him for that offense as he would not have been unlawfully arrested.

## DID JOSEPH DUBS COMMIT THE OFFENSE OF FALSE STATEMENT TO A PEACE OFFICER

A person commits the offense of False Statement to a Peace Officer if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer the investigation. *See* TEX. PEN. CODE §37.08 (a).

Based on the facts as set out above, there are several problems with charging Dubs with this offense.

It is notable that Olivarez's request (which Dubs' statement was made in response to), asked, "[can] you get me a copy of any supplement reports and body cam footage for the arrest of Berlanga." However, it did not mention or ask for such materials as to Dubs telling Berlanga to turn herself in on the warrant, even though Olivarez was well aware that Dubs was going to do so. Dubs' reply accurately says that there is a report. That report was written by Deputy Smalls and actually documents that Joseph Dubs had made arrangements for Berlanga to turn herself in before 5 p.m. Dubs then explains that there isn't body camera footage because the only contact (during the arrest) was Smalls fingerprinting Berlanga and that the investigators don't wear body cameras unless on crime scenes. Considering the context in which Dubs made this reply, it could be argued that his statement is not false at all.

However, even if one were to consider Dubs' response to be false because he didn't mention his contact with Berlanga to tell her to turn herself in, the elements of the offense still cannot be met. Even if a false statement is made, the offense requires that the false

statement be made with an intent to deceive. In this case, the person presumably being deceived is Olivarez. However, Olivarez was already well aware that Dubs was going to tell Berlanga about the warrant and arrange for her to turn herself in. He met with Dubs in Sheriff Stewart's Office and discussed this plan. Indeed, to a large degree, he put this plan into play. He could have simply served the arrest warrant on Berlanga himself. Instead, Dubs was selected to notify her of the warrant because he had a good working relationship with her. It strains credibility to suggest that Dubs could have intended to deceive Olivarez about the fact that he did the very thing that Olivarez sent him to do. By way of analogy, it would be like asking someone you knew was at a meeting for a list of the attendees and then claiming that they intended to deceive you because they didn't include their own name on the list. Such a proposition is simply ridiculous. Additionally, Dubs candidly responded that there was a report and that report, by Smalls, clearly documented that Dubs had made arrangements for Berlanga to turn herself in before 5 p.m. If Dubs had any plans of deceiving Olivarez about telling Berlanga to turn herself in on the warrant, telling him about Smalls' report would definitely be fatal to his plan. Under these facts, there is simply no way a rational person could conclude that Dub had any intent to deceive Olivarez.

Finally, the offense also requires that the false statement be material to the investigation. In the context of TEX. PEN. CODE §37.08 (a) one Texas appellate court has recently held that the basic dictionary definition of "material" applies. The court noted:

> Webster defines "material" as "being of real importance or great consequence," "essential," or "relevant, pertinent." *Material*, Webster's Third New Int'l Dictionary (2002). Black's Law Dictionary similarly defines "material" as "[h]aving some logical connection with the consequential facts . . . essential." *Material*, Black's Law Dictionary (11th ed. 2019).

*McCreary v. State*, 649 S.W.3d 902, 905 (Tex. App.—Fort Worth 2022, pet ref'd).

In this case, the investigation in question was that of Berlanga. Olivarez tried to make Dubs' statement material to that investigation by writing in his report:

> On June 9th, 2023, I submitted an official request in furtherance on the ongoing criminal investigation on Berlanga via Email to Joseph Dubs (jdubs@wilsoncountytx.gov). The purpose of this email was because based upon my training and experience, I have noticed it is normal for arrested persons to communicate things to the arresting officer or

officers involved that could be considered "res gestae" statements that could support a prosecution.

Although this is clever, there is a missing link in the chain of logic necessary to establish the materiality of Dubs' statement to the Berlanga investigation. That link is that there was body camera footage of Dubs' interaction with Berlanga or, at the very least, that Berlanga made one of those incriminating "res gestae" statements to Dubs. However, there has never been any claim Dubs actually had a body camera on when he told Berlanga to go turn herself in. Furthermore, there has never been any allegation that Berlanga made any statements to Dubs that would have been helpful to her prosecution. Without one of those things occurring, Dubs telling her about the warrant and arranging for her to surrender herself would have no relevance to her prosecution. Without something more, whether or not Dubs told Berlanga to go turn herself in on the warrant is not of "real importance or great consequence" to proving she failed to file the personal financial statement.

Based on a careful analysis, there was not probable cause to believe Joseph Dubs committed the offense of False Statement to a Peace Officer. Thus, Dubs was unlawfully arrested for said offense.

**DID JOSHUA OLIVAREZ COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST**

"Public servant" means a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government. TEX. PEN. CODE §1.07 (41) (A). A public servant acting under color of his office or employment commits an offense if he intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful. TEX. PEN. CODE §39.03 (a)(1). A public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity. TEX. PEN. CODE §39.03 (b).

As an investigator with the Wilson County Attorney's Office, Joshua Olivarez was a public servant. Additionally, in his own report, Olivarez wrote, "I met with Joseph Dubs at the Wilson County Sheriff's Office and executed the warrant, then booked him into jail." Clearly, he was acting under the color of his office or employment when he did this. As set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful. Finally, as discussed above, Olivarez

was well aware of Dubs role in the Berlanga arrest and, thus, he knew that Dubs could not have intended to deceive him about that fact.

Of the various offenses presented in this investigation, this is the one most clearly established by the evidence.

## DID DWAYNE MERCER COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST

The definitions set out in the section above concerning Joshua Olivarez are also applicable to this section.

Like Joshua Olivarez, Dwayne Mercer was also employed as an Investigator with the Wilson County Attorney's Office. Thus, he was also a public servant. There is no doubt that he swore out the arrest warrant affidavit for Lieutenant Joseph Dubs. Clearly, he was acting under the color of his office or employment when he did this. Again, as set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful.

It is notable that, in his affidavit, Mercer stated, "Joseph Dubs was assigned to facilitate the arrest, and Investigator Joshua Olivarez had first-hand knowledge of this." However, he failed to include any details concerning Investigator Olivarez's role in arranging for Lieutenant Dubs to tell Berlanga of her arrest warrant and arranging for her to surrender herself.

Although there are generally no requirements for what information has to be included in offense reports, there are some requirements for information that must be included in warrant affidavits. In *Franks v. Delaware*, the United States Supreme Court held that if an affirmative misstatement is knowingly or recklessly included in a probable cause affidavit and it is material and necessary to establishing probable cause, the warrant is rendered invalid if the remaining content is insufficient to establish probable cause under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). State and federal courts have extended the *Franks* analysis to omissions from probable cause affidavits. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (recognizing that allegations of material omissions should be treated essentially like claims of material misstatements under *Franks*), *and Melton v. State*, 750 S.W.2d 281, 284 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (treating omissions essentially the same as material misstatements), *Darby v. State*, 145 S.W.3d 714, 722 (Tex. App. – Fort Worth 2004, no pet.) (applying *Franks* analysis to omissions); *Blake v. State*,

125 S.W.3d 717, 723-24 (Tex. App.–Houston [1st Dist.] 2003, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610-11 (Tex. App. – Dallas 1990, pet. ref'd); *Emack v. State*, 354 S.W.3d 828, 837-38 (Tex. App.—Austin 2011, no pet.) (assuming without deciding that *Franks* applies to material omissions from warrant affidavit).

In this case, I would anticipate that Mercer would argue that he did not know that Dubs arrest was unlawful because the magistrate found that there was probable cause based on his affidavit and issued the arrest warrant. However, the response to this argument lies in the information that was omitted from his affidavit. Additionally, when he was interviewed by Sgt. Dickerman, Mercer was specifically asked about "what Dubs' intent to be deceitful [was] in his reply to Olivarez's email." Mercer responded that he would be guessing either way and that his opinion didn't matter. He then added that he could say there was intent to be deceitful because there was no other evidence being submitted by Dubs. However, as discussed above, there has never been any claim that there was in fact any evidence from Dubs' interaction with Berlanga.

Based on all of the facts and circumstances, I find there is sufficient evidence to find that Mercer committed the offense of Official Oppression or, at the very least, was a party to Joshua Olivarez's commission of the offense.

## DID THOMAS CALDWELL COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST

The definitions set out in the sections above concerning Joshua Olivarez and Dwayne Mercer are also applicable to this section.

As the elected County Attorney for Wilson County, it is clear that Thomas Caldwell was a public servant at the time of the events in question. Clearly, he would have been acting under the color of his office in directing his investigators in the investigation of Joseph Dubs. Again, as set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful.

The problem in proving an offense of Official Oppression against Thomas Caldwell is the lack of direct evidence linking him to the arrest of Joseph Dubs. Through the use of his investigators, Caldwell has somewhat insulated himself from the arrest itself. Therefore, any criminal liability will have to be based on his responsibility, as a party, to the actions of Olivarez and Mercer. Additionally, when Mercer was interviewed by Sgt. Dickerman, Mercer specifically claimed that he decided to write the criminal complaint on his own without any consultation with

Caldwell. (Dickerman's report, page 14 at 1.34). Finally, Sgt. Dickerman specifically concluded in his report that, "[a]fter investigation, there is insufficient evidence at this time to show that Thomas Caldwell committed an offense." (Dickerman's report, page 19 at 1.59). It is very likely that the defense will attempt to utilize Dickerman's conclusion to undermine any prosecution of Caldwell.

However, there is sufficient evidence to find that Mercer lied about Caldwell's involvement in having Dubs arrested. Additionally, there is evidence from which one can reasonably infer that Thomas Caldwell was the primary force behind the Dubs arrest.

As a matter of practice, it would be highly unusual for an Investigator for the County Attorney's Office to decide to arrest a ranking member of the local Sheriff's Department without first consulting with the elected County Attorney. It would be one thing if the Investigator made a traffic stop where the deputy was driving while intoxicated or responded to an emergency call where it was required that the deputy be arrested immediately without time to consult with the County Attorney. However, even under those circumstances, it would be normal practice to notify the County Attorney of the arrest as soon as possible. However, this was not such an emergency situation. Mercer swore out an arrest warrant affidavit for Dubs in this case. Under these circumstances, he would have clearly had time to notify Caldwell that he intended to arrest a Lieutenant with the local Sheriff's Department.

Even stronger evidence that Caldwell was involved in the arrest of Dubs is found in the email exchange between him and Sheriff Stewart on June 26, 2023. In that exchange, Caldwell told Stewart in no uncertain terms that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquired, [a]re we going to have issues with your facility accepting this prisoner." He also offered to take Dubs to Karnes County if the Sheriff prefers that. Two days after this exchange, in which Caldwell specifically told Sheriff Stewart that they would get a warrant for Dubs "NLT," Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs, supposedly without any consultation with Caldwell. That is simply not believable.

Several extraneous acts also provide support for the proposition that Caldwell was behind Dubs' arrest. A former Wilson County Deputy, Carmen Mero, met with Calwell on a matter unrelated to the Dubs case. However, according to Mero, during that meeting, Calwell discussed the Dubs situation. She stated:

After introductions, Caldwell began the meeting by discussing the case in which Lieutenant Joe Dubs had been arrested the previous week by Josh Olivares, the peace officer working as the criminal investigator for the County Attorney's Office, pursuant to the self-surrender arrest of local political activist, Alena Berlanga on charges related to failure to report under laws related to campaign finance.

Caldwell referred to Lt. Dubs as "your Lying Lieutenant". He defamed Lt. Dubs' character saying that their relationship stemmed back to their careers with the City of San Antonio when Caldwell was a fireman and Dubs was a policeman. He indicated to me that Dubs was a bad cop and evidenced it by saying that Dubs "hung out" with the firemen because he was disliked by other policemen. He told me that he intended to clean up the WCSO, saying that the Chief Deputy Clint Garza was being investigated for criminal charges. He told me Jim Stewart was not following his (Caldwell's) direction and that he was going to insure the WCSO was run according to his (Caldwell's) standards, with or without Jim Stewart's cooperation.

According to Mero, Caldwell had suggested that she record their meeting. Shortly after the meeting, he began pressuring her to give him the recording. She also provided a copy of a text message that Sheriff Stewart had received from Caldwell concerning the recording:

*"Also Mero needs to get that recording to my office. Please.*
*She says she cannot figure out how to get it off her phone. Maybe John can help.*
*I will be back in office on Aug 1. The recording needs to be in the custody of my investigators by then. So they can give to Guadalupe. She was the one who thought it would be cute to record me and then ask questions about Dubs case.*
*I went along with it because I saw the implications she did not and I have nothing to hide. If she tries to tell you it was her private phone or she was off duty— it was an interview I granted her as County Attorney and she was there in her capacity as a County Deputy. The subject matter was about county business. If not in our custody by Aug 1, her or anyone elses continued refusal to provide will be considered obstruction and we will open a case when I get back. I continue to be amazed at the resistance I am getting here from most everyone at the SO for just trying to help.*
*Moral of the story— Never a good idea to record an Attorney. Especially THIS one."*

Caldwell and his office were recused from the Joseph Dubs case and Guadalupe County Attorney David Wilburn was appointed to the case in the following order:

Filed: 7/6/2023 3:02 PM
Accepted: 7/6/2023 3:08 PM
Genevieve Martinez
County Clerk
Wilson County, Texas
By: Mary Spoon
Deputy Clerk

NO. CC230703432

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| VS. | § | OF |
| JOSEPH ROY DUBS | § | WILSON COUNTY, TEXAS |

**ORDER APPOINTING ATTORNEY PRO TEM**

On this the 6th day of July, 2023, this court having found good cause permits County Attorney TOM CALDWELL to voluntarily recuse himself from the above styled and numbered case, and hereby appoints DAVID WILLBORN, County Attorney for Guadalupe County, Texas to serve as Wilson County Attorney Pro Tem pursuant to Texas Code of Criminal Procedure, Article 2.07. The attorney hereby appointed is to perform the duties of the office of County Attorney of Wilson County Texas in regard to the above styled and numbered case until further Order of this court. This appointment is effective upon the filing of the attached oath with the clerk of this court and the Texas Secretary of State, said oath to be maintained with the records in this case.

JUDGE HENRY L. WHITMAN JR.
PRESIDING COUNTY COURT
WILSON COUNTY, TEXAS

It is notable that, even after he had recused his office from the Dubs prosecution, Thomas Caldwell continued to attempt to involve himself in the case. There are numerous emails from Caldwell to Allison Lanty, a Guadalupe County prosecutor who was assigned to handle the Dubs case. In one those emails, dated November 7, 2023, he specifically stated, **"I may be a witness in this case. However, I also am the prosecutor who reviewed the evidence and made the charging decision."** (emphasis added).

**I may be a witness in this case. However, I also am the prosecutor who reviewed the evidence and made the charging decision. I was the prosecutor who drafted and filed the recusal motions. We have tendered to your office all the evidence and material we have, but if there was anything remotely related to the very broad and vague request made by Mr. DelPrado, it assuredly would be absolutely protected as prosecutorial work product between a prosecutor and his investigators. I am not sure what your thoughts or plans are, but in my opinion, these subpoenas (or mine at least) probably need to be quashed. Further, if my investigators were to have to testify, I imagine their testimony would have to be limited to the factual evidence, not their thoughts or impressions or guidance, if any, they received from me. Mr. DelPrado will get his chance at trial in front of a jury of the Defendants peers to grill me about if I had some beef with this guy that factored into all this.**

From this email, it is also clear that Caldwell wanted to prevent his investigators from testifying about any guidance they received from him.

Additionally, even though he had no legal authority to act in the Dubs matter after July 6, 2023, Caldwell sent the following directive to Sheriff Stewart:

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET – FLORESVILLE, TEXAS 78114 – (830) 393-7305; FAX (830) 393-7358

| | |
|---|---|
| To: | Sheriff Jim Stewart, Chief Deputy Clint Garza, all Wilson County Sheriff's Office Deputies and Staff, and Wilson County IT Personnel with control or access to the security camera system currently in use at the County complex located at 800 10th Street, Floresville, TX 78114 |
| From: | Tom Caldwell, Wilson County Attorney |
| Cc: | County Judge, Guadalupe County Attorney's Office, file |
| Date: | September 17, 2023 |
| RE: | *Notice to Preserve, Retain, and Provide a Copy Certain Security Camera Footage taken on June 6, 2023 and any other material or documents that could be related to the arrests of Alena Berlanga or Joseph Dubs in Anticipation of Litigation, and to comply with the Texas Public Information Act.* |

**DOCUMENT & ELECTRONIC DATA PRESERVATION NOTICE**

**PLEASE READ CAREFULLY**

You have been identified as a person or agency who may have documents or materials potentially related to the above-referenced matter. This letter serves as official notice to your agency and the individual recipients that Wilson County and the Wilson County Sheriff's Office (collectively, the "County") has a legal obligation to preserve and retain, without alteration, **all recorded footage that was made on June 6, 2023 by the specific external facility security cameras identified in the attached photos.**

The footage you previously provided to the Office of the Guadalupe County Attorney omitted any footage recorded that day from these two specific cameras. You are directed to IMMEDIATELY preserve and retain any original footage from the specific cameras identified, and then to provide a full and complete copy of the footage to the Office of the County Attorney, and the Wilson County IT Director to be held in anticipation of possible

*WCSO Notice to Preserve and Retain Letter 06.06.23*
-1-

litigation and public information requests, and also to be provided to the Office of the Guadalupe County Attorney to complete their records related to the request made for this evidence. You also are directed to immediately notify any vendor or outside company that may also have relevant information to preserve any and all records or metadata in their possession related to June 6, 2023.

You are further directed to preserve and retain any other recordings, documents, records, call logs, GPS data, or any other material in your possession that could be related to the arrest of Alena Berlanga, and the subsequent arrest of Joseph Dubs.

You and your department must not, in any way, destroy, alter, dispose of, or otherwise affect the integrity of these materials. In addition, you are directed to suspend any destruction protocols relating to any such recordings and or material in your possession, custody, or control that relates to any events that occurred at the Wilson County Sheriff's Office or elsewhere on June 6, 2023 that could be related to the two events outlined above. **This is not discretionary.**

**Please "REPLY" to the cover email containing this letter with an acknowledgement that you have read and understand it, that you have not destroyed or altered any of the materials subject to this notice, and that you agree to comply with the instructions herein.**

Thank you for your cooperation. If you have any questions or concerns about any of the measures set forth above, please feel free to call me at (830) 393-7305.

Sincerely,

Tom Caldwell
Wilson County Attorney

It is clearly sent on the official letterhead of his office and Caldwell signed it as Wilson County Attorney.

Based on the totality of the circumstances, it appears that Thomas Caldwell had a strong dislike of Lieutenant Joseph Dubs. There are several pieces of information that this goes back to a time period when they were both employed in Bexar County. Apparently, Caldwell decided that Dubs was a bad cop and needed to be run off. Caldwell's emails to Sheriff Stewart indicate that he basically attempted to bully the Sheriff into firing Dubs. Then, when that effort proved to be unsuccessful, he utilized the power of his office as County Attorney to bring criminal charges against Dubs. It also seems that when the Sheriff refused to provide materials and pointed out that Caldwell and Olivarez would be witnesses and would have a conflict, Mercer was brought in to secure the arrest warrant for Dubs. There is reason to believe this was merely a subterfuge to distance Caldwell from the arrest. It is certainly clear that Caldwell was more than eager to see Dubs prosecuted on facts that did not meet the elements of an offense.

Considering all of the statements, documents, emails, etc, I believe Thomas Calwell committed the offense of Official Oppression as a party to the actions of

Olivarez and Mercer in the arrest of Joseph Dubs. At the same time, this case will rely upon inferences if either Olivarez or Mercer do not agree to testify against him and it may be a difficult case to prove at trial.

**DID DWAYNE MERCER COMMIT AN OFFENSE OF FALSE STATEMENT TO A PEACE OFFICER**

As noted above, a person commits the offense of False Statement to a Peace Officer if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer the investigation. *See* TEX. PEN. CODE §37.08 (a).

During his interview with Sgt. Dickerman, Dwayne Mercer claimed that he decided to write the criminal complaint on his own without any consultation with Caldwell. (Dickerman's report, page 14 at 1.34). As set out in the analysis of Caldwell's criminal liability above, there is evidence that this statement is false. Furthermore, as an investigator with the Special Crimes Unit of the Texas Attorney General's Office, Sgt. Greg Dickerman was a peace officer. Mercer's statement would certainly be material to Dickerman's investigation of Caldwell for an offense of Official Oppression stemming from Dubs' arrest. Finally, there would be no reason such a false statement to have been made unless Mercer intended to deceive Dickerman about Caldwell's role in the Dubs' arrest.

Ironically, it appears that Mercer actually committed the offense that he wrongfully had Dubs arrested for. There is certainly much stronger evidence of his guilt than the case he presented against Dubs.

**DID DWAYNE MERCER COMMIT AN OFFENSE OF TAMPERING WITH A GOVERNMENTAL RECORD**

A person commits the offense of tampering with a governmental record if he knowingly makes a false entry in a governmental record. *See* TEX. PEN. CODE §37.10 (a). The offense is a Class A misdemeanor unless the actor's intent is to defraud or harm another, in which event the offense is a state jail felony. *See* TEX. PEN. CODE §37.10 (c) (1).

"Governmental record" means anything belonging to, received by, or kept by government for information, including a court record. *See* TEX. PEN. CODE §37.01 (1)(A). An indictment alleging tampering with a governmental record based on a false affidavit for a warrant will be held deficient if it fails to identify the specific

false statement made in the warrant affidavit. *State v. Smith*, 2017 Tex. App. LEXIS 1442, *16 (Tex. App.—Beaumont 2017, pet. ref'd) (per curiam) (mem. op., not designated for publication).

In *Ratliff v. State*, Ratliff was charged with official oppression and with tampering with a governmental record (a police offense report) following the arrest of Cory Nutt. 663 S.W.3d 106, 113-116 (Tex. Crim. App. 2022). The indictment specifically alleged that Ratliff did then and there, with intent to defraud or harm another, namely, Cory Nutt, make or present or use a governmental record, namely, a Llano Police offense report, in case number 17-130, by omitting or misrepresenting facts of the arrest of Cory Nutt, and the Defendant made or presented or used the governmental record with knowledge of its falsity. Thus, the State's theory of the case was that when Officer Grant Hard wrote his offense report, he left out all the information about Ratliff going into Nutt's trailer and that Ratcliff had tampered with a governmental record when he initialed Hard's report, indicating his approval.

After a trial, a jury found Ratliff guilty of misdemeanor tampering with a governmental record and Ratcliff appealed his conviction. Upon review, the Austin Court of Appeals agreed. It held that a rational jury could have concluded that when Ratcliff initialed the offense report that omitted events "pertaining to the legality of Nutt's arrest that Appellant himself witnessed, he made or used a governmental record knowing that the report was false." *Ratliff*, 604 S.W.3d at 74. In particular, the Austin Court relied on the testimony of Officers Schumacher and Bujnoch. *Id.* They had testified similarly that the offense report failed to mention the interaction between Nutt and the officers while he was in his home and the fact that there was no mention of Appellant entering Nutt's home and escorting him out without a warrant and without consent. *Id.* They also testified that there were no witnesses listed in the report, which Schumacher described as a "significant" omission. *Id.* The court of appeals further relied on Officer Bujnoch's testimony that offense reports "should be very comprehensive" and "should include witnesses that may or may not have information, both for the prosecutor and for the defense." *Id.* at 73. Additionally, the court of appeals noted "discrepancies between what was in the report and what was captured on the recording from Officer Shannon's body camera." *Id.* at 74.

Subsequently, the Court of Criminal Appeals granted discretionary review. The Court noted the testimony of Bujnoch and Schumacher concerning the things omitted from the report. The Court then stated:

> However, there was no testimony that anything included in Harden's report was false. The first four paragraphs of the offense report summarized the events that occurred prior to Appellant's arrival on the scene. When Appellant initialed the report, he would not have had personal knowledge of those events. In his interview with Schumacher, Appellant stated that he relied on Officer Harden's representations regarding those events ("That's what Grant told me"). None of the State's witnesses suggested that anything in these four paragraphs was false. Paragraph five was the only part of the report that involved events about which Appellant had personal knowledge and, like the preceding four paragraphs, there was no testimony or evidence presented indicating that this paragraph was false.

The Court found that, at most, the State's witness testimony supported the proposition that those witnesses disagreed with Harden's offense reporting style. But that testimony did not address the root of the issue—Ratliff's knowledge that the account of the offense in the report were false. The Court stated, "[i]t is difficult to conceive of someone being convicted of falsifying a governmental record when nothing in the record is, in fact, false." As a result, the Court concluded that the evidence was insufficient.

However, the Court continued its analysis. The Court went on to note the indictment in the case alleged that Ratliff engaged in the conduct of "omitting or misrepresenting" the facts of Nutt's arrest and that Ratliff's sufficiency challenge requires them to determine whether the conduct of omitting or misrepresenting specifics of Nutt's arrest in an offense report constituted an offense under the tampering statute. The Court expressly held that it did not.

The Texas Penal Code provides that a person commits an offense only if he commits an *act* or an *omission*. Tex. Penal Code Ann. § 6.01(a). An "act" is defined as "a bodily movement, whether voluntary or involuntary, and includes speech." Tex. Penal Code Ann. § 1.07(a)(1). By contrast, an "omission" is defined as a "failure to act." Tex. Penal Code Ann. § 1.07(a)(34). A failure to act—an omission—is not an offense unless the defendant has a legal duty to act. Tex. Penal Code §§ 1.07(a)(30), 6.01(c); *Billingslea v. State*, 780 S.W.2d 271, 276 (Tex. Crim. App. 1989); *see also State v. Taylor*, 322 S.W.3d 702, 705 (Tex. Crim. App. 2010).

The Court of Criminal Appeals held that the Austin Court erred by failing to address section 6.01(c)'s duty to act requirement in its analysis. As addressed above, a person who omits to perform an act does not commit an offense unless a law as

defined by section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to act. Tex. Penal Code Ann. § 6.01(c). As applied to the facts of this case, Texas Penal Code section 37.10(a)(5), under which Appellant was convicted, does not make an omission an offense within the meaning of Texas Penal Code section 6.01(c). Nor does the tampering statute prescribe a duty to act. Without a duty to act, any subsequent failure to act is not an offense. *See Billingslea*, 780 S.W.2d at 274; *see also Florio v. State*, 784 S.W.2d 415, 416-17 (Tex. Crim. App. 1990).

Because the tampering statute does not create an offense through an omission or create a duty to include certain information in a governmental record, the Court of Criminal Appeals found the evidence was insufficient to support a conviction. Consequently, the Court reversed the judgment of the Austin Court of Appeals and rendered an acquittal for the offense of tampering with a governmental record.

As explained in *Ratliff*, the facts of the instant case do not fit the offense of tampering with a governmental record. There can be little doubt that a probable cause affidavit submitted to a court meets the definition of a governmental record. However, as in *Ratliff*, none of the statements of fact set out in affidavit are demonstrably false. Although the affidavit was ultimately misleading and led to an improper arrest of Lieutenant Dubbs, the problem lies in information being omitted from the affidavit instead of falsity of the information that was included in the affidavit. For these reasons, the evidence will not support a charge of tampering with a governmental record against any of the involved parties.

## PERJURY

A person commits the offense of perjury if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. *See* TEX. PEN. CODE §37.02 (a). An offense under this section is a Class A misdemeanor. *See* TEX. PEN. CODE §37.02 (b).

As with tampering with a governmental record, the facts of the instant case do not fit the offense of perjury. Again, the problem lies in information being omitted from the affidavit (as will be discussed further below) instead of falsity of the information that was included in the affidavit. For this reason, the evidence will not support a charge of perjury against any of the involved parties.

## POTENTIAL ETHICAL VIOLATIONS BY THOMAS CALDWELL

Texas Disciplinary Rule of Professional Conduct 3.09 (Special Responsibilities of a Prosecutor) specifically provides that "[t]he prosecutor in a criminal case shall: (a) refrain from prosecuting or threatening to prosecute a charge that the prosecutor knows is not supported by probable cause." In the instant case, there is reason to believe that Thomas Caldwell violated this rule on June 26, 2023 by sending the following email:

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, June 26, 2023 4:45:27 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff.

Additionally, your email misstates what we discussed. We are not "witnesses" like those at your office that we asked you to compile statements from.

"We" are a licensed Peace Officer conducting an official investigation and a prosecutor for the same office. We are not "conflicted out" or unable to proceed with this prosecution despite your threat to remove my investigators commissions. That sounded danger-close to me to violating numerous provisions found in Title 8 of the Texas Penal Code.

The case against Dubs is proceeding. You may continue to interfere or attempt to hinder it if you desire, but that is a VERY bad idea. Reinstate this officer at your discretion. You have been advised of why that is not a good idea for your agency and for the County, yet persist in defending him.

We will have an arrest warrant issued NLT Tomorrow afternoon. Are we going to have issues with your facility accepting this prisoner? We can take him to Karnes if you like. Let me know and I will arrange it.

Tom Caldwell
Wilson Countv Attornev

Additionally, Texas Disciplinary Rule of Professional Conduct Rule 3.03 "Candor Toward the Tribunal" specifically provides that "[a] lawyer shall not knowingly… fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act." In the instant case, when Caldwell was involved in obtaining a warrant (as he told the Sheriff "we" would do) using an affidavit that omitted the fact that his office, specifically Investigator Olivarez, had actually arranged to have Dubs notify Berlanga of her warrant, the very fact that was the basis of the False Statement to a Peace Officer charge (Dubs attempted to deceive Olivarez by failing to say he told Berlanga to turn herself in in his email), this failure to disclose this key piece of information led to Dubs being wrongfully arrested as set out above.

Finally, Texas Disciplinary Rule of Professional Conduct Rule 5.03 "Responsibilities Regarding Nonlawyer Assistants" provides that, with respect to a non-lawyer employed or retained by or associated with a lawyer, " a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the persons conduct is compatible with the professional obligations of the lawyer; and a lawyer shall be subject to discipline for the conduct of such a person that would be a violation of these rules if engaged in by a lawyer if: the lawyer orders, encourages, or permits the conduct involved." In the event that Caldwell claims that he is not responsible for the omission from the arrest warrant affidavit because it was drafted by Investigator Mercer, he should still be responsible under this rule. It is clear that, as county attorney, he had direct supervisory authority over his investigators, including Mercer. As set out above, it would violate the rules for Caldwell to fail to disclose a material fact in an arrest warrant affidavit that led to a warrant being improperly issued and Dubs being wrongfully arrested. There is reason to believe that Caldwell ordered or encouraged Mercer to obtain the warrant (based on his email to the Sheriff). However, regardless of whether he ordered or encouraged it, he at the very least permitted it and that also violates the rule.

## CONCLUSION

Based on my review of Sgt. Dickerman's investigation along with all of the supporting documents such as witness statements and emails, there is certainly probable cause to believe that members of the Wilson County Attorney's Office committed both criminal offenses and ethical violations in relation to the arrest of Joseph Dubs. Ultimately, however, the decision of whether or not to file a case should not just be a decision of whether the standard of probable cause can be met. At trial, the State is required to prove a defendant committed an offense beyond a reasonable doubt. Additionally, the jury's verdict must be unanimous. This requires a consideration and weighing of the strengths and weaknesses of a case.

Although it is my opinion that Thomas Caldwell is the person most responsible for the Dubbs arrest, the weakest criminal case is against Caldwell. Each of the defendants would no doubt argue that the fact that a magistrate found probable cause and issued a warrant for Joseph Dubs shows that his subsequent arrest was legal and, because he was not subjected to an unlawful arrest, they could not have committed official oppression in relation to the Dubs arrest. In addition, Thomas Caldwell will undoubtedly rely upon Mercer's claim that he decided to write the criminal complaint on his own without any consultation with Caldwell. Finally, Sgt. Dickerman specifically concluded in his report that, "[a]fter investigation, there is insufficient evidence at this time to show that Thomas Caldwell committed an

offense." (Dickerman's report, page 19 at 1.59). Undoubtedly, the defense will attempt to utilize Dickerman's conclusion to undermine any prosecution of Caldwell. These facts make this a difficult case for the State.

On the other hand, the strongest evidence that Caldwell was involved in the arrest of Dubs is found in the email exchange between him and Sheriff Stewart on June 26, 2023. In that exchange, Caldwell told Stewart in no uncertain terms that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquired, [a]re we going to have issues with your facility accepting this prisoner." He also offered to take Dubs to Karnes County if the Sheriff preferred that. In light of that exchange, it is simply not believable that, two days later, Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs without any consultation with Caldwell.

The decision of whether or not to file a criminal charge also requires consideration of issues beyond the likely success of a subsequent prosecution. Texas Code of Criminal Procedure 2.01 specifically provides, "[i]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done."

As set out in the analysis above, I have found there is probable cause to believe Thomas Caldwell abused his public office as county attorney. However, the highest level of offense that is supported by the evidence is a Class A misdemeanor. The maximum punishment for such an offense is 1 year in a county jail. Additionally, the potential defendants likely have no criminal record (as such would have likely prevented them from being peace officers or the county attorney). Therefore, it is my opinion that even if the State was successful in obtaining a conviction against any of them, they would likely receive community supervision (commonly referred to as probation). Thus, this is not a situation where the State would be seeking a lengthy prison sentence against a violent criminal to protect the public. The primary benefit of a criminal prosecution against Thomas Caldwell would be to ensure that he does not have the opportunity to engage in such conduct again. That in turn naturally leads to a question of what is the most effective way to achieve that result.

If the State files a case of Official Oppression against Caldwell, he is arrested, and the State is ultimately unsuccessful in obtaining a conviction, I expect that Caldwell would then attempt to expunge his arrest and all records and documents in this matter, effectively making this matter disappear from the public record. On the other hand, an arrest is a "threshold requirement under the expunction

statute." *Carson v. State*, 65 S.W.3d 774, 779 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g). Thus, if this case is not filed and Caldwell is not arrested, he is not entitled to an expunction and the records of his actions will remain.

Currently, Thomas Caldwell does not hold public office. Should he seek public office in the future, all of the statements and reports in this case would be available for consideration. In effect, instead of six jurors in a misdemeanor trial, Caldwell's jury would be the entire electorate who could decide if Caldwell is suitable to hold public office in light of his conduct in this case. Based on the difficulties in seeking a conviction in this case, I believe that ensuring that all of the documents concerning Caldwell's conduct are preserved may ultimately provide more protection for the public than prosecuting this case.

Finally, I have also considered availability of other remedies that may be used to deal with the unacceptable conduct set out above. Currently, Joseph Dubbs has a pending civil suit filed against Caldwell based on his role in having him arrested as set out above. Additionally, there appears to be grounds to believe that Thomas Caldwell committed ethical violations and may be subject to disciplinary action by the State Bar or Texas. Our office has an ethical obligation to submit this matter to the Bar for their consideration and will do so. Therefore, Caldwell's conduct will be subject to review and professional discipline in a different forum.

It is because of all of these considerations that I have decided that no prosecution will brought in this case.

Signed this 27th day of June, 2025.

Sammy McCrary
Chief Felony Prosecutor

# EXHIBIT No. 9

## McCrary five page report signed on June 27, 2025

**THE STATE OF TEXAS** **DISTRICT COURT**
**VS** **OF**
**JOSHUA OLIVAREZ** **WILSON COUNTY, TEXAS**

I, Sammy McCrary, Chief Felony Prosecutor of Comal County, Texas will not prosecute Joshua Olivarez [redacted] for the offense of Official Oppression (arising from the arrest of Alena Berlanga) alleged to have been committed on or about June 6, 2023, for the following reasons:

Sgt. Greg Dickerman with the Special Crimes Unit of the Texas Attorney General's Office was assigned to investigate Wilson County Attorney Thomas Caldwell for the offense of Official Oppression. The Comal County Criminal District Attorney's Office was appointed as Attorney Pro Tem by Russell Wilson, Judge of the 218th District Court, after Audrey Louis, District Attorney for the 81st Judicial District, recused her office from the investigation of Caldwell. District Attorney Louis recused her office because, at the time, Caldwell had announced that he was running against her for the office of District Attorney. Sgt. Dickerman has now submitted his report detailing his investigation, as well as various documents and statements that he collected as part of his investigation, and his conclusions concerning which offenses were committed.

The first part of Sergeant Dickerman's investigation arises from the arrest of Alena Gutierrez-Berlanga for an offense under Texas Government Code §572.034 for failing to file a personal financial statement. Ultimately, Dickerman concluded that Wilson County Attorney's Office Investigator Joshua Olivarez committed an offense of Official Oppression by arresting her for that offense.

The facts of this case include a tangled mess of public officials and peace officers in Wilson County. This includes another investigation that the Comal County Criminal District Attorney's Office is not assigned to. However, that case is intertwined with this case in a way that makes it necessary to discuss it in evaluating this case.

## ARREST OF ALENA GUTIERREZ-BERLANGA

Ms. Alena Gutierrez-Berlanga ran a no kill shelter in Wilson County. She had also run for office on one prior occasion. According to some of the documents submitted, including one statement that refers to her as a political gadfly, it would appear that Berlanga had also irritated one or more of the public officials in Wilson County.

This matter began with Alena Gutierrez-Berlanga filing to run for House District 31 in the March 1, 2022 primary election. As a candidate for office, she was required to file a variety of financial documents. Those documents included a personal financial statement that was required to be filed with the Texas Election Commission (TEC) pursuant to Texas Government Code 572.021. Based on documents from the Texas Election Commission, Ms. Berlanga failed to file any of the required documents. Once the TEC determined that Berlanga had failed to file the personal financial statement as required, they had a statutory duty to send a written statement of their determination to the appropriate prosecuting attorney of the state under Texas Government Code §572.031.

The TEC carried out its duty under Texas Government Code 572.021 by sending a letter to Wilson County Assistant District Attorney C. Ellison on December 9, 2022. The referral letter also had a packet of documents that were business records of the commission. Those documents included records to establish the actions the commission took attempting to get Berlanga to comply with Texas Government Code §572.021. Those records included copies of two reminder letters that were mass emailed to all candidates on February 1, 2022, and February 10, 2022, to remind them of the February 14, 2022, filing deadline for their personal financial statements.

After the referral letter was sent, there were a number of email communications sent between Wilson County Attorney Thomas Caldwell and various employees and officials with the TEC. Those persons include David Guilianelli (a custodian of records for TEC), Mark H. Pillsbury (Asst. General Counsel for TEC), and J.R. Johnson (the Executive Director of the TEC). It should be noted that many of the communications from Caldwell were an attempt to get someone at the TEC to act as a complainant against Berlanga.

On December 16, 2022, Caldwell posed several questions to Pillsbury including "I assume the TEC is the complainant, by and through you?" On February 28, 2023, Pillsbury responded to this question, "No. Prosecution is based out of Wilson County." He tried to explain that the statute just required that he (on behalf of the TEC) notify the local prosecutor. Subsequently, through communications with David Guilianelli, Caldwell was finally able to obtain an affidavit from Guilianelli dated May 30, 2023, stating that Berlanga had failed to file her personal financial statement as required on February 14, 2022, and that she had still not filed it as of the date of the affidavit (well over a year later).

Six days later, on June 6, 2023, Joshua Olivarez, an investigator with the Wilson County Attorney's Office, swore out a complaint against Alena Gutierrez-Berlanga in front of Wilson County Justice of the Peace Jared Shaw. The probable cause affidavit consisted of a single paragraph in which Olivarez specifically cited the affidavit of David Guilianelli. It averred that Guilianelli was a credible person and indicated that his affidavit was the basis of the charges against Berlanga. It indicated that Berlanga was a candidate for House District 31 in the March 1, 2022 primary election and that she failed to file a personal financial statement due on February 14, 2022, as required by Texas Government Code 572.031. The affidavit also stated, "The above-named defendant committed an offense if the individual was a state officer, candidate, or state party chair and knowingly and willfully failed to file a financial statement as required."

In his investigation of Thomas Caldwell, Sgt. Dickerman concluded that Olivarez committed the offense of Official Oppression under Texas Penal Code 39.03(a)(1). (page 20 at 1.62). He specifically concluded that, based on his review of his interviews with Berlanga and communications between the TEC and the Wilson County Attorney's Office, Berlanga did not knowingly and willfully fail to file a financial statement as required by Texas Government Code 572.034. He stated that Olivarez's investigation lacked any steps to establish if Berlanga knowingly and willfully failed to file the financial statement. He says that Olivarez wrote the complaint for Berlanga based solely on the civil written statement from the TEC. He noted that, upon receiving the complaint, Judge Shaw had changed the statute to 572.034 because it fit better. Dickerman specifically states, "Olivarez intentionally subjected Berlanga to an unlawful arrest by not taking investigative steps to establish probable cause for the criminal statute 572.034." Sgt. Dickerman specifically notes two problems with Olivarez's conduct: he wrote the complaint for the civil statute 572.031 and "insufficient investigative steps were taken to establish probable cause based on the statute requiring the act to be knowingly and willfully."

## ANALYSIS:

Although the Comal County Criminal District Attorney has not been assigned to the case against Alena Gutierrez-Berlanga, it seems clear that an evaluation of the case against her is necessary to determine the propriety of the charge suggested against Olivarez by Dickerman. Simply put, if there was probable cause to believe Berlanga committed the offense under Texas Government Code §572.034, then she was not unlawfully arrested. Without an unlawful arrest, there can be no offense of Official Oppression under Texas Penal Code §39.03(a)(1).

Except as provided by Section 572.0211, a state officer, a partisan or independent candidate for an office as an elected officer, and a state party chair shall file with the commission a verified financial statement complying with Sections §572.022 through §572.0252. Tex. Gov't Code §572.021 The commission shall conduct a continuing survey to determine whether all individuals required to file financial statements under this subchapter have filed statements in compliance with this subchapter. If the commission determines that an individual has failed to file the statement in compliance with this subchapter, the commission shall send a written statement of the determination to the appropriate prosecuting attorneys of the state. Tex. Gov't Code §572.031. An individual commits an offense if the individual is a state officer or candidate or state party chair and knowingly and wilfully fails to file a financial statement as required by this subchapter. Tex. Gov't Code § 572.034. In a prosecution for failure to file a financial statement under this section, it is a defense that the individual did not receive copies of the financial statement form required by this subchapter to be mailed to the individual. Id.

A prosecuting attorney is not required to negate the existence of a defense in the accusation charging the commission of an offense. *See* TEX. PEN. CODE §2.03(b).

In this case, it is uncontroverted that Alena Gutierrez-Berlanga failed to file her personal financial statement as required by Tex. Gov't Code § 572.021. Thus, the only issue is whether there is probable cause to establish that she "knowingly and wilfully" failed to do so.

"Proof of a culpable mental state almost invariably depends upon circumstantial evidence." *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet ref'd) (citing *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd)); *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). By its nature, a culpable mental state must generally be inferred from the circumstances. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). We cannot read an accused's mind, and absent a confession, we must infer his mental state from his acts, words, and conduct. *Id.* "Whether an act is done willfully is not ordinarily the subject of direct proof, but it is a state of mind of the accused which the jury may find from the evidence as a whole." *Ferrantello v. State,* 256 S.W.2d 587 at 593 (Tex. Crim. App. 1952).

The Texas Supreme Court has held that a candidate was charged with knowledge of the specific provisions of the Election Code with which she must

comply, and even the fact that she may have relied upon party officials' statements did not excuse her from complying with the law. *See Brown v. Walker*, 377 S.W.2d 630, 632 (Tex. 1964); *see also Leach v. Fischer*, 669 S.W.2d 844, 847 (Tex. App.—Fort Worth 1984) (orig. proceeding). Additionally, the Court has recognized that enforcement of election code provisions would be problematic if cases focused on whether the defendant knew the specific code provisions, and whether the defendant operated under a correct legal interpretation. They also recognized that a defendant could avoid enforcement simply by refusing to learn the election laws which would do violence to the general proposition that ignorance of the law is not a defense. *Osterberg v. Peca*, 12 S.W.3d 31, 39 (Tex. 2000). "It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect." *See* TEX. PEN. CODE §8.03(a).

## CONCLUSION:

In light of the facts and circumstances set out above, Sgt. Dickerman's conclusion Berlanga did not knowingly and wilfully fail to file a financial statement as required by Texas Government Code 572.034 is simply wrong. As a candidate for office, Berlanga was responsible for knowing the specific provisions of the Election Code with which she was required to comply. There is ample evidence from which a jury could conclude beyond a reasonable doubt that she knowingly and wilfully failed to file her personal financial statement. If convicted, there would be legally sufficient evidence to affirm her conviction. Such evidence would certainly reach the threshold for probable cause.

Additionally, because there is sufficient evidence to show that Berlanga did in fact violate Texas Government Code 572.034, Olivarez did not commit the offense of Official Oppression under Texas Penal Code 39.03(a)(1) by subjecting Berlanga to an unlawful arrest. Although Dickerman faults Olivarez for not conducting a more thorough investigation, that is not sufficient to support the charge of Official Oppression as he suggests. As a result, this charge is rejected and Joshua Olivarez will not be prosecuted for the offense of Official Oppression arising from the arrest of Alena Berlanga.

Signed this 27th day of June, 2025.

Sammy McCrary
Chief Felony Prosecutor

# EXHIBIT No. 10

## Tharp letter sent to the Honorable Judge Russell Wilson on July 1, 2025, with both reports.

# Comal County Criminal District Attorney

## JENNIFER THARP

July 1, 2025

Honorable Russell Wilson
218th Judicial District Court
1405 Campbell Ave., Suite 101
Jourdanton, Texas 78026-3416

Re: Attorney Pro Tem Appointment

Dear Judge Wilson,

Enclosed please find my Non-Prosecution Affidavits for the case my office was appointed to review involving Official Oppression committed by Thomas Paul Caldwell, former County Attorney of Wilson County, and/or employees of his office. See Attachments A and B. Members of my office met in person with Lt. Dubbs and his wife to discuss our rejection of charges. We have also provided him with copies of the Non-Prosecution Affidavits and will be providing him with other case file documents he has requested with the exception of records obtained through grand jury subpoenas issued by my office. To the extent we receive requests for records obtained by grand jury subpoena, a request for permission to release said records will be filed with this Court.

We will also be providing the above findings to the State Bar of Texas for their consideration and determination related to ethical violations we believe Thomas Caldwell has committed.

**After review of the investigation submitted by the Attorney General's Office, review of additional records my office obtained, and analysis of the law, it was determined that Lt. Dubbs did not commit the offense of False Report,** as further detailed in Attachment A. As such, we are also sending a copy of this letter and the Non-Prosecution Affidavits to District Attorney Audrey Lois and Wilson County Attorney Theresa Nettles for them to supplement or update a Brady Disclosure, if such exists, related to Lt. Dubbs' ability to testify in other Wilson County cases. Pursuant to Texas Rules of Evidence 608, we do not believe that attempts to impeach Lt. Dubbs on the False Report arrest would be appropriate.

199 Main Plaza, Suite 2007, New Braunfels, Texas 78130-5161 Tel: (830) 221-1300 Fax: (830) 608-2008

JENNIFER THARP
Comal County Criminal District Attorney

Should you have any questions or want to discuss this request further, please feel free to contact me at your convenience.

Sincerely,

Jennifer Tharp

cc with enclosures:

Hon. Audrey Louis
Hon. Theresa Nettles

199 Main Plaza, Suite 2007, New Braunfels, Texas 78130-5161 Tel: (830) 221-1300 Fax: (830) 608-2008

# EXHIBIT No 11

## Response pleading filed by Dubs in his civil lawsuit on July 2, 2025 that contains McCrary report. First public publication

Filed
7/[illegible]/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

**CAUSE NO. CVW2400116**

| | | |
|---|---|---|
| **LIEUTENANT JOSEPH DUBS,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **218TH JUDICAL DISTRICT** |
| | § | |
| **WILSON COUNTY and TOM CALDWELL,** | § | |
| | § | |
| | § | |
| **DEFENDANTS.** | § | **WILSON COUNTY, TEXAS** |

**PLAINTIFF'S RESPONSE TO DEFENDANT WILSON COUNTY AND TOM CALDWELL'S AMENDED PLEA TO THE JURISDICTION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, LIEUTENANT JOSEPH DUBS ("Dubs" or "Plaintiff") and files this *Plaintiff's Response to Defendant Wilson County and Tom Caldwell's Plea to the Jurisdiction* and in support thereof respectfully shows unto the Court the following:

## I. INTRODUCTION

1. *Defendant Wilson County and Tom Caldwell's Amended Plea to the Jurisdiction* ("Motion") misunderstands the nature and context of Dubs' constitutional claims and requests for declaratory and injunctive relief against Defendant Wilson County, and Dubs' defamation claim against Defendant Tom Caldwell ("Caldwell"). Dubs amended his Petition on December 18, 2024, clarifying the context of his claims and the nature of the claims against each Defendant. Now, Defendants bring a Plea to Jurisdiction that is seemingly predicated on Dubs' previous petition. Defendants' arguments focus on irrelevant case law and inapplicable arguments. As such, this Court should deny Defendants' Motion.

2. Defendants attempt to hide behind the shield of absolute prosecutorial immunity asserting that because Tom Caldwell was a prosecutor, all Dubs' claims are barred. This argument

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

blatantly ignores the factual allegations asserted in Plaintiff's First Amended Petition. Dubs' claim for defamation relates to the overall scheme Caldwell implemented to gain power and advance his political career. Caldwell used his power to target Dubs because of his political affiliations and use him as a scapegoat to invent the campaign promise that Caldwell was "rooting out corruption" in Wilson County in his political campaign for 81st District Attorney. The defamatory acts that are the subject of Dubs' defamation claim occurred while Caldwell was on the campaign trail and made in Caldwell's capacity as a *candidate*—not a prosecutor. As such, Caldwell cannot hide behind the veil of prosecutorial immunity for acts taken outside his role as prosecutor and acts that are not intimately associated with the judicial process.

3. Defendants' Motion ignores the limited context of Dubs' defamation claim. Dubs brings a defamation claim only against Caldwell in his individual capacity. To clarify, Dubs does *not* assert any tort claims against Wilson County. The only claims against Wilson County are for violations of the Texas Constitution, and declaratory and injunctive relief—which are permitted under Texas law. The only claim against Caldwell is in his individual capacity for defamation. As such, the Texas Torts Claim Election of Remedies does not apply and does not bar Dubs' tort claim against Caldwell in his individual capacity.

4. Finally, Dubs' claims under the Texas Constitution do not seek monetary damages—only equitable relief. Dubs' claims are properly before this Court because they seek to remedy actions that violate his constitutional rights and prevent those actions from occurring in the future.

## II. BACKGROUND

5. Dubs brings this lawsuit for defamation and for violation of the Texas Constitution's Bill of Rights. Plaintiff brings this lawsuit because Tom Caldwell has tyrannically

Filed
7/2/2025 4:00 PM
Deborah Bryan
Wilson County
District Clerk

used the powers of his office with Defendant Wilson County to illegally and unjustly investigate, arrest, seize, detain, and prosecute Plaintiff without probable cause and to oppress his political associations, political speech and his other freedoms guaranteed by the Texas Bill of Rights, in violation of Article 1, Sections 3, 8, 9, 19, 27, and 29. In short, Caldwell forced, caused, or motivated Defendant Wilson County to violate Plaintiff's constitutional rights. Caldwell further used this unlawful and pretextual investigation, arrest, and prosecution of Plaintiff Dubs to defame Dubs while Caldwell was campaigning for the 81st District Attorney seat in 2024-2025.

## III. UNDISPUTED FACTS

6. Plaintiff agrees that it is undisputed that On June 6, 2023, Investigator Josh Olivarez obtained an arrest warrant against Alena Berlanga and that Lt. Dubs contacted Ms. Berlanga that same day for an expedited booking process. Plaintiff further agrees that on June 28, 2023, Duane Mercer filed a Complaint against Lt. Dubs containing representations of probable cause. Judge Kenneth Griffin signed a warrant for the arrest of Lt. Dubs on June 28, 2023 as well. On July 6, 2023, County Attorney Caldwell filed a Motion for Recusal and Appointment of a County Attorney *Pro Tem* for the investigation and prosecution of Lt. Dubs. An Order Appointing an Attorney Pro Tem was filed on July 6, 2023 as well. Plaintiff denies all other facts, express or implied, within Defendants' Amended Motion for Plea to the Jurisdiction.

## IV. LEGAL STANDARD

7. "A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). When a plea to the jurisdiction is filed, "[t]he trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226–27 (Tex. 2004). A plea to the jurisdiction may be

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

presented as either (1) a challenge to the sufficiency of the pleadings, or (2) a challenge to the existence of jurisdictional facts. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties and necessary to resolve the jurisdictional issues raised. *Id.* at 227. By contrast, "[w]hen a plea to the jurisdiction challenges the pleadings"—as here—"[the trial court] determine[s] if the pleader has alleged facts that affirmatively demonstrate [its] jurisdiction to hear the cause." *Id.* at 226.

8. In making this determination, courts "construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent." *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). Courts must "take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). If the evidence creates a fact issue regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015). While plaintiffs have the burden to plead facts showing jurisdiction, the "plaintiff is not required to marshal all [its] evidence and conclusively prove [its] claim to satisfy this jurisdictional hurdle." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018); *see also Peek v. Equip. Serv. Co*., 779 S.W.2d 802, 804 (Tex. 1989) (courts "must presume in favor of the [trial court's] jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition.").

9. If the "pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiff should be afforded the opportunity to amend." *Martinez*, 691 S.W.3d at 419. Only "if the pleading affirmatively negates jurisdiction" should "the plea to the jurisdiction … be granted without the opportunity to amend." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 393 (Tex. 2022). Whether

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

immunity from suit applies at all is a legal issue which the trial court must determine in the first instance. *In re Bexar Medina Atascosa Ctys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 WL 466069, at *4 (Tex. App.—San Antonio Feb. 12, 2025, no pet.).

## V. ARGUMENTS & AUTHORITIES

### A. PROSECUTORIAL IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS BECAUSE CALDWELL WAS NOT PERFORMING TASKS INTIMATELY ASSOCIATED WITH THE JUDICIAL PROCESS.

10. Prosecutorial immunity does not bar Dubs' claim against Caldwell because Caldwell was not performing functions "intimately associated with the judicial phase of the criminal process." *See Font v. Carr,* 867 S.W.2d 873, 877 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). Defendants' arguments seem to ignore Dubs' Amended Petition which clarifies that the defamatory conduct against Dubs occurred when Caldwell, while campaigning for 81st District Attorney, published defamatory statements on his campaign trail and through his social media accounts. *See* Plaintiff's First Amended Petition, ¶ 44; *see also* **Exhibit A**.

11. Just because Caldwell was a prosecutor at the time the defamatory statements were issued does not mean he is cloaked in absolute immunity for every action taken outside his role as a prosecutor. "In construing the doctrine of absolute immunity, Texas courts follow federal jurisprudence and apply the functional approach of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)". *Font*, 867 S.W.2d at 877. Under the functional approach, a government actor will have absolute immunity only when the activities were "intimately associated with the judicial phase of the criminal process." *Font,* 867 S.W.2d at 877 (*citing Imbler,* 424 U.S. at 430). Importantly, the functional approach focuses on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). Further, only the *government actor* is permitted to claim absolute immunity. *See Font,*

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

867 S.W.2d at 877.

12. Caldwell made defamatory statements during his campaign for the 81st District Attorney's Office in 2024-2025. *See* Plaintiff's First Amended Petition, ¶ 44. The premise of Caldwell's campaign was to "root out corruption in the Wilson County Sheriff's Office." *Id.* ¶ 44. In his campaign, Caldwell published defamatory statements regarding Dubs on Caldwell's official campaign Facebook account to multiple third-persons on the campaign trail stating and/or insinuating that Dubs engaged in criminal activity pertaining to Dubs' performance of his duties as a law enforcement officer. *See* **Exhibit A**. While the *Brady* letter and Caldwell's malicious use of prosecution to harm a political adversary add to the context of the defamatory statements, Dubs' defamation claim is *not* premised on actions of Caldwell while acting or pursing prosecutorial tasks. Instead, the statements at issue were *not* taken while Caldwell was performing functions intimately related to the judicial process—these actions were taken as an individual campaigning for 81st District Attorney. Just because Caldwell is a prosecutor, does not mean the shield of absolute prosecutorial immunity protects his every action he takes outside of his role as a prosecutor.

13. Defendants miss the point in Plaintiff's amended pleading and argue that prosecutorial immunity bars all of Plaintiff's claims and proceeds to cite case law that supports the conclusions that prosecutorial immunity protects actions within the scope of prosecutorial duties. *See* Motion, p. 5–6. However, that's not the argument before the Court. As outlined above, the law is clear that prosecutorial duties invoke immunity—but Defendants fail to understand that Dubs' claims are not premised on actions even remotely related to prosecutorial duties. Rather, Dubs' defamation claim is based on actions taken as a candidate running for 81st District Attorney. As such, prosecutorial immunity does not bar Dubs' defamation claim against Caldwell and this Court

Filed
7/2025 1:40 PM
Deborah Bryan
Wilson County
District Clerk

should dismiss Defendants' Amended Plea to the Jurisdiction.

### B. THE TEXAS TORT CLAIM ACT DOES NOT BAR PLAINTIFF'S CLAIMS AGAINST WILSON COUNTY OR CALDWELL IN HIS INDIVIDUAL CAPACITY.

14. The Texas Tort Claim Act ("TTCA") does not bar Dubs' claims because the TTCA is not applicable to Texas Constitutional claims and further, Caldwell is sued in his individual capacity for claims that could not have been brought against Wilson County. Therefore, the election of remedies does not apply.

15. There are three different types of immunity: (1) sovereign immunity, (2) governmental immunity, and (3) official immunity. Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Sovereign immunity protects the State and its agencies from lawsuits and liability for money damages and deprives a trial court of subject matter jurisdiction over a plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity offers the same protections for political subdivisions of the State, including municipalities. *Id.; see Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).

16. The TTCA provides immunity to governmental entities except in limited situations. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B). The TTCA seeks to prohibit liability against government entities, where damages are paid by the government entity, except in specific statutorily carved out situations. *Franka v. Velasquez*, 332 S.W.3d 367, 382 n. 68 (Tex. 2011)

17. When an employee or official is sued in their official capacity, that suit is considered to be against the governmental entity and in the employee's official capacity *only*.

Filed
7/22/2025 1:20 PM
Deborah Bryan
Wilson County
District Clerk

*Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014). That is because when an official is sued in their official capacity, the lawsuit "actually seeks to impose liability against the governmental unit rather than on the individually specifically named," it "is *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit." *Id.* (quoting *TAGO*, 408 S.W.3d at 356–57 and *Franka v. Velasquez*, 332 S.W.3d 367, 382 n. 68 (Tex. 2011)). A suit against an employee in his individual capacity is a suit seeking personal liability and is not a suit against the governmental unit—only the individual employee or official. *See id.*

18. Dubs has brought claims for constitutional violations, declaratory judgment and equitable relief against Wilson County. *See* Plaintiff's First Amended Petition, ¶ 44. The TTCA cannot bar constitutional claims and therefore does not affect Plaintiff's constitutional claims. Dubs has only asserted the defamation claim against Caldwell in his *individual* capacity. *Id.* The defamation claim is thus seeking personal liability against Caldwell and is not a suit against the governmental unit.

19. Defendants invoke Sections 101.106(e) and (f) of the TTCA arguing under those sections, Dubs' claims are barred. *See* Motion, p. 5. However, both subsection (e) and (f) are inapplicable.

20. Section 101.106(e) provides:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

21. TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). The only tort at issue is against Caldwell in his individual capacity for defamation. Dubs readily recognizes that defamation is a tort that falls under the TTCA. However, Dubs does not assert any tort claim against Wilson County—only constitutional claims, which do not fall under the TTCA. Subsection (e) states "if

Filed
7/2/2025 1:43:06 PM
Deborah Bryan
Wilson County
District Clerk

a suit is filed *under this chapter* against both a governmental unit and any of its employees . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (emphasis added). The defamation claim was filed only against Caldwell in his individual capacity. Dubs has not brought a tort claim against both Wilson County and Caldwell. As such, Section 101.106(e) is not applicable and does not bar Dubs' claim.

22. Section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

23. TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). The Texas Supreme Court has made it clear that subsection (f) "provides the appropriate avenue for dismissal of an employee who is considered to have been sued in his official capacity." *Alexander*, 435 S.W.3d at 791. Caldwell was sued in his individual capacity, making subsection (f) inapplicable.

24. Defendants also broadly assert immunity under Section 101.021, 101.215[1], and 101.057—none of which are applicable. *See* Motion, p. 5. As stated above, Dubs does not bring any tort actions against Wilson County. A suit against an officer in their individual capacity is not considered a suit against the governmental entity. *See Alexander*, 435 S.W.3d at 791. Section 101.021 pertains to when a governmental unit is liable for property damages or personal injury damages, neither of which applies in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Section 101.057 pertains to intentional torts—which is not type of claim Dubs has brought against Wilson County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057. Since Plaintiff has not brought

---

[1] After a diligent search, Plaintiff was unable to find Section 101.215 that Defendants refer to and do not believe that cited section exists.

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

any claims arising under the TTCA, the Court should deny Defendants' Motion.

**C. CALDWELL IS NOT ENTITLED TO OFFICIAL IMMUNITY IN THIS CASE .**

25. In one sentence, Caldwell asserts "official immunity for all claims made against him in his individual capacity." *See* Motion, p. 7. Official immunity protects governmental employees in their individual capacity only when they are performing (1) discretionary duties, (2) in good faith, and (3) within the scope of their authority. *City of Houston v. Sauls*, 690 S.W.3d 60, 70 (Tex. 2024). Official immunity is an affirmative defense that must be plead and proven by the party asserting it. *Id.* at 71 n. 30. It is the burden of the governmental employee to prove and establish each and every element of official immunity. *Id.*

26. Here, Caldwell asserted official immunity in one sentence—without explaining or demonstrating each required element of the defense. *See* Motion, p. 7. As such, Caldwell has not met his burden of establishing official immunity.

27. More importantly, the immunity Defendants invoke under the TTCA are inapplicable to Dubs' claims because he only brings a defamation action against Caldwell in his individual capacity. As such, his tort claim is not barred by the TTCA.

**D. PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE LEGALLY VIABLE.**

28. Defendants argue that Dubs' constitutional claims fail to state a cause of action because there is no cause for monetary relief for violations of the Texas Constitution. *See* Motion, p. 6. However, Dubs does not seek any monetary damages under his constitutional claims. Dubs' Prayer for Relief in his Amended Petition lists the following requests for recovery:

Filed
7/2/2025 1:14:06 PM
Deborah Bryan
Wilson County
District Clerk

**XI. PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, LIEUTENANT JOSEPH DUBS respectfully requests and prays that the Court:

- Award Plaintiff declaratory relief from Defendant Wilson County's unlawful conduct;
- Award Plaintiff temporary and permanent injunctive relief from Defendant Wilson County's unlawful conduct;
- Award Plaintiff attorneys' fees for Defendant Wilson County's unlawful conduct;
- Award Plaintiff actual, special, and exemplary damages for Defendant Caldwell's defamatory conduct; and
- Award Plaintiff such other and further relief to which he may be justly entitled.

29. *See* Plaintiff's First Amended Petition, p. 15. The only monetary damages sought in this case are damages under Dubs' defamation claim against Caldwell in his individual capacity. Dubs only seeks equitable relief from Wilson County for violations of the Texas Constitution. "The guarantees found in the Bill of Rights are excepted from the general powers of government; the State has no power to commit acts contrary to the guarantees found in the Bill of Rights." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995) (citing Tex. Const. art. 1, § 29). "Thus, suits for equitable remedies for violation of constitutional rights are not prohibited." *Id.* Because Dubs seeks only equitable relief from Wilson County for violating his constitutional rights, Dubs' claims are not barred.

30. Defendants argue that Dubs' allegations of being placed on a *Brady* list fails to state a cause of action for a due process violation as a matter of law. *See* Motion, p. 6. Defendants cite *Adams v. City of Harahan*, to argue that merely being placed on a *Brady* list is not a violation of due process rights. *Adams v. City of Harahan*, 95 F.4th 908, 916 (5th Cir. 2024). The Fifth Circuit

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

addresses the federal due process clause and the plaintiff's failure to demonstrate the City Defendant infringed on the plaintiff's liberty interest.

31. Notably, Dubs does *not* bring a claim for a due process clause violation—rather he brings a claim for a violation under the Equal Protection Provision of the Texas Constitution. *See* Tex. Const. Art. I, § 3; Plaintiff's First Amended Petition, ¶ 31. Dubs's allegations pertain to unequal treatment under the laws of Texas on the basis of his political affiliation. *See* Plaintiff's First Amended Petition, ¶ 31. Dubs also recently came into possession of the Report of the Chief Felony Prosecutor of Comal County, Texas regarding the prosecution of Caldwell, Joshua Olivarez, and Dwayne Mercer, all of whom were employed by Wilson County. *See* **Exhibit B**. This report lays out detail on how Caldwell and his investigators collectively brought about unfounded allegations, an arrest, and criminal charges against Dubs. *See id.* [2]

32. Dubs does not allege a due process violation—which is entirely different than a claim under the Equal Protection Provision, with distinct elements. The basis of Dubs' claim under Article I, § 3 of the Texas Constitution is Wilson County's targeting and unfair treatment of Dubs because of his political affiliation, which Caldwell opposed. Caldwell's issuance of the *Brady* letter highlights his malicious targeting of Dubs because of his political affiliations to advance his political aspirations for 81st District Attorney. Caldwell used Dubs as a political chess piece to make an example out of Dubs and create this narrative that Caldwell was "rooting out corruption".

[2] Specifically, this report drafted by Sammy McCrary, Chief Felony Prosecutor of Comal County Texas, finds that there was not probable cause to believe Lt. Dubs committed the offense of False Statement to a Peace Officer. *See* Ex. B, p, 17. Furthermore, the report sets forth that there is sufficient evidence to conclude that employees with the Wilson County Attorney's office, including Defendant Caldwell, were complicit in fabricating these claims and unlawfully arresting Lt. Dubs. *See* Ex. B, pp. 17-24. While this report notes that there is insufficient evidence to bring criminal charges against Caldwell and other Wilson County employees, it details the unlawful acts carried out by Caldwell and his investigators against Plaintiff Dubs.

*See* **<u>Exhibit A</u>**.

33. Dubs' claims for injunctive and declaratory relief are proper and legally viable. A plaintiff is permitted to seek equitable and injunctive relief against a governmental entity to remedy a violation of the Texas Constitution. *See id.* The purpose of injunctive relief is "to halt wrongful acts threatened or that are in the course of accomplishment . . . ." *Tex. Employment Comm'n v. Martinez,* 545 S.W.2d 876, 877–78 (Tex. App.—El Paso 1976, no writ). Injunctive relief is proper when there is allegations or proof there is a probability of the resumption of the complained of acts. *Tex. State Bd. of Registration for Prof'l Eng'rs v. Dalton, Hinds & O'Brien Eng'g Co.,* 382 S.W.2d 130, 134 (Tex. App.—Corpus Christi 1964, no writ).

34. The Declaratory Judgments Act may be used to clarify statutes and constitutional rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011; *Chenault v. Phillips,* 914 S.W.2d 140, 141 (Tex.1996). Governmental immunity does not shield a governmental unit from a suit for declaratory relief based on alleged constitutional violations. *See Frasier v. Yanes,* 9 S.W.3d 422, 425–26 (Tex. App.-Austin 1999, no pet.) (holding that a suit for declaratory judgment is proper to determining the officers' rights under the constitution).

35. Defendants cite *Roy v. Shannon*, to support the argument that Dubs' claim for declaratory judgment and injunctive relief fails as a matter of law, but that case is distinguishable from the case at bar. *Roy v. Shannon*, No. 02-13-00238-CV, 2014 WL 4105271, at *3 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.). The court in *Roy v. Shannon* determined that the claims alleged therein lacked an arguable legal basis after determining the defendant was entitled to derived immunity because he acted in his official governmental capacity and the ultra vires exception did not apply. Further, the plaintiff requested declaratory and injunctive relief for actions taken during his trial that he alleged violated his constitutional rights.

Filed
7/29/2025 4:00 PM
Deborah Bryan
Wilson County
District Clerk

36. Here, Dubs' request for declaratory and injunctive relief is predicated on actions that have occurred, but could continue to occur—and Dubs has plead as much. *See* Plaintiff's First Amended Petition, ¶ 41. Here, Dubs faces the possibility of continued constitutional violations for harmful assertions that Dubs is a criminal in his everyday actions as an officer with Wilson County. Moreover, the "Brady" letter issued by Wilson County is an example of the harm perpetuated by Wilson County's Constitutional violations at issue and carries that same harm into the future. Unlike plaintiff Roy who complained of due process violations limited to his criminal trial, Dubs faces the same repeated harm from Wilson County as he continues to work as a law enforcement officer. Defendants do nothing to identify specific jurisdictional deficiencies and instead asserts general allegations citing inapplicable caselaw.

37. As stated above, only the *government actor* is permitted to claim absolute immunity. *See Font,* 867 S.W.2d at 877. Wilson County cannot claim prosecutorial immunity, nor are any other forms of immunity available to it. Defendants fail to accurately understand Dubs' constitutional claims, and requests for declaratory and injunctive relief and have not raised any applicable immunity defenses. However, Dubs' petition clearly identifies viable claims that are properly asserted and before this Court.

38. As demonstrated above, Dubs' claims are not barred by any form of immunity, the TTCA, and are property before this Court. Defendants rely on inapplicable arguments and case law to support their Motion, and fail to understand the context, nature, and specific factual allegations Dubs' claims. As such, Dubs requests this Court deny Defendants' Amended Plea to the Jurisdiction.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, LIEUTENANT JOSEPH DUBS

Filed
7/2/2025 4:00 PM
Deborah Bryan
Wilson County
District Clerk

respectfully requests and prays that the Court deny Defendants' Amended Plea to the Jurisdiction and award Plaintiff such other and further relief to which he may be justly entitled.

Dated: July 2, 2025.

Respectfully submitted,

dc&m Davis, Cedillo & Mendoza, INC.
ATTORNEYS AT LAW

McCombs Plaza, Suite 250
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 660-3795

By: *__/s/ Ricardo G. Cedillo__*
RICARDO G. CEDILLO
Texas State Bar No. 04043600
rcedillo@lawdcm.com
ZACHARY K. GILBERT
Texas State Bar. No. 24132118
zgilbert@lawdcm.com

-and-

JOSE GARZA
Texas State Bar No. 07731950
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
garzpalm@aol.com

-and-

ROLANDO RIOS
Attorney at Law
Texas State Bar No. 16935900
118 Dogwood Lane
San Antonio, Texas 78213
rrios@rolandorioslaw.com

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served pursuant to the TEXAS RULES OF CIVIL PROCEDURE on the 2nd day of July, 2025, to all counsel of record:

__*/s/ Ricardo G. Cedillo*______
Ricardo G. Cedillo

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

# EXHIBIT A

Filed
Deborah Bryan
Wilson County
District Clerk

3:33

Tom Caldwell for 81st Judici...

Posts About Videos More

**Tom Caldwell for 81st Judicial District Attorney in 2024**
Feb 26 ·

Interesting story. Even more interesting comment though. As I said in an earlier post, it should make a reader wonder..
https://www.wilsoncountynews.com/articles/sheriff-responds-after-dubs-case-dismissed/

[redacted] Wilson County News you should be ashamed of this report. You have no problem listing allegations but do no research into their truthfullness. You didn't even reach out to the person accused of this wrong doing for their side of the story, in failing to do this you have continued this lie. The defense attorney in a criminal case should not have the only county paper helping them win their case. The CA is under investigation for the arrest of Lt. Dubs by the AG's Office and a special prosecutor assigned to handle his indictment. The alligation that Dubs pressured a victim to say something false is a lie and a ploy by the defense to muddy the case. Did this so called reporter bother to ask how




Home Reels Friends Marketplace Notifications Menu

4:06 PM
Bryan
County
District Clerk

wilsoncountynews.com

Like · Reply · 5d

**Joe Dubs**

Wilson County News you should be ashamed of this report. You have no problem listing allegations but do no research into their truthfullness. You didn't even reach out to the person accused of this wrong doing for their side of the story, in failing to do this you have continuded this lie. The defense attorney in a criminal case should not have the only county paper helping them win their case. The CA is under investigation for the arrest of Lt. Dubs by the AG's Office and a special prosecutor assigned to handle his indictment. The alligation that Dubs pressured a victim to say something false is a lie and a ploy by the defense to muddy the case. Did this so called reporter bother to ask how this victim was interviewed or if other witnesses were the [illegible] by the Investigator that lead to his questions directed to the victim, of course not. Sloppy and irresponsible reporting.

Like · Reply · 3d

Roads & Pa
Select Fill
DEMOLITIO
Brush Grindin
Land Clearing
Excavation
Mulching
Haul Off
210-332-0287

Feb 26

Interesting story. Even more interesting com... See more

Message Tom Caldwell for 81st Judicial Dis...

13 · 6 comments · 1 share

Like · Comment · Copy · Share

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

# EXHIBIT B

Filed
[illegible]
Deborah Bryan
Wilson County
District Clerk

| | |
|---|---|
| **THE STATE OF TEXAS** | **DISTRICT COURT** |
| **VS** | **OF** |
| **THOMAS CALDWELL, JOSHUA OLIVAREZ, AND DWAYNE MERCER** | **WILSON COUNTY, TEXAS** |

I, Sammy McCrary, Chief Felony Prosecutor of Comal County, Texas will not prosecute Thomas Caldwell [redacted], Joshua Olivarez [redacted] or Dwayne Mercer [redacted]) for offenses of Official Oppression, Tampering with a Government Record, Perjury or False Statement to a Peace Officer (arising from the arrest of Joseph Dubs) alleged to have been committed on or about June 28, 2023, for the following reasons:

Sgt. Greg Dickerman with the Special Crimes Unit of the Texas Attorney General's Office was assigned to investigate Wilson County Attorney Thomas Caldwell for the offense of Official Oppression. The Comal County Criminal District Attorney's Office was appointed as Attorney Pro Tem by Russell Wilson, Judge of the 218th District Court, after Audrey Louis, District Attorney for the 81st Judicial District, recused her office from the investigation of Caldwell. District Attorney Louis recused her office because, at the time, Caldwell had announced that he was running against her for the office of District Attorney. Sgt. Dickerman has now submitted his report detailing his investigation, as well as various documents and statements that he collected as part of his investigation, and his conclusions concerning which offenses were committed.

The facts of this case include a tangled mess of public officials and peace officers in Wilson County. This includes two other investigations that the Comal County Criminal District Attorney's Office is not assigned to. However, those cases are intertwined with this case in a way that makes it necessary to discuss them in evaluating this case.

## SUMMARY OF DICKERMAN'S INVESTIGATION

The first part of Sergeant Dickerman's investigation arises from the arrest of Alena Gutierrez-Berlanga for an offense under Texas Government Code §572.034 for failing to file a personal financial statement. Ultimately, Dickerman concluded that Wilson County Attorney's Office Investigator Joshua Olivarez committed an offense of Official Oppression by arresting her for that offense. That offense is addressed in a separate non-prosecution affidavit.

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

The second part of Sergeant Dickerman's investigation also arises from Berlanga's arrest. That part of the investigation concerns the arrest of Wilson County Sheriff's Department Deputy Joseph Dubs for an offense of False Report to a Peace Officer because of circumstances surrounding Berlanga's arrest. Ultimately, Dickerman concludes that "there is insufficient evidence at this time to show that Thomas Caldwell committed an offense." (page 19 at 1.59). However, he finds that Wilson County Attorney Investigator Dwayne Mercer committed the offense of Official Oppression when he swore out a complaint alleging that Dubs was intentionally deceitful and thereby subjected Dubs to an arrest that he knew was unlawful. (page 20 at 1.61).

Sergeant Dickerman does not mention and does not seem to address whether Joshua Olivarez could be criminally liable for the offense of Official Oppression based on the arrest of Joseph Dubs. Additionally, he does not address the possibility of whether any of the parties committed any other offenses such as Tampering with a Government Record, Perjury, or False Statement to a Peace Officer. This non-prosecution affidavit covers all of those potential offenses by the above-named parties.

## ARREST OF ALENA GUTIERREZ-BERLANGA

Ms. Alena Gutierrez-Berlanga ran a no kill shelter in Wilson County. She had also run for office on one prior occasion. According to some of the documents submitted, including one statement that refers to her as a political gadfly, it would appear that she had also irritated one or more of the public officials in Wilson County.

This matter began with Alena Gutierrez-Berlanga filing to run for House District 31 in the March 1, 2022 primary election. As a candidate for office, she was required to file a variety of financial documents. Those documents included a personal financial statement that was required to be filed with the Texas Election Commission (TEC) pursuant to Texas Government Code 572.021. Based on documents from the Texas Election Commission, Ms. Berlanga failed to file any of the required documents. Once the TEC determined that Berlanga had failed to file the personal financial statement as required, they had a statutory duty to send a written statement of the determination to the appropriate prosecuting attorney of the state under Texas Government Code §572.031.

The TEC carried out its duty under Texas Government Code 572.021 by sending a letter to Wilson County Assistant District Attorney C. Ellison on December 9, 2022. The referral letter also had a packet of documents that were business records

of the commission. Those documents included records to establish the actions the commission took attempting to get Berlanga to comply with Texas Government Code §572.021. Those records included copies of two reminder letters that were mass emailed to all candidates on February 1, 2022, and February 10, 2022, to remind them of the February 14, 2022, filing deadline for their personal financial statements.

After the referral letter was sent, there were a number of email communications sent between Wilson County Attorney Thomas Caldwell and various employees and officials with the TEC. Those persons include David Guilianelli (a custodian of records for TEC), Mark H. Pillsbury (Asst. General Counsel for TEC), and J.R. Johnson (the Executive Director of the TEC). It should be noted that many of the communications from Caldwell were an attempt to get someone at the TEC to act as a complainant against Berlanga.

On December 16, 2022, Caldwell posed several questions to Pillsbury including "I assume the TEC is the complainant, by and through you?" On February 28, 2023, Pillsbury responded to this question, "No. Prosecution is based out of Wilson County." He tried to explain that the statute just required that he (on behalf of the TEC) notify the local prosecutor. Subsequently, through communications with David Guilianelli, Caldwell was finally able to obtain an affidavit from Guilianelli dated May 30, 2023, stating that Berlanga had failed to file her personal financial statement as required on February 14, 2022, and that she had still not filed it as of the date of the affidavit (well over a year later).

Six days later, on June 6, 2023, Joshua Olivarez, an investigator with the Wilson County Attorney's Office, swore out a complaint against Alena Gutierrez-Berlanga in front of Wilson County Justice of the Peace Jared Shaw. The probable cause affidavit consisted of a single paragraph in which Olivarez specifically cited the affidavit of David Guilianelli. It averred that Guilianelli was a credible person and indicated that his affidavit was the basis of the charges against Berlanga. It indicated that Berlanga was a candidate for House District 31 in the March 1, 2022 primary election and that she failed to file a personal financial statement due on February 14, 2022, as required by Texas Government Code 572.031. The affidavit also stated, "The above-named defendant committed an offense if the individual was a state officer, candidate, or state party chair and knowingly and willfully failed to file a financial statement as required."

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

## ARREST OF JOSEPH DUBS

After the Wilson County Attorney's Office obtained the arrest warrant against Alena Gutierrez-Berlanga from Wilson County Justice of the Peace Jared Shaw, they sought assistance from the Wilson County Sheriff's Department in serving said warrant.

Wilson County Sheriff Jim Stewart gave a written statement concerning this matter. In his statement, he provided the following details:

> On June 6th, 2023, about mid- afternoon, Investigator Olivarez stopped by my office and advised me he was going to see the Judge to get a warrant issued for Alena Berlanga. A short time later he returned with the warrant.
>
> Lt. Dubs was seated in my office and Investigator Olivarez was standing in the door. I instructed Lt. Dubs to make sure a magistrate was available. Then contact Ms. Berlanga to notify her that a warrant had been issued and give her the opportunity to self- surrender. Thus being able to expedite the service of the warrant.
>
> Lt. Dubs indicated he understood the instruction. Investigator Olivarez stated his office would not have an issue with the warrant being served in that manner. They left my office and I had no further interaction with regards to the service of the warrant.
>
> About a week later Tom Caldwell, County Attorney, asked me to come by his office. He advised me that his office had opened a criminal investigation into Lt. Dubs, regarding his actions in relation to the service of the warrant on Ms. Berlanga.
>
> His recommendation was for me to ask Lt. Dubs to resign, due to the criminal investigation and possible charges.

As part of his investigation, Sergeant Dickerman also interviewed Investigator Joshua Olivarez. According to Dickerman's report, Olivarez provided the following information:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

> Olivarez said he began the Berlanga investigation when the Texas Ethics Commission referred them an investigation alleging Berlanga violated a campaign finance law. After receiving the referral, Olivarez subsequently obtained an arrest warrant for Berlanga. Olivarez decided to have the sheriff's office serve the arrest warrant on Berlanga because the county attorney's office has history with Berlanga and have ongoing dealings with her and didn't want to strain the relationship with her. The sheriff's office has dealt with Berlanga many times and Dubs has a good working relationship with her. Stewart asked Dubs to advise Berlanga of the warrant and advise her they were going to allow her to turn herself into the Wilson County Jail without going through the normal booking process. Olivarez said Daniel Small facilitated the process of Berlanga turning herself in. Olivarez said he was aware that Dubs was tasked with contacting Berlanga to advise her of the warrant and that she was going to be allowed to turn herself in. Olivarez did not ask Dubs to ask any investigative questions when he contacted her.

(Dickerman's Report, pages 12-13 at 1.30).

From both Sheriff's Stewart's statement and Olivarez's interview, it is uncontroverted that Olivarez met with Dubs in the Sheriff's office. He was fully aware that Dubs was contacting Berlanga to advise her of the arrest warrant. He also approved the process where she would be allowed to go turn herself in without going through the normal booking process.

During his interview, Olivarez also stated that, a few days after Berlanga's arrest and release, he sent an email to Dubs, at the request of Caldwell, asking if there were any supplemental reports or body camera footage related to Berlanga's arrest. (Dickerman's Report, page 13 at 1.31). This is the email:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

**From:** Joshua Olivarez <JOlivarez@wilsoncountytx.gov>
**Sent:** Friday, June 9, 2023 2:23 PM
**To:** Joseph Dubs <JDubs@wilsoncountytx.gov>
**Cc:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Subject:** Report/BodyCam

Lt. Dubs,

Can you get me a copy of any supplement reports and body cam footage for the arrest of Berlanga. I can pick up early next week when they are ready.

Thanks

Josh

It should be noted that Thomas Caldwell was courtesy copied on this email.

Dubs responded Olivarez's email saying there were no supplemental reports or body camera footage and the only contact Berlanga had with law enforcement was with Small when she was fingerprinted. (id.) This is that email:

| | |
|---|---|
| **From:** | Joseph Dubs |
| **Sent:** | Friday, June 9, 2023 2:54 PM |
| **To:** | Joshua Olivarez |
| **Subject:** | RE: Report/BodyCam |

We have report. No body cam as she turned herself in to JP1's office and the only contact with LE was being fingerprinted, which was done by Investigator Small, and Investigators don't wear body cams unless on crime scenes.

Dickerman's report indicates that Olivarez did not respond to Dubs' email. During his interview, Olivarez said he read Small's arrest report and it appeared to be a standard misdemeanor arrest report to him. Olivarez said he believed Dubs should have called in a supplement to Small's report saying he made contact with her prior to her arrest. Olivarez acknowledged he read in Small's report that Dubs did contact Berlanga to advise her of the warrant earlier in the day. (id.)

It is this two email exchange that ultimately led to Dubs arrest. The premise is that Dubs committed False Report to a Peace Officer when he failed to tell Olivarez that he had contacted Berlanga and that he intended to deceive Olivarez.

As the Sheriff stated in his report, Thomas Caldwell opened an investigation into Dubs shortly after the Berlanga arrest. This is confirmed by the following email:

Filed
7/2?/2023 4:06 PM
Deborah Bryan
Wilson County
District Clerk

**From:** Tom Caldwell
**Sent:** Tuesday, June 20, 2023 1:21 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Joshua Olivarez <JOlivarez@wilsoncountytx.gov>
**Subject:** Request for additional evidence in re Dubs, Joseph CONFIDENTIAL COMMUNICATION RELATED TO ONGOING CRIMINAL INVESTIGATION

Sheriff,

Please consider this official written notice that Lt. Joseph Dubs is the subject of an active open criminal investigation related to his participation in an arrest on or around June 6, 2023. Subsequent to this arrest, he made certain misstatements about his participation to my investigator and myself that we believe rise to the level of violations of certain Penal statutes. I defer to you on how you approach this situation, but you are strongly urged to immediately revoke all his access to any county or law enforcement systems and place him on some form of leave pending a determination by my office and any subsequent prosecution which may result. We also are examining other discrepancies that occurred during this particular arrest that could be of a criminal nature, but at this time, we suspect to be data entry errors made by staff. In the event that we receive additional evidence concerning this, I will promptly make you aware if I am able to.

At your earliest convenience, could you collect the following which we believe is or could be probative of criminal conduct:

1. A copy of facility camera footage from Tuesday, June 6, 2023 from 3:00 p.m. to 7:00 p.m. for the following areas— The lobby of the main jail, the hallway leading down to the JP offices, the hallway outside of the JP offices, the booking area of the jail, and if available any footage from the squad room area;

2. A copy of all SO documents created during the arrest of Alena Berlanga, dob 12/12/1970;

3. A copy of Lt. Dubs complete personnel file and any other documents in the SO's possession concerning his employment that may not be releasable except to other law enforcement agencies; and

4. I need the following members of the WCSO to prepare official statements about their interactions with Lt. Dubs: Sheriff Jim Stewart, Deputy Chief Clint Garza, Sgt-Investigator Daniel Smalls, and Detention Sgt. Adam Guerrero;*

*We are seeking information about what Lt. Dubs was instructed to do, what he instructed others to do, and what he disclosed to you during your meeting with him this morning. We

Filed
7/2/2025 2:05 PM
Deborah Bryan
Wilson County
District Clerk

have contacted Ms. Reyna and will get her statement.

As this is an official criminal investigation, I want to stress that Lt. Dubs is not to be allowed access to any witnesses, or to review or revise any existing documentation. This includes Ms. Berlanga. We are considering requesting an outside agency to finalize the investigation but have not done so at this time. I will advise you if that changes.

I also believe that numerous policy violations occurred and suggest your office open an internal investigation at well, to wit: numerous common police practices related to the treatment and handling of arrested persons that are required by your agency were modified for inexplicable reasons or ignored altogether and not completed during this arrest. This tends to suggest your agency is not objective in the performance of its duties. I know that is not the case, but the optics of this situation could lead a reasonable observer to think otherwise.

I am sorry to have to bring this matter to your attention. I remain committed to assisting you and your office to the fullest extent of the law and my ability. I do not consider the acts of any employee to be representative of your agency.

Best,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Sheriff Stewart sent the following email in response to Caldwell:

**From:** Jim Stewart JStewart@wilsoncountytx.gov
**Subject:** RE: Request for additional evidence in re Dubs, Joseph CONFIDENTIAL COMMUNICATION RELATED TO ONGOING CRIMINAL INVESTIGATION
**Date:** June 20, 2023 at 2:39 PM
**To:** Tom Caldwell tcaldwell@wilsoncountytx.gov

We will begin gathering the requested information.

After the initial email exchange between Stewart and Caldwell, there was no further communication between them for six days (at least not in the materials provided in response to the Grand Jury subpoena). Then, on June 26, 2023, there is a flurry of emails between the sheriff and Caldwell. The exchange begins with Sheriff Stewart inquiring about any documentation in the following email:

On Jun 26, 2023, at 11:42 AM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:

**I have had Lt. Dubs on leave for a week. If I am to continue this leave I need to have some justification on file. This being documentation of a criminal violation or other administrative violation to the degree that leave with pay is warranted.**

Later that afternoon, Caldwell replies as follows:

**From:** Tom Caldwell
**Sent:** Monday, June 26, 2023 3:09 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff,

Not to sound like a lawyer, but I guess my answer depends---What is the status of the requests for the additional documents and video? If I can get those asap, I can finalize our end. Does Lt. Dubs wish to make a statement? That is up to him.

Here is the list from my previous email on the 20th—

1. A copy of facility camera footage from Tuesday, June 6, 2023 from 3:00 p.m. to 7:00 p.m. for the following areas— The lobby of the main jail, the hallway leading down to the JP offices, the hallway outside of the JP offices, the booking area of the jail, and if available any footage from the squad room area;

2. A copy of all SO documents created during the arrest of Alena Berlanga, dob 12/12/1970;

3. A copy of Lt. Dubs complete personnel file and any other documents in the SO's possession concerning his employment that may not be releasable except to other law enforcement agencies; and

4. I need the following members of the WCSO to prepare official statements about their interactions with Lt. Dubs: Sheriff Jim Stewart, Deputy Chief Clint Garza, Sgt-Investigator Daniel Smalls, and Detention Sgt. Adam Guerrero;*

*We are seeking information about what Lt. Dubs was instructed to do, what he instructed others to do, and what he disclosed to you during your meeting with him this morning.

Let me know when and I or someone else will come get. So Josh or any other investigators under your commission doesnt have to be involved.

Also, I am trying to document the Richard Nichols thing and need a statement from you and Clint if you dont mind to square up the file I am making in case Richard sues. We have to anticipate that he is going to. He has told numerous people he is.

Let me know,

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Sheriff Stewart responds to Caldwell by pointing out that he (Caldwell) and Olivarez would be witnesses and that he would only turn the requested documents over to an official investigator assigned to the case. He also tells Caldwell that he is going to reinstate Dubs to duty in the following email:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

On Jun 26, 2023, at 3:47 PM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:

Since you advised me that yourself and Investigator Olivarez are witnesses to this occurrence, there is not an official investigator to handle the requested items. I would only be comfortable turning this over to the investigator handling the case. The information you have requested is currently being compiled and will be in my possession.

Until I receive documentation to support the accusation, Lt. Dubs will be reinstated to duty.

Caldwell did not take that very well. Within an hour, he replies to the Sheriff and tells him that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquires, [a]re we going to have issues with your facility accepting this prisoner." He also offers to take Dubs to Karnes County if the Sheriff prefers that. His email is below:

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, June 26, 2023 4:45:27 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff,

Additionally, your email misstates what we discussed. We are not "witnesses" like those at your office that we asked you to compile statements from.

"We" are a licensed Peace Officer conducting an official investigation and a prosecutor for the same office. We are not "conflicted out" or unable to proceed with this prosecution despite your threat to remove my investigators commissions. That sounded danger-close to me to violating numerous provisions found in Title 8 of the Texas Penal Code.

The case against Dubs is proceeding. You may continue to interfere or attempt to hinder it if you desire, but that is a VERY bad idea. Reinistate this officer at your discretion. You have been advised of why that is not a good idea for your agency and for the County, yet persist in defending him.

We will have an arrest warrant issued NLT Tomorrow afternoon. Are we going to have issues with your facility accepting this prisoner? We can take him to Karnes if you like. Let me know and I will arrange it.

Tom Caldwell
Wilson Countv Attornev

The Sheriff responds, again asking to see what evidence has been collected against Dubs:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

On Jun 26, 2023, at 4:48 PM, Jim Stewart <JStewart@wilsoncountytx.gov> wrote:

I agree, all I'm asking is for you to show me what you have collected.

Get Outlook for iOS

Caldwell then sends a final message to Stewart refusing to discuss the case and telling him that he "had numerous opportunities to handle this in-house."

**From:** Tom Caldwell tcaldwell@wilsoncountytx.gov
**Subject:** Re: Lt. Dubs Administrative Leave
**Date:** June 26, 2023 at 5:00 PM
**To:** Jim Stewart JStewart@wilsoncountytx.gov
**Bcc:** Josh Olivarez jolivarez@wilsoncountytx.gov

Sheriff,

With all due respect Sir, I am done discussing this case with you. You have had numerous opportunities to handle this in-house. Now it will be handled as I stated at the beginning.

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

Two days after this exchange, in which Caldwell specifically told Sheriff Stewart that they would get a warrant for Dubs "NLT," Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs. The arrest warrant affidavit signed by DA Investigator Mercer specifically stated:

> On or about June 19th, 2023, I, Dwayne Mercer (Investigator for the Wilson County Attorney's Office), was asked to review a case against Wilson County Sheriff's Office employee identified as Lt. Joseph Dubs, whom the Wilson County Sheriff's Office employs as a Lieutenant. Joseph Dubs is the supervisor of the patrol and criminal investigation divisions. I reviewed all statements and supporting facts in this case, and the findings are listed below.

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

On June 6th, Investigator Joshua Olivarez requested an arrest warrant on an individual from Justice of the Peace PCT #1 Judge J. Shaw. Once the warrant was issued, Investigator Joshua Olivarez hand-delivered all documents related to the warrant to Joseph Dubs. After receiving complaints surrounding the June 6th arrest and through a sworn statement received from Judge Shaw, it was determined that the individual that was arrested on June 6th had contact with other law enforcement officers, including Investigator Small. Judge Shaw stated that the individual arrested on June 6th appeared at his office shortly before 5 pm that day; that individual stated that Joseph Dubs went to their property and notified them of the active arrest warrant.

On or about June 9th, 2023, Investigator Joshua Olivarez (Investigator for the Wilson County Attorney's Office) submitted an official request in furtherance of an ongoing criminal investigation via Email to Joseph Dubs (jdubs@wilsoncountytx.gov). Emails were sent and received on Wilson County's official email server. Investigator Joshua Olivarez requested a copy of any supplement reports and body cam footage related to an arrest on June 6th, 2023. Joseph Dubs was assigned to facilitate the arrest, and Investigator Joshua Olivarez had first-hand knowledge of this. Shortly after sending the request Joseph Dubs responded, "We have report. No body cam as she turned herself into JP1's office and the only contact with LE was being fingerprinted, which was done by Investigator Small, and Investigators don't wear body cams unless on crime scenes."

After reviewing incident report# 23-010816 from Investigator Small, it stated that Joseph Dubs had already contacted the individual arrested on June 6th as they are known. Investigator Small went on to say that Joseph Dubs had made arrangements for them to turn themselves in before 5 pm. After a review of the statement and report, it was found that Joseph's official answer to the request was false. Joseph, with intent to deceive, knowingly made a false statement that was material to a criminal investigation.

Investigator Mercer swore to these facts as set out in the probable cause affidavit in front of Judge Kenneth Griffin (Justice of the Peace Precinct 2) on June 28, 2023. According to the Report prepared by Investigator Olivarez, Judge Griffin issued a warrant for Dubs' arrest for the offense of False Statement to a Peace Officer.

Filed
7/2/2025 3:06 PM
Deborah Bryan
Wilson County
District Clerk

Later, on the night of June 28, 2023, there were a couple of more emails between Thomas Caldwell and Investigator Olivarez concerning the Dubs case:

On Jun 28, 2023, at 22:31, Joshua Olivarez <JOlivarez@wilsoncountytx.gov> wrote:

Tom,

Do we have a time frame on the requested documents and video requested from the Sheriff's Office. Dwayne has also requested radio logs and vehicle gps for Dubs assigned county vehicle. Additionally requesting video of the outside cameras of the sheriffs office for June 6th.

Josh

Get Outlook for iOS

**From:** Tom Caldwell tcaldwell@wilsoncountytx.gov
**Subject:** Re:
**Date:** June 28, 2023 at 10:57 PM
**To:** Joshua Olivarez JOlivarez@wilsoncountytx.gov
**Cc:** Dwayne Mercer dmercer@wilsoncountytx.gov

I will speak to the Sheriff tomorrow about getting it. Im curious if there will be pushback.

I fully expect the Defendant to resist and fight.

Tom Caldwell
Wilson County Attorney
1420 Third Street
Floresville, TX 78114
830-393-7305
830-393-7358 (fax)

WARNING: This e-mail and any attachments are covered by the Electronic Communications Privacy Act 18 U.S.C. 2510 et seq., are expressly intended to be private and confidential, and subject to the attorney-work product and attorney-client privileges, which are not waived in any manner. If you have received this message in error, which means that it was not address to you directly from the Wilson County Attorney's Office, then please contact me immediately at 830-393-7305

These emails were both sent after 10 p.m. Although Olivarez indicated that Dwayne was requesting documents and videos, it appears that Mercer had already sworn out an arrest warrant affidavit and gotten an arrest warrant for Dubs. Caldwell's response stated, "I will speak to the Sheriff tomorrow about getting it. Im curious if there will be pushback." However, as noted above, there had already been an exchange between Caldwell and Sheriff Stewart on June 26, 2023, wherein the Sheriff pointed out that Caldwell and Olivarez would be witnesses and that he would only turn the requested documents over to an official investigator assigned to the case.

Filed
7/2/2025 4:05 PM
Deborah Bryan
Wilson County
District Clerk

Finally, in his report, Olivarez stated that on June 30, 2023, arrangements were made with Sheriff Stewart for Dubs to turn himself in on the outstanding warrant. Olivarez wrote, "I met with Joseph Dubs at the Wilson County Sheriff's Office and executed the warrant, then booked him into jail."

## ANALYSIS:

Although the Comal County Criminal District Attorney was not assigned to the case against Joseph Dubs, it seems clear that an evaluation of the case against him is necessary to determine the propriety of the charge suggested against Mercer by Dickerman. Simply put, if there is probable cause that Dubs committed that offense, there can be no criminal offense of Official Oppression for arresting him for that offense as he would not have been unlawfully arrested.

## DID JOSEPH DUBS COMMIT THE OFFENSE OF FALSE STATEMENT TO A PEACE OFFICER

A person commits the offense of False Statement to a Peace Officer if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer the investigation. *See* TEX. PEN. CODE §37.08 (a).

Based on the facts as set out above, there are several problems with charging Dubs with this offense.

It is notable that Olivarez's request (which Dubs' statement was made in response to), asked, "[can] you get me a copy of any supplement reports and body cam footage for the arrest of Berlanga." However, it did not mention or ask for such materials as to Dubs telling Berlanga to turn herself in on the warrant, even though Olivarez was well aware that Dubs was going to do so. Dubs' reply accurately says that there is a report. That report was written by Deputy Smalls and actually documents that Joseph Dubs had made arrangements for Berlanga to turn herself in before 5 p.m. Dubs then explains that there isn't body camera footage because the only contact (during the arrest) was Smalls fingerprinting Berlanga and that the investigators don't wear body cameras unless on crime scenes. Considering the context in which Dubs made this reply, it could be argued that his statement is not false at all.

However, even if one were to consider Dubs' response to be false because he didn't mention his contact with Berlanga to tell her to turn herself in, the elements of the offense still cannot be met. Even if a false statement is made, the offense requires that the false

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

statement be made with an intent to deceive. In this case, the person presumably being deceived is Olivarez. However, Olivarez was already well aware that Dubs was going to tell Berlanga about the warrant and arrange for her to turn herself in. He met with Dubs in Sheriff Stewart's Office and discussed this plan. Indeed, to a large degree, he put this plan into play. He could have simply served the arrest warrant on Berlanga himself. Instead, Dubs was selected to notify her of the warrant because he had a good working relationship with her. It strains credibility to suggest that Dubs could have intended to deceive Olivarez about the fact that he did the very thing that Olivarez sent him to do. By way of analogy, it would be like asking someone you knew was at a meeting for a list of the attendees and then claiming that they intended to deceive you because they didn't include their own name on the list. Such a proposition is simply ridiculous. Additionally, Dubs candidly responded that there was a report and that report, by Smalls, clearly documented that Dubs had made arrangements for Berlanga to turn herself in before 5 p.m. If Dubs had any plans of deceiving Olivarez about telling Berlanga to turn herself in on the warrant, telling him about Smalls' report would definitely be fatal to his plan. Under these facts, there is simply no way a rational person could conclude that Dub had any intent to deceive Olivarez.

Finally, the offense also requires that the false statement be material to the investigation. In the context of TEX. PEN. CODE §37.08 (a) one Texas appellate court has recently held that the basic dictionary definition of "material" applies. The court noted:

> Webster defines "material" as "being of real importance or great consequence," "essential," or "relevant, pertinent." *Material*, Webster's Third New Int'l Dictionary (2002). Black's Law Dictionary similarly defines "material" as "[h]aving some logical connection with the consequential facts . . . essential." *Material*, Black's Law Dictionary (11th ed. 2019).

*McCreary v. State*, 649 S.W.3d 902, 905 (Tex. App.—Fort Worth 2022, pet ref'd).

In this case, the investigation in question was that of Berlanga. Olivarez tried to make Dubs' statement material to that investigation by writing in his report:

> On June 9th, 2023, I submitted an official request in furtherance on the ongoing criminal investigation on Berlanga via Email to Joseph Dubs (jdubs@wilsoncountytx.gov). The purpose of this email was because based upon my training and experience, I have noticed it is normal for arrested persons to communicate things to the arresting officer or

Filed
7/2/2024 1:06 PM
Deborah Bryan
Wilson County
District Clerk

officers involved that could be considered "res gestae" statements that could support a prosecution.

Although this is clever, there is a missing link in the chain of logic necessary to establish the materiality of Dubs' statement to the Berlanga investigation. That link is that there was body camera footage of Dubs' interaction with Berlanga or, at the very least, that Berlanga made one of those incriminating "res gestae" statements to Dubs. However, there has never been any claim Dubs actually had a body camera on when he told Berlanga to go turn herself in. Furthermore, there has never been any allegation that Berlanga made any statements to Dubs that would have been helpful to her prosecution. Without one of those things occurring, Dubs telling her about the warrant and arranging for her to surrender herself would have no relevance to her prosecution. Without something more, whether or not Dubs told Berlanga to go turn herself in on the warrant is not of "real importance or great consequence" to proving she failed to file the personal financial statement.

Based on a careful analysis, there was not probable cause to believe Joseph Dubs committed the offense of False Statement to a Peace Officer. Thus, Dubs was unlawfully arrested for said offense.

## DID JOSHUA OLIVAREZ COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST

"Public servant" means a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government. TEX. PEN. CODE §1.07 (41) (A). A public servant acting under color of his office or employment commits an offense if he intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful. TEX. PEN. CODE §39.03 (a)(1). A public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity. TEX. PEN. CODE §39.03 (b).

As an investigator with the Wilson County Attorney's Office, Joshua Olivarez was a public servant. Additionally, in his own report, Olivarez wrote, "I met with Joseph Dubs at the Wilson County Sheriff's Office and executed the warrant, then booked him into jail." Clearly, he was acting under the color of his office or employment when he did this. As set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful. Finally, as discussed above, Olivarez

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

was well aware of Dubs role in the Berlanga arrest and, thus, he knew that Dubs could not have intended to deceive him about that fact.

Of the various offenses presented in this investigation, this is the one most clearly established by the evidence.

## DID DWAYNE MERCER COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST

The definitions set out in the section above concerning Joshua Olivarez are also applicable to this section.

Like Joshua Olivarez, Dwayne Mercer was also employed as an Investigator with the Wilson County Attorney's Office. Thus, he was also a public servant. There is no doubt that he swore out the arrest warrant affidavit for Lieutenant Joseph Dubs. Clearly, he was acting under the color of his office or employment when he did this. Again, as set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful.

It is notable that, in his affidavit, Mercer stated, "Joseph Dubs was assigned to facilitate the arrest, and Investigator Joshua Olivarez had first-hand knowledge of this." However, he failed to include any details concerning Investigator Olivarez's role in arranging for Lieutenant Dubs to tell Berlanga of her arrest warrant and arranging for her to surrender herself.

Although there are generally no requirements for what information has to be included in offense reports, there are some requirements for information that must be included in warrant affidavits. In *Franks v. Delaware*, the United States Supreme Court held that if an affirmative misstatement is knowingly or recklessly included in a probable cause affidavit and it is material and necessary to establishing probable cause, the warrant is rendered invalid if the remaining content is insufficient to establish probable cause under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). State and federal courts have extended the *Franks* analysis to omissions from probable cause affidavits. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (recognizing that allegations of material omissions should be treated essentially like claims of material misstatements under *Franks*), *and Melton v. State*, 750 S.W.2d 281, 284 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (treating omissions essentially the same as material misstatements), *Darby v. State*, 145 S.W.3d 714, 722 (Tex. App. – Fort Worth 2004, no pet.) (applying *Franks* analysis to omissions); *Blake v. State*,

Filed
7/2/2024 3:06 PM
Deborah Bryan
Wilson County
District Clerk

125 S.W.3d 717, 723-24 (Tex. App.–Houston [1st Dist.] 2003, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610-11 (Tex. App. – Dallas 1990, pet. ref'd); *Emack v. State*, 354 S.W.3d 828, 837-38 (Tex. App.—Austin 2011, no pet.) (assuming without deciding that *Franks* applies to material omissions from warrant affidavit).

In this case, I would anticipate that Mercer would argue that he did not know that Dubs arrest was unlawful because the magistrate found that there was probable cause based on his affidavit and issued the arrest warrant. However, the response to this argument lies in the information that was omitted from his affidavit. Additionally, when he was interviewed by Sgt. Dickerman, Mercer was specifically asked about "what Dubs' intent to be deceitful [was] in his reply to Olivarez's email." Mercer responded that he would be guessing either way and that his opinion didn't matter. He then added that he could say there was intent to be deceitful because there was no other evidence being submitted by Dubs. However, as discussed above, there has never been any claim that there was in fact any evidence from Dubs' interaction with Berlanga.

Based on all of the facts and circumstances, I find there is sufficient evidence to find that Mercer committed the offense of Official Oppression or, at the very least, was a party to Joshua Olivarez's commission of the offense.

## DID THOMAS CALDWELL COMMIT AN OFFENSE OF OFFICIAL OPPRESSION RELATED TO THE DUBS ARREST

The definitions set out in the sections above concerning Joshua Olivarez and Dwayne Mercer are also applicable to this section.

As the elected County Attorney for Wilson County, it is clear that Thomas Caldwell was a public servant at the time of the events in question. Clearly, he would have been acting under the color of his office in directing his investigators in the investigation of Joseph Dubs. Again, as set out above, there is ample reason to conclude that the arrest of Joseph Dubs was unlawful.

The problem in proving an offense of Official Oppression against Thomas Caldwell is the lack of direct evidence linking him to the arrest of Joseph Dubs. Through the use of his investigators, Caldwell has somewhat insulated himself from the arrest itself. Therefore, any criminal liability will have to be based on his responsibility, as a party, to the actions of Olivarez and Mercer. Additionally, when Mercer was interviewed by Sgt. Dickerman, Mercer specifically claimed that he decided to write the criminal complaint on his own without any consultation with

Filed
2/2/2024 4:06 PM
Deborah Bryan
Wilson County
District Clerk

Caldwell. (Dickerman's report, page 14 at 1.34). Finally, Sgt. Dickerman specifically concluded in his report that, "[a]fter investigation, there is insufficient evidence at this time to show that Thomas Caldwell committed an offense." (Dickerman's report, page 19 at 1.59). It is very likely that the defense will attempt to utilize Dickerman's conclusion to undermine any prosecution of Caldwell.

However, there is sufficient evidence to find that Mercer lied about Caldwell's involvement in having Dubs arrested. Additionally, there is evidence from which one can reasonably infer that Thomas Caldwell was the primary force behind the Dubs arrest.

As a matter of practice, it would be highly unusual for an Investigator for the County Attorney's Office to decide to arrest a ranking member of the local Sheriff's Department without first consulting with the elected County Attorney. It would be one thing if the Investigator made a traffic stop where the deputy was driving while intoxicated or responded to an emergency call where it was required that the deputy be arrested immediately without time to consult with the County Attorney. However, even under those circumstances, it would be normal practice to notify the County Attorney of the arrest as soon as possible. However, this was not such an emergency situation. Mercer swore out an arrest warrant affidavit for Dubs in this case. Under these circumstances, he would have clearly had time to notify Caldwell that he intended to arrest a Lieutenant with the local Sheriff's Department.

Even stronger evidence that Caldwell was involved in the arrest of Dubs is found in the email exchange between him and Sheriff Stewart on June 26, 2023. In that exchange, Caldwell told Stewart in no uncertain terms that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquired, [a]re we going to have issues with your facility accepting this prisoner." He also offered to take Dubs to Karnes County if the Sheriff prefers that. Two days after this exchange, in which Caldwell specifically told Sheriff Stewart that they would get a warrant for Dubs "NLT," Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs, supposedly without any consultation with Caldwell. That is simply not believable.

Several extraneous acts also provide support for the proposition that Caldwell was behind Dubs' arrest. A former Wilson County Deputy, Carmen Mero, met with Calwell on a matter unrelated to the Dubs case. However, according to Mero, during that meeting, Calwell discussed the Dubs situation. She stated:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

After introductions, Caldwell began the meeting by discussing the case in which Lieutenant Joe Dubs had been arrested the previous week by Josh Olivares, the peace officer working as the criminal investigator for the County Attorney's Office, pursuant to the self-surrender arrest of local political activist, Alena Berlanga on charges related to failure to report under laws related to campaign finance.

Caldwell referred to Lt. Dubs as "your Lying Lieutenant". He defamed Lt. Dubs' character saying that their relationship stemmed back to their careers with the City of San Antonio when Caldwell was a fireman and Dubs was a policeman. He indicated to me that Dubs was a bad cop and evidenced it by saying that Dubs "hung out" with the firemen because he was disliked by other policemen. He told me that he intended to clean up the WCSO, saying that the Chief Deputy Clint Garza was being investigated for criminal charges. He told me Jim Stewart was not following his (Caldwell's) direction and that he was going to insure the WCSO was run according to his (Caldwell's) standards, with or without Jim Stewart's cooperation.

According to Mero, Caldwell had suggested that she record their meeting. Shortly after the meeting, he began pressuring her to give him the recording. She also provided a copy of a text message that Sheriff Stewart had received from Caldwell concerning the recording:

*"Also Mero needs to get that recording to my office. Please.*
*She says she cannot figure out how to get it off her phone. Maybe John can help.*
*I will be back in office on Aug 1. The recording needs to be in the custody of my investigators by then. So they can give to Guadalupe. She was the one who thought it would be cute to record me and then ask questions about Dubs case.*
*I went along with it because I saw the implications she did not and I have nothing to hide. If she tries to tell you it was her private phone or she was off duty— It was an interview I granted her as County Attorney and she was there in her capacity as a County Deputy. The subject matter was about county business. If not in our custody by Aug 1, her or anyone elses continued refusal to provide will be considered obstruction and we will open a case when I get back. I continue to be amazed at the resistance I am getting here from most everyone at the SO for just trying to help.*
*Moral of the story— Never a good idea to record an Attorney. Especially THIS one."*

Caldwell and his office were recused from the Joseph Dubs case and Guadalupe County Attorney David Wilburn was appointed to the case in the following order:

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

Filed: 7/6/2023 3:02 PM
Accepted: 7/6/2023 3:08 PM
Genevieve Martinez
County Clerk
Wilson County, Texas
By: Mary Spoon
Deputy Clerk

NO. CC230703432

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| VS. | § | OF |
| JOSEPH ROY DUBS | § | WILSON COUNTY, TEXAS |

**ORDER APPOINTING ATTORNEY PRO TEM**

On this the 6TH day of July, 2023, this court having found good cause permits County Attorney TOM CALDWELL to voluntarily recuse himself from the above styled and numbered case, and hereby appoints DAVID WILLBORN, County Attorney for Guadalupe County, Texas to serve as Wilson County Attorney Pro Tem pursuant to Texas Code of Criminal Procedure, Article 2.07. The attorney hereby appointed is to perform the duties of the office of County Attorney of Wilson County Texas in regard to the above styled and numbered case until further Order of this court. This appointment is effective upon the filing of the attached oath with the clerk of this court and the Texas Secretary of State, said oath to be maintained with the records in this case.

JUDGE HENRY L. WHITMAN JR.
PRESIDING COUNTY COURT
WILSON COUNTY, TEXAS

It is notable that, even after he had recused his office from the Dubs prosecution, Thomas Caldwell continued to attempt to involve himself in the case. There are numerous emails from Caldwell to Allison Lanty, a Guadalupe County prosecutor who was assigned to handle the Dubs case. In one those emails, dated November 7, 2023, he specifically stated, **"I may be a witness in this case. However, I also am the prosecutor who reviewed the evidence and made the charging decision."** (emphasis added).

Filed
7/2/2024 4:06 PM
Deborah Bryan
Wilson County
District Clerk

I may be a witness in this case. However, I also am the prosecutor who reviewed the evidence and made the charging decision. I was the prosecutor who drafted and filed the recusal motions. We have tendered to your office all the evidence and material we have, but if there was anything remotely related to the very broad and vague request made by Mr. DelPrado, it assuredly would be absolutely protected as prosecutorial work product between a prosecutor and his investigators. I am not sure what your thoughts or plans are, but in my opinion, these subpoenas (or mine at least) probably need to be quashed. Further, if my investigators were to have to testify, I imagine their testimony would have to be limited to the factual evidence, not their thoughts or impressions or guidance, if any, they received from me. Mr. DelPrado will get his chance at trial in front of a jury of the Defendants peers to grill me about if I had some beef with this guy that factored into all this.

From this email, it is also clear that Caldwell wanted to prevent his investigators from testifying about any guidance they received from him.

Additionally, even though he had no legal authority to act in the Dubs matter after July 6, 2023, Caldwell sent the following directive to Sheriff Stewart:

Tom Caldwell
Wilson County Attorney
1420 THIRD STREET ~ FLORESVILLE, TEXAS 78114 ~ (830) 393-7305; FAX (830) 393-7358

**To:** Sheriff Jim Stewart, Chief Deputy Clint Garza, all Wilson County Sheriff's Office Deputies and Staff, and Wilson County IT Personnel with control or access to the security camera system currently in use at the County complex located at 800 10th Street, Floresville, TX 78114

**From:** Tom Caldwell, Wilson County Attorney

**Cc:** County Judge, Guadalupe County Attorney's Office, file

**Date:** September 17, 2023

RE: *Notice to Preserve, Retain, and Provide a Copy Certain Security Camera Footage taken on June 6, 2023 and any other material or documents that could be related to the arrests of Alena Berlanga or Joseph Dubs in Anticipation of Litigation, and to comply with the Texas Public Information Act.*

**DOCUMENT & ELECTRONIC DATA PRESERVATION NOTICE**

**PLEASE READ CAREFULLY**

You have been identified as a person or agency who may have documents or materials potentially related to the above-referenced matter. This letter serves as official notice to your agency and the individual recipients that Wilson County and the Wilson County Sheriff's Office (collectively, the "County") has a legal obligation to preserve and retain, without alteration, **all recorded footage that was made on June 6, 2023 by the specific external facility security cameras identified in the attached photos.**

The footage you previously provided to the Office of the Guadalupe County Attorney omitted any footage recorded that day from these two specific cameras. You are directed to IMMEDIATELY preserve and retain any original footage from the specific cameras identified, and then to provide a full and complete copy of the footage to the Office of the County Attorney, and the Wilson County IT Director to be held in anticipation of possible

*WCSO Notice to Preserve and Retain Letter 06.06.23*
-1-

Filed
Deborah Bryan
Wilson County
District Clerk

litigation and public information requests, and also to be provided to the Office of the Guadalupe County Attorney to complete their records related to the request made for this evidence. You also are directed to immediately notify any vendor or outside company that may also have relevant information to preserve any and all records or metadata in their possession related to June 6, 2023.

You are further directed to preserve and retain any other recordings, documents, records, call logs, GPS data, or any other material in your possession that could be related to the arrest of Alena Berlanga, and the subsequent arrest of Joseph Dubs.

You and your department must not, in any way, destroy, alter, dispose of, or otherwise affect the integrity of these materials. In addition, you are directed to suspend any destruction protocols relating to any such recordings and or material in your possession, custody, or control. that relates to any events that occurred at the Wilson County Sheriff's Office or elsewhere on June 6, 2023 that could be related to the two events outlined above. **This is not discretionary.**

**Please "REPLY" to the cover email containing this letter with an acknowledgement that you have read and understand it, that you have not destroyed or altered any of the materials subject to this notice, and that you agree to comply with the instructions herein.**

Thank you for your cooperation. If you have any questions or concerns about any of the measures set forth above, please feel free to call me at (830) 393-7305.

Sincerely,

Tom Caldwell
Wilson County Attorney

It is clearly sent on the official letterhead of his office and Caldwell signed it as Wilson County Attorney.

Based on the totality of the circumstances, it appears that Thomas Caldwell had a strong dislike of Lieutenant Joseph Dubs. There are several pieces of information that this goes back to a time period when they were both employed in Bexar County. Apparently, Caldwell decided that Dubs was a bad cop and needed to be run off. Caldwell's emails to Sheriff Stewart indicate that he basically attempted to bully the Sheriff into firing Dubs. Then, when that effort proved to be unsuccessful, he utilized the power of his office as County Attorney to bring criminal charges against Dubs. It also seems that when the Sheriff refused to provide materials and pointed out that Caldwell and Olivarez would be witnesses and would have a conflict, Mercer was brought in to secure the arrest warrant for Dubs. There is reason to believe this was merely a subterfuge to distance Caldwell from the arrest. It is certainly clear that Caldwell was more than eager to see Dubs prosecuted on facts that did not meet the elements of an offense.

Considering all of the statements, documents, emails, etc, I believe Thomas Calwell committed the offense of Official Oppression as a party to the actions of

Filed
7/2/2024 9:06 PM
Deborah Bryan
Wilson County
District Clerk

Olivarez and Mercer in the arrest of Joseph Dubs. At the same time, this case will rely upon inferences if either Olivarez or Mercer do not agree to testify against him and it may be a difficult case to prove at trial.

**DID DWAYNE MERCER COMMIT AN OFFENSE OF FALSE STATEMENT TO A PEACE OFFICER**

As noted above, a person commits the offense of False Statement to a Peace Officer if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer the investigation. *See* TEX. PEN. CODE §37.08 (a).

During his interview with Sgt. Dickerman, Dwayne Mercer claimed that he decided to write the criminal complaint on his own without any consultation with Caldwell. (Dickerman's report, page 14 at 1.34). As set out in the analysis of Caldwell's criminal liability above, there is evidence that this statement is false. Furthermore, as an investigator with the Special Crimes Unit of the Texas Attorney General's Office, Sgt. Greg Dickerman was a peace officer. Mercer's statement would certainly be material to Dickerman's investigation of Caldwell for an offense of Official Oppression stemming from Dubs' arrest. Finally, there would be no reason such a false statement to have been made unless Mercer intended to deceive Dickerman about Caldwell's role in the Dubs' arrest.

Ironically, it appears that Mercer actually committed the offense that he wrongfully had Dubs arrested for. There is certainly much stronger evidence of his guilt than the case he presented against Dubs.

**DID DWAYNE MERCER COMMIT AN OFFENSE OF TAMPERING WITH A GOVERNMENTAL RECORD**

A person commits the offense of tampering with a governmental record if he knowingly makes a false entry in a governmental record. *See* TEX. PEN. CODE §37.10 (a). The offense is a Class A misdemeanor unless the actor's intent is to defraud or harm another, in which event the offense is a state jail felony. *See* TEX. PEN. CODE §37.10 (c) (1).

"Governmental record" means anything belonging to, received by, or kept by government for information, including a court record. *See* TEX. PEN. CODE §37.01 (1)(A). An indictment alleging tampering with a governmental record based on a false affidavit for a warrant will be held deficient if it fails to identify the specific

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

false statement made in the warrant affidavit. *State v. Smith*, 2017 Tex. App. LEXIS 1442, *16 (Tex. App.—Beaumont 2017, pet. ref'd) (per curiam) (mem. op., not designated for publication).

In *Ratliff v. State*, Ratliff was charged with official oppression and with tampering with a governmental record (a police offense report) following the arrest of Cory Nutt. 663 S.W.3d 106, 113-116 (Tex. Crim. App. 2022). The indictment specifically alleged that Ratliff did then and there, with intent to defraud or harm another, namely, Cory Nutt, make or present or use a governmental record, namely, a Llano Police offense report, in case number 17-130, by omitting or misrepresenting facts of the arrest of Cory Nutt, and the Defendant made or presented or used the governmental record with knowledge of its falsity. Thus, the State's theory of the case was that when Officer Grant Hard wrote his offense report, he left out all the information about Ratliff going into Nutt's trailer and that Ratcliff had tampered with a governmental record when he initialed Hard's report, indicating his approval.

After a trial, a jury found Ratliff guilty of misdemeanor tampering with a governmental record and Ratcliff appealed his conviction. Upon review, the Austin Court of Appeals agreed. It held that a rational jury could have concluded that when Ratcliff initialed the offense report that omitted events "pertaining to the legality of Nutt's arrest that Appellant himself witnessed, he made or used a governmental record knowing that the report was false." *Ratliff*, 604 S.W.3d at 74. In particular, the Austin Court relied on the testimony of Officers Schumacher and Bujnoch. *Id.* They had testified similarly that the offense report failed to mention the interaction between Nutt and the officers while he was in his home and the fact that there was no mention of Appellant entering Nutt's home and escorting him out without a warrant and without consent. *Id.* They also testified that there were no witnesses listed in the report, which Schumacher described as a "significant" omission. *Id.* The court of appeals further relied on Officer Bujnoch's testimony that offense reports "should be very comprehensive" and "should include witnesses that may or may not have information, both for the prosecutor and for the defense." *Id.* at 73. Additionally, the court of appeals noted "discrepancies between what was in the report and what was captured on the recording from Officer Shannon's body camera." *Id.* at 74.

Subsequently, the Court of Criminal Appeals granted discretionary review. The Court noted the testimony of Bujnoch and Schumacher concerning the things omitted from the report. The Court then stated:

Filed
7/2/2025 1:06 PM
Deborah Bryan
Wilson County
District Clerk

> However, there was no testimony that anything included in Harden's report was false. The first four paragraphs of the offense report summarized the events that occurred prior to Appellant's arrival on the scene. When Appellant initialed the report, he would not have had personal knowledge of those events. In his interview with Schumacher, Appellant stated that he relied on Officer Harden's representations regarding those events ("That's what Grant told me"). None of the State's witnesses suggested that anything in these four paragraphs was false. Paragraph five was the only part of the report that involved events about which Appellant had personal knowledge and, like the preceding four paragraphs, there was no testimony or evidence presented indicating that this paragraph was false.

The Court found that, at most, the State's witness testimony supported the proposition that those witnesses disagreed with Harden's offense reporting style. But that testimony did not address the root of the issue—Ratliff's knowledge that the account of the offense in the report were false. The Court stated, "[i]t is difficult to conceive of someone being convicted of falsifying a governmental record when nothing in the record is, in fact, false." As a result, the Court concluded that the evidence was insufficient.

However, the Court continued its analysis. The Court went on to note the indictment in the case alleged that Ratliff engaged in the conduct of "omitting or misrepresenting" the facts of Nutt's arrest and that Ratliff's sufficiency challenge requires them to determine whether the conduct of omitting or misrepresenting specifics of Nutt's arrest in an offense report constituted an offense under the tampering statute. The Court expressly held that it did not.

The Texas Penal Code provides that a person commits an offense only if he commits an *act* or an *omission*. Tex. Penal Code Ann. § 6.01(a). An "act" is defined as "a bodily movement, whether voluntary or involuntary, and includes speech." Tex. Penal Code Ann. § 1.07(a)(1). By contrast, an "omission" is defined as a "failure to act." Tex. Penal Code Ann. § 1.07(a)(34). A failure to act—an omission—is not an offense unless the defendant has a legal duty to act. Tex. Penal Code §§ 1.07(a)(30), 6.01(c); *Billingslea v. State*, 780 S.W.2d 271, 276 (Tex. Crim. App. 1989); *see also State v. Taylor*, 322 S.W.3d 702, 705 (Tex. Crim. App. 2010).

The Court of Criminal Appeals held that the Austin Court erred by failing to address section 6.01(c)'s duty to act requirement in its analysis. As addressed above, a person who omits to perform an act does not commit an offense unless a law as

Filed
1/22/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

defined by section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to act. Tex. Penal Code Ann. § 6.01(c). As applied to the facts of this case, Texas Penal Code section 37.10(a)(5), under which Appellant was convicted, does not make an omission an offense within the meaning of Texas Penal Code section 6.01(c). Nor does the tampering statute prescribe a duty to act. Without a duty to act, any subsequent failure to act is not an offense. *See Billingslea*, 780 S.W.2d at 274; *see also Florio v. State*, 784 S.W.2d 415, 416-17 (Tex. Crim. App. 1990).

Because the tampering statute does not create an offense through an omission or create a duty to include certain information in a governmental record, the Court of Criminal Appeals found the evidence was insufficient to support a conviction. Consequently, the Court reversed the judgment of the Austin Court of Appeals and rendered an acquittal for the offense of tampering with a governmental record.

As explained in *Ratliff*, the facts of the instant case do not fit the offense of tampering with a governmental record. There can be little doubt that a probable cause affidavit submitted to a court meets the definition of a governmental record. However, as in *Ratliff*, none of the statements of fact set out in affidavit are demonstrably false. Although the affidavit was ultimately misleading and led to an improper arrest of Lieutenant Dubbs, the problem lies in information being omitted from the affidavit instead of falsity of the information that was included in the affidavit. For these reasons, the evidence will not support a charge of tampering with a governmental record against any of the involved parties.

## PERJURY

A person commits the offense of perjury if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. *See* TEX. PEN. CODE §37.02 (a). An offense under this section is a Class A misdemeanor. *See* TEX. PEN. CODE §37.02 (b).

As with tampering with a governmental record, the facts of the instant case do not fit the offense of perjury. Again, the problem lies in information being omitted from the affidavit (as will be discussed further below) instead of falsity of the information that was included in the affidavit. For this reason, the evidence will not support a charge of perjury against any of the involved parties.

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

# POTENTIAL ETHICAL VIOLATIONS BY THOMAS CALDWELL

Texas Disciplinary Rule of Professional Conduct 3.09 (Special Responsibilities of a Prosecutor) specifically provides that "[t]he prosecutor in a criminal case shall: (a) refrain from prosecuting or threatening to prosecute a charge that the prosecutor knows is not supported by probable cause." In the instant case, there is reason to believe that Thomas Caldwell violated this rule on June 26, 2023 by sending the following email:

**From:** Tom Caldwell <tcaldwell@wilsoncountytx.gov>
**Sent:** Monday, June 26, 2023 4:45:27 PM
**To:** Jim Stewart <JStewart@wilsoncountytx.gov>
**Cc:** Clint Garza <CGarza@wilsoncountytx.gov>
**Subject:** Re: Lt. Dubs Administrative Leave

Sheriff.

Additionally, your email misstates what we discussed. We are not "witnesses" like those at your office that we asked you to compile statements from.

"We" are a licensed Peace Officer conducting an official investigation and a prosecutor for the same office. We are not "conflicted out" or unable to proceed with this prosecution despite your threat to remove my investigators commissions. That sounded danger-close to me to violating numerous provisions found in Title 8 of the Texas Penal Code.

The case against Dubs is proceeding. You may continue to interfere or attempt to hinder it if you desire, but that is a VERY bad idea. Reinstate this officer at your discretion. You have been advised of why that is not a good idea for your agency and for the County, yet persist in defending him.

We will have an arrest warrant issued NLT Tomorrow afternoon. Are we going to have issues with your facility accepting this prisoner? We can take him to Karnes if you like. Let me know and I will arrange it.

Tom Caldwell
Wilson Countv Attornev

Additionally, Texas Disciplinary Rule of Professional Conduct Rule 3.03 "Candor Toward the Tribunal" specifically provides that "[a] lawyer shall not knowingly… fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act." In the instant case, when Caldwell was involved in obtaining a warrant (as he told the Sheriff "we" would do) using an affidavit that omitted the fact that his office, specifically Investigator Olivarez, had actually arranged to have Dubs notify Berlanga of her warrant, the very fact that was the basis of the False Statement to a Peace Officer charge (Dubs attempted to deceive Olivarez by failing to say he told Berlanga to turn herself in in his email), this failure to disclose this key piece of information led to Dubs being wrongfully arrested as set out above.

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

Finally, Texas Disciplinary Rule of Professional Conduct Rule 5.03 "Responsibilities Regarding Nonlawyer Assistants" provides that, with respect to a non-lawyer employed or retained by or associated with a lawyer, " a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the persons conduct is compatible with the professional obligations of the lawyer; and a lawyer shall be subject to discipline for the conduct of such a person that would be a violation of these rules if engaged in by a lawyer if: the lawyer orders, encourages, or permits the conduct involved." In the event that Caldwell claims that he is not responsible for the omission from the arrest warrant affidavit because it was drafted by Investigator Mercer, he should still be responsible under this rule. It is clear that, as county attorney, he had direct supervisory authority over his investigators, including Mercer. As set out above, it would violate the rules for Caldwell to fail to disclose a material fact in an arrest warrant affidavit that led to a warrant being improperly issued and Dubs being wrongfully arrested. There is reason to believe that Caldwell ordered or encouraged Mercer to obtain the warrant (based on his email to the Sheriff). However, regardless of whether he ordered or encouraged it, he at the very least permitted it and that also violates the rule.

## <u>CONCLUSION</u>

Based on my review of Sgt. Dickerman's investigation along with all of the supporting documents such as witness statements and emails, there is certainly probable cause to believe that members of the Wilson County Attorney's Office committed both criminal offenses and ethical violations in relation to the arrest of Joseph Dubs. Ultimately, however, the decision of whether or not to file a case should not just be a decision of whether the standard of probable cause can be met. At trial, the State is required to prove a defendant committed an offense beyond a reasonable doubt. Additionally, the jury's verdict must be unanimous. This requires a consideration and weighing of the strengths and weaknesses of a case.

Although it is my opinion that Thomas Caldwell is the person most responsible for the Dubbs arrest, the weakest criminal case is against Caldwell. Each of the defendants would no doubt argue that the fact that a magistrate found probable cause and issued a warrant for Joseph Dubs shows that his subsequent arrest was legal and, because he was not subjected to an unlawful arrest, they could not have committed official oppression in relation to the Dubs arrest. In addition, Thomas Caldwell will undoubtedly rely upon Mercer's claim that he decided to write the criminal complaint on his own without any consultation with Caldwell. Finally, Sgt. Dickerman specifically concluded in his report that, "[a]fter investigation, there is insufficient evidence at this time to show that Thomas Caldwell committed an

Filed
7/2/2025 3:06 PM
Deborah Bryan
Wilson County
District Clerk

offense." (Dickerman's report, page 19 at 1.59). Undoubtedly, the defense will attempt to utilize Dickerman's conclusion to undermine any prosecution of Caldwell. These facts make this a difficult case for the State.

On the other hand, the strongest evidence that Caldwell was involved in the arrest of Dubs is found in the email exchange between him and Sheriff Stewart on June 26, 2023. In that exchange, Caldwell told Stewart in no uncertain terms that "we" will have an arrest warrant issued "NLT" (no later than) tomorrow afternoon. Caldwell actually inquired, [a]re we going to have issues with your facility accepting this prisoner." He also offered to take Dubs to Karnes County if the Sheriff preferred that. In light of that exchange, it is simply not believable that, two days later, Investigator Dwayne Mercer swore out an arrest warrant affidavit for Lieutenant Joseph Dubs without any consultation with Caldwell.

The decision of whether or not to file a criminal charge also requires consideration of issues beyond the likely success of a subsequent prosecution. Texas Code of Criminal Procedure 2.01 specifically provides, "[i]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done."

As set out in the analysis above, I have found there is probable cause to believe Thomas Caldwell abused his public office as county attorney. However, the highest level of offense that is supported by the evidence is a Class A misdemeanor. The maximum punishment for such an offense is 1 year in a county jail. Additionally, the potential defendants likely have no criminal record (as such would have likely prevented them from being peace officers or the county attorney). Therefore, it is my opinion that even if the State was successful in obtaining a conviction against any of them, they would likely receive community supervision (commonly referred to as probation). Thus, this is not a situation where the State would be seeking a lengthy prison sentence against a violent criminal to protect the public. The primary benefit of a criminal prosecution against Thomas Caldwell would be to ensure that he does not have the opportunity to engage in such conduct again. That in turn naturally leads to a question of what is the most effective way to achieve that result.

If the State files a case of Official Oppression against Caldwell, he is arrested, and the State is ultimately unsuccessful in obtaining a conviction, I expect that Caldwell would then attempt to expunge his arrest and all records and documents in this matter, effectively making this matter disappear from the public record. On the other hand, an arrest is a "threshold requirement under the expunction

Filed
7/2/2025 4:06 PM
Deborah Bryan
Wilson County
District Clerk

statute." *Carson v. State*, 65 S.W.3d 774, 779 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g). Thus, if this case is not filed and Caldwell is not arrested, he is not entitled to an expunction and the records of his actions will remain.

Currently, Thomas Caldwell does not hold public office. Should he seek public office in the future, all of the statements and reports in this case would be available for consideration. In effect, instead of six jurors in a misdemeanor trial, Caldwell's jury would be the entire electorate who could decide if Caldwell is suitable to hold public office in light of his conduct in this case. Based on the difficulties in seeking a conviction in this case, I believe that ensuring that all of the documents concerning Caldwell's conduct are preserved may ultimately provide more protection for the public than prosecuting this case.

Finally, I have also considered availability of other remedies that may be used to deal with the unacceptable conduct set out above. Currently, Joseph Dubbs has a pending civil suit filed against Caldwell based on his role in having him arrested as set out above. Additionally, there appears to be grounds to believe that Thomas Caldwell committed ethical violations and may be subject to disciplinary action by the State Bar or Texas. Our office has an ethical obligation to submit this matter to the Bar for their consideration and will do so. Therefore, Caldwell's conduct will be subject to review and professional discipline in a different forum.

It is because of all of these considerations that I have decided that no prosecution will brought in this case.

Signed this 27th day of June, 2025.

Sammy McCrary
Chief Felony Prosecutor

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer Mendiola on behalf of Ricardo Cedillo
Bar No. 04043600
jdoll@lawdcm.com
Envelope ID: 102716393
Filing Code Description: Answer/Response
Filing Description: PLAINTIFFS RESPONSE TO DEFENDANT WILSON COUNTY AND TOM CALDWELLS AMENDED PLEA TO THE JURISDICTION
Status as of 7/2/2025 4:11 PM CST

Associated Case Party: TOMCALDWELL

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Charles S.Frigerio | | CSF@FrigerioLawFirm.com | 7/2/2025 4:06:33 PM | SENT |
| Tom Caldwell | | tomcaldlaw@gmail.com | 7/2/2025 4:06:33 PM | SENT |

Associated Case Party: JOSEPHDUBS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Debra AnnArriola | | darriola@lawdcm.com | 7/2/2025 4:06:33 PM | SENT |
| Ricardo G.Cedillo | | rcedillo@lawdcm.com | 7/2/2025 4:06:33 PM | SENT |
| Donna Shodrock | | dshodrock@lawdcm.com | 7/2/2025 4:06:33 PM | SENT |
| Zachary Gilbert | | zgilbert@lawdcm.com | 7/2/2025 4:06:33 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Julie AVasquez | | JAV@FrigerioLawFirm.com | 7/2/2025 4:06:33 PM | SENT |
| Hector X.Saenz | | HXS@FrigerioLawFirm.com | 7/2/2025 4:06:33 PM | SENT |
| Tom Caldwell | | tomcaldlaw@gmail.com | 7/2/2025 4:06:33 PM | SENT |
| Charles AnthonyFrigerio | | Charlie@Frigeriolawfirm.com | 7/2/2025 4:06:33 PM | SENT |

# EXHIBIT No. 12

## Tharp and Frazier Material provided to State Bar in Grievance filed against Caldwell July and October 2025

# Comal County Criminal District Attorney

**JENNIFER THARP**

July 21, 2025

Office of the Chief Discipline Counsel
State Bar of Texas
Grievance Division
P.O. Box 13287
Austin, TX 78711

Re: Former Wilson County Attorney, Thomas Caldwell

To Whom It May Concern,

Enclosed please find my Grievance Form, to include the investigation submitted by the Attorney General's Office, additional files received from other agencies such as Guadalupe County and the Texas Rangers, Filing by Thomas Caldwell, and Non-Prosecution Affidavits for the case my office was appointed to review involving **Official Oppression committed by Thomas Paul Caldwell, former County Attorney of Wilson County**, and/or employees of his office. (Exhibit A - Thumb drive).

The underlying facts arise from a tangled mess of public officials and peace officers in Wilson County who were involved in the arrest of another Wilson County Sheriff Deputy. After reviewing the investigation submitted by the Attorney General's Office, review of additional records my office obtained, and analysis of the law, and in furtherance of my prosecutorial discretion found that it would be problematic proving beyond a reasonable doubt that Thomas Caldwell committed the criminal offense of Official Oppression pursuant to Texas Code of Criminal Procedure 39.03(a)(1). However, there is reason to believe that Thomas Caldwell violated **Texas Disciplinary Rule of Professional Conduct 3.09 (Special Responsibilities of a Prosecutor).** Rule 3.09 provides that "the prosecutor in a criminal case shall: refrain from prosecuting or threatening to prosecute a charge that the prosecutor knows is not supported by probable cause." There is reason to believe that Thomas Caldwell violated this rule by sending an email to Sheriff Jim Stewart on June 26, 2023. (See page 31 of Letter to Judge Wilson Attachment A, located on thumb drive submitted as Exhibit A). Based on the totality of the circumstances, it appears that Caldwell had a strong dislike of Dubs and when he was unsuccessful at bullying Sheriff Stewart into firing Dubs, Caldwell used other means in violation of this rule, to bring criminal charges against Dubs.

**199 Main Plaza, Suite 2007, New Braunfels, Texas 78130-5161 Tel: (830) 221-1300 Fax: (830) 608-2008**

**JENNIFER THARP**
Comal County Criminal District Attorney

Additionally, there is reason to believe that Thomas Caldwell also violated **Texas Disciplinary Rule of Professional Conduct Rule 3.03 "Candor Toward the Tribunal,"** which specifically provides that "[a] lawyer shall not knowingly ...fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act." In the investigation submitted by the Attorney General's Office, Caldwell was involved in obtaining an arrest warrant (as detailed in the email mentioned above) using an affidavit that omitted the fact that his office, specifically Investigator Olivarez, had actually arranged to have Lt. Dubs notify the arrestee of her warrant, the very fact that was the basis of the Charge of False Statement to a Peace Officer, filed by Caldwell's Office against Lt. Dubs alleging that Lt. Dubs attempted to deceive Olivarez by failing to say he told the arrestee to turn herself in in his email or in a supplemental report. The failure to disclose this key piece of information by Caldwell and his Investigators led to Lt. Dubs being wrongfully arrested as outlined in the Letter to Judge Wilson Attachment A.

Finally, there is reason to believe that Caldwell violated **Texas Disciplinary Rule of Professional Conduct Rule 5.03, "Responsibilities Regarding Nonlawyer Assistants"** which provides that, with respect to non-lawyer employed or retained by or associated with a lawyer, "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and a lawyer shall be subject to discipline for the conduct of such a person that would be a violation of the rules if engaged in by a lawyer if: the lawyer orders, encourages, or permits the conduct involved." In the event that Caldwell claims that he is not responsible for the omission from the arrest warrant affidavit because it was drafted by Investigator Mercer, he may still be responsible under this rule. As the County Attorney, he had direct supervisory authority over his investigators, including Mercer. As set out above (and further in Exhibit A), it would violate the rules for Caldwell to fail to disclose a material fact in an arrest warrant affidavit that led to a warrant being improperly issued and Dubs being wrongfully arrested (as further detailed in Exhibit A). There is reason to believe that Caldwell ordered or encouraged Mercer to obtain the warrant (based on his email to Sheriff Jim Stewart on June 26, 2023). Regardless of whether he ordered or encouraged it, he at the very least permitted it and that may also violates the rule.

I truly appreciate your time and attention to this matter. Should you have any questions or want to discuss this request further, please feel free to contact me at your convenience.

Sincerely,

Jennifer Tharp

## V. HOW DID YOU LEARN ABOUT THE STATE BAR OF TEXAS' ATTORNEY GRIEVANCE PROCESS?

- ☐ **Yellow Pages**
- ☐ **Internet**
- ☑ **Other**
- ☐ **CAAP**
- ☐ **Attorney**
- ☐ **Website**

## VI. ATTORNEY-CLIENT PRIVILEGE WAIVER

I hereby expressly waive any attorney-client privilege as to the attorney, the subject of this Grievance, and authorize such attorney to reveal any information in the professional relationship to the Office of Chief Disciplinary Counsel of the State Bar of Texas. I understand that it may be necessary to act promptly to preserve any legal rights I may have, and that commencement of a civil action may be required to preserve those rights.

Additionally, I understand that the Office of Chief Disciplinary Counsel may exercise its discretion and refer this Grievance to the Client-Attorney Assistance Program (CAAP) of the State Bar of Texas for assistance in resolving a subject matter of this Grievance. In that regard, I hereby acknowledge my understanding that such discretionary referral does not constitute the commencement of a civil action and that the State Bar of Texas will not commence any civil action on my part. I acknowledge that it is my responsibility to seek and obtain any necessary legal advice with respect to this matter. I also understand that any information I provide to the State Bar of Texas may be used to assist me and will remain confidential for purposes of resolving the issue(s) described above.

I understand that the Office of Chief Disciplinary Counsel maintains as confidential the processing of Grievances.

I hereby swear and affirm that I am the person named in Section II, Question 1 of this form (the Complainant) and that the information provided in this Grievance is true and correct to the best of my knowledge.

Signature: [signature] Date: 7/21/25

Printed Name: Jennifer Tharp

To ensure PROMPT ATTENTION, THE GRIEVANCE SHOULD BE MAILED OR FAXED TO:

**THE OFFICE OF CHIEF DISCIPLINARY COUNSEL**
**P.O. Box 13287**
**Austin, TX 78711**
**Fax: (512) 427-4315**

# Comal County Criminal District Attorney

## JENNIFER THARP

October 22, 2025

Office of the Chief Discipline Counsel
State Bar of Texas
Grievance Division
P.O. Box 13287
Austin, TX 78711

Re: Former Wilson County Attorney, Thomas Caldwell

To Whom It May Concern,

This letter is to supplement the information previously filed in reference to the grievance filed against Former Wilson County Attorney, Thomas Caldwell by Jennifer Tharp, Comal County Criminal District Attorney. The supplemental information includes the required redaction of third-party confidential information, as requested by the Office of the Chief Discipline Counsel, in the investigation submitted by the Attorney General's Office (Exhibit C - Thumb drive) and the Non-Prosecution Affidavit for the case my office was appointed to review involving **Official Oppression committed by Thomas Paul Caldwell, former County Attorney of Wilson County**, and/or employees of his office. (Exhibit B).

I truly appreciate your time and attention to this matter. Should you have any questions or want to discuss this supplemental information, please feel free to contact me at your convenience.

Sincerely,

Jessica L. Frazier