UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

THOMAS PAUL CALDWELL and JOSHUA JAYME OLIVAREZ, Plaintiffs,

v.

AUDREY GOSSETT LOUIS, individually, et al., Defendants.

Civil Action No. 5:26-cv-2527

# Wilson County Defendants' Motion to Dismiss

To the Honorable District Judge:

Multiple reasons require the dismissal of each claim by Tom Caldwell and Joseph Olivarez ("Plaintiffs"). Those reasons include: the failure to allege injuries sufficient for First, Fourth, and Fourteenth Amendment claims; the failure to dispute key facts in a complained-of prosecutor's report; and the inability to overcome individual defendants' qualified immunity. Because no plausible claim is pleaded against Wilson County, Sheriff James Stewart, chief sheriff's deputy Clinton Garza, and sheriff's lieutenant Joseph Dubs (the "Wilson County Defendants"), those defendants move, under Rule of Civil Procedure 12(b)(6), for dismissal of the claims against them.

## I. No plausible First Amendment claim is pleaded.

Plaintiffs' "Count I" is a 42 U.S.C. §1983 claim for retaliation in violation of the First Amendment. *Complaint* (Doc. 1), at 66. "To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (quot. omitted).

### A. Plaintiffs do not adequately identify the alleged instances of protected speech.

To state a plausible First Amendment retaliation claim, a plaintiff must "specify the protected speech he claims to have engaged in". *Udeigwe v. Tex. Tech Univ.*, 733 Fed. Appx. 788, 793 (5th Cir. 2018) (claim inadequately pleaded). Here, the complaint does not identify the content and circumstances of the "protected activity" that would support First Amendment retaliation claims. *Complaint* (Doc. 1), at 66-67. Without that information, the Court cannot determine whether each plaintiff "engaged in a constitutionally protected activity" or whether any "adverse actions were substantially motivated" by protected speech – each of which is essential to the retaliation claim. *Reitz*, 85 F.4th at 789 (quot. omitted). For example, a government worker's speech "is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Williams v. Dallas ISD*, 480 F.3d 689, 692 (5th Cir. 2007) (discussing effects of *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Yet the gist of Plaintiffs' complaint is that they were retaliated against for Caldwell's actions as county attorney and Olivarez's actions as an investigator in the county attorney's office.

For these reasons, the complaint lacks sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That requires dismissal of the claims. *See id.; see also, e.g., Udeigwe*, 733 Fed. Appx. at 793 (dismissing claim).

### B. The plaintiffs' allegations do not satisfy the injury requirement.

Another threshold question is whether either plaintiff alleged a sufficient injury for a First Amendment retaliation claim. Caldwell alleges that various defendants subjected him to improper accusations and investigations. *Complaint* (Doc. 1), at 68. Olivarez alleges that his new employer,

the Bee County sheriff's office, required his resignation after learning of the criminal investigation and that the investigation impaired his future job prospects. *Complaint* (Doc. 1), at 68.

The Fifth Circuit has held that "criticism, an investigation (or an attempt to start one), and false accusations" are "all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999); *see also, e.g., Reitz*, 85 F.4th at 790 (applying rule, citing *Colson* and other cases). The *Colson* plaintiff complained of "baseless accusations" that resulted in her "being investigated by the District Attorney's Office and a grand jury for possible criminal violations" and that were published at the city library "in a public document designed to discredit her with her constituents." 174 F.3d at 502-506. In *Slegelmilch*, a therapist claimed injury from allegedly false accusations that resulted in a licensing-board investigation. *Slegelmilch v. Pearl River County Hosp. and Nursing Home*, 655 Fed. Appx. 235, 239-240 (5th Cir. 2016). And in *Reitz*, two police officers made "threatening" and "scary" accusations to the plaintiff, including that one officer would file a case with local prosecutors. 85 F.4th at 786, 789-790. The allegations in those cases, however, did not state First Amendment injuries.

Yet another problem, affecting not only Plaintiffs' First Amendment claim but also their other constitutional claims, is that much of their complaint relies on "group pleading" – that is, faulting the defendants "as a group without factual material" specific to each defendant's conduct and state of mind. *Armstrong v. Ashley*, 60 F.4th 262, 274-275 (5th Cir. 2023). A group pleading is not "imputable to any particular individual defendant" and thus will not support a claim against any defendant. *Id.* (quot. omitted).

This is especially important in evaluating the causal link between each defendant's conduct and the claimed injury. For example, ample time and other actors separate the Wilson County

defendants' conduct from prosecutor Sammy McCrary's non-prosecution affidavit. Aubrey Louis, the 81st District Attorney, asked the Office of the Attorney General (OAG) to investigate the complaints about Caldwell and Garza's conduct. *Complaint* (Doc. 1), at 24. The OAG assigned its investigator Gregory Dickerman to the matter. *Id.* at 25. After Caldwell announced his candidacy to unseat Louis, she recused her office, and a state district judge appointed the Comal County Criminal District Attorney as prosecutor pro tem. *Id.* at 29-30 and Exh. 5, at 2 (Doc. 1-2, at 46) (appointment order). That office's chief felony prosecutor McCrary reviewed Dickerman's investigation, and McCrary reported the underlying facts and his conclusions in a 32-page non-prosecution affidavit. *Id.* at 39 and Exh. 8 (Doc. 1-2, at 63-94) (affidavit).

Plaintiffs' complaint fails to plead facts to show the necessary causal link between each of the Wilson County defendants' conduct and any First Amendment injury. For this reason too, their First Amendment claims against each of those defendants must be dismissed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quot. omitted). Because the complaint here fails to state a sufficient First Amendment injury – and causally attribute that injury to the conduct of each Wilson County defendant – the retaliation claims are not plausible and must be dismissed. *Id.*

### C. The complaint fails to allege facts that show unlawful retaliation.

Plaintiffs' alleged injuries arise from complaints about their conduct, a resulting criminal investigation, and the aftermath of that investigation. *Complaint* (Doc. 1), at 68. As noted above, the complaint acknowledges that Dickerman investigated the complaints and that McCrary reviewed Dickerman's investigation and wrote a 32-page non-prosecution affidavit. *See above*, at 4. McCrary's affidavit discussed the following facts:

- On June 6, 2023, Olivarez met with Dubs and Stewart about a warrant for Alena Berlanga's arrest. The three agreed that Dubs would contact Berlanga, ask her to turn herself in, and have a magistrate ready so that Berlanga need not undergo the normal booking process. *Complaint*, Exh. 8, at 4-5 (Doc. 1-2, at 66-67).

- On June 9, 2023, Dubs sent Olivarez an email reporting that Berlanga "turned herself in" at a justice of the peace's office "and that the only contact with LE [law enforcement] was being fingerprinted". *Complaint*, Exh. 8, at 6 (Doc. 1-2, at 68).

- Shortly after that email, Caldwell opened an investigation into Dubs, demanded Sheriff Stewart's cooperation, and eventually said, "We will have an arrest warrant issued NLT [no later than] Tomorrow afternoon." *Complaint*, Exh. 8, at 6-12 (Doc. 1-2, at 68-74).

- Dwayne Mercer (another of Caldwell's investigators) swore a probable-cause affidavit that complained of Dubs making a false statement to a peace officer (Olivarez) in the June 9 email. Mercer said that the statement about the "only contact with LE [law enforcement]" was false because Dubs had contacted Berlanga to turn herself in. *Complaint*, Exh. 8, at 12-13 (Doc. 1-2, at 74-75).

- A justice of the peace issued a warrant for Dubs' arrest, and arrangements were made for Dubs to turn himself in. Olivarez executed the warrant at the sheriff's office. *Complaint*, Exh. 8, at 13-15 (Doc. 1-2, at 75-77).

McCrary concluded that the facts did not support probable cause for the offense of false statement to a peace officer. Among other problems, McCrary did not find sufficient evidence of a false statement (because the email was about what occurred at the justice of the peace's office), that Dubs intended to deceive Olivarez (who agreed that Dubs would ask Berlanga to turn herself in), and that the statement was immaterial (because nothing about Berlanga's arrest was relevant to proving the criminal charge against her). *Complaint*, Exh. 8, at 15-17 (Doc. 1-2, at 77-79).

McCrary instead found sufficient evidence that Olivarez, Mercer, and Caldwell committed the offense of official oppression by causing Dubs' arrest in the clear absence of probable cause. *Complaint*, Exh. 8, at 17-25 (Doc. 1-2, 79-87). McCrary also concluded that Caldwell violated attorney-ethics rules by pursuing that arrest. *Complaint*, Exh. 8, at 29-30 (Doc. 1-2, at 91-92).

McCrary nonetheless decided against prosecution of criminal charges. He concluded that, among other reasons, the public interest was better served by "ensuring that all of the documents concerning Caldwell's conduct are preserved" rather than risking an expunction of those materials if Caldwell were to avoid conviction. *Complaint*, Exh. 8, at 31-32 (Doc. 1-2, at 93-94).

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). Thus, the "exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). McCrary's affidavit is thus part of the pleadings for purposes of this motion.

Caldwell and Olivarez have not disputed the truth of the facts underlying McCrary's conclusions. That raises multiple problems for the retaliation claims. One problem is that the pleaded facts do not show that any "defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Reitz*, 85 F.4th at 789 (quot. omitted). To avoid dismissal, the pleaded facts must allow a "reasonable inference" of wrongdoing and not just "the mere possibility of misconduct". *Iqbal*, 556 U.S. at 678-679. When "more likely explanations" of the defendants' conduct are inconsistent with liability, the pleaded facts do not "plausibly establish" a claim. *Iqbal*, at 681 (dismissing discrimination claim for this reason).

Here, the "more likely explanation" is that various defendants' complaints, the investigation, and McCrary's non-prosecution affidavit were motivated by the arrest of Dubs – and not by protected First Amendment conduct of either plaintiff. On the facts pleaded, unlawful retaliation "is not a plausible conclusion." *Iqbal*, at 682.

A similar problem affects Olivarez's complaint of "false information that he was the subject of a pending criminal indictment". *Complaint* (Doc. 1), at 68. This matter is based on conversations between Bee County chief sheriff's deputy Russell Kirk and Garza and between

Kirk and Dickerman. *Complaint* (Doc. 1), at 35-36. The complaint's recitation of facts is based on Kirk's memorandum about the calls. *Complaint* (Doc. 1), at 36. The attachment of that memorandum to the complaint makes it part of the complaint "for all purposes", FED. R. CIV. P. 10(c), including motions to dismiss. *Ferrer*, 484 F.3d at 790. The memorandum reflects that Dickerman told Kirk "that the criminal case on the suspect, Joshua Olivarez, was currently pending Grand Jury Indictment in Comal County". *Complaint*, Exh. 7 (Doc. 1-2, at 61). Kirk's memorandum does not attribute any similar statement to Garza, who mentioned "controversy surrounding the legalities of [Dubs'] arrest" and said that Kirk should speak with Dickerman "who was currently handling the investigation". *Id.*

A "more likely explanation" is that the statements were motivated by Kirk's calls to Garza and Dickerman and by the dubious arrest of Dubs. *Iqbal*, 556 U.S. at 682. Retaliation for protected speech is neither a "reasonable inference" that may be credited, *id.* at 678, nor "a plausible conclusion." *Id.* at 682 (dismissing discrimination claim).

Another problem is that the First Amendment "cannot be used as a weapon to silence" others' speech. *Houston Comm. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022) (no First Amendment retaliation claim arising from board's censure of member). By working for the government, public officials and employees are subject to criticism of their character and their governmental acts and "by necessity must accept certain limitations on [their] freedom." *Garcetti*, 547 U.S. at 418; *see also, e.g., Wilson*, 595 U.S. at 478.

Plaintiffs complain of retaliation for their official acts, such as investigating other Wilson County agencies and officials (including the sheriff's office) and arresting Dubs. That conduct, however, does not carry First Amendment protection. *See above*, at 2. And even if such protection were to exist, the First Amendment does not insulate Plaintiffs from criticism of their conduct or

from the reporting and investigating of potential criminal violations. The defendants' conduct does not "qualify as a materially adverse action" that could support a First Amendment retaliation claim. *Wilson*, 595 U.S. at 479.

For the additional reasons discussed above, Plaintiffs have not pleaded "sufficient factual matter, accepted as true, to state a [First Amendment retaliation claim] that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quot. omitted). The First Amendment retaliation claims must be dismissed.

### D. Qualified immunity protects the individual defendants from these claims.

To state a federal-law claim against a government officer in the officer's individual capacity, a plaintiff must also overcome the officer's qualified immunity. *See, e.g., Iqbal*, 556 U.S. at 671-672. Qualified immunity shields government officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights", and this immunity is "both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Id.* at 672 (quots. omitted).

Qualified immunity protects an official from suit where the complaint fails to adequately allege a statutory or constitutional violation. *Iqbal*, 556 U.S. at 672-673 (explaining). Here, qualified immunity protects the individual defendants because the complaint's factual allegations are insufficient to state a First Amendment retaliation claim.

Qualified immunity also protects a government official where the allegedly violated right was not "'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quot. omitted) (dismissing suit on pleadings). To overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Here, the complaint's allegations do not, under then-existing precedent, clearly establish any allegedly violated right. For this reason too, the

complaint does not allege sufficient facts to overcome the individual defendants' qualified immunity from suit on any First Amendment retaliation claim.

For these reasons, each individual defendant's qualified immunity requires dismissal of the First Amendment retaliation claims against that defendant.

## II. No plausible Fourth Amendment claim is pleaded.

The complaint's second "count" is a claim, asserted under 42 U.S.C. §1983, for alleged violations of the Fourth Amendment. *Complaint* (Doc. 1), at 74.

### A. The complaint does not identify any Fourth Amendment injury.

The Fourth Amendment is concerned with "unreasonable searches and seizures". U.S. CONST. Am. 4. For example, a Fourth Amendment malicious-prosecution claim requires "that the malicious prosecution resulted in a seizure of the plaintiff." *Thompson v. Clark*, 596 U.S. 36, 43 n. 2 (2022); *see also Armstrong*, at 278 (quoting this statement).

Here, the complaint does not identify any injury – such as a wrongful arrest – that the Fourth Amendment protects against. And even if such an injury could exist, the complaint does not plead facts to show a sufficient causal link between each Wilson County defendant's conduct and the injury. *See above*, at 3-4. Thus, Plaintiffs' Fourth Amendment claims are not plausible and must be dismissed. *Iqbal*, 556 U.S. at 678 (only a "plausible claim" survives dismissal).

### B. The complaint does not support other necessary elements.

A Fourth Amendment malicious-prosecution claim also requires "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong*, 60 F.4th at 279 (quot. omitted).

Plaintiffs' complaint does not identify any "criminal proceeding" in which either of them "was defendant". *Id.* The complaint instead admits the absence of a criminal proceeding. *See, e.g., Complaint* (Doc. 1), at 44-45 (admitting McCrary's decision not to prosecute).

Regardless, probable cause would have supported a criminal proceeding. "For purposes of malicious prosecution, probable cause means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the [defendant], that the person charged was guilty of the crime for which he was prosecuted." *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002) (quot. omitted). The belief need not be "more likely true than false". *Id.* at 729. "A 'fair probability' that the suspect has committed a crime is enough to establish probable cause." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024); *see also Gordy*, at 729. For malicious prosecution, "probable cause to institute criminal proceedings must be determined as of the time that charges were filed." *Gordy*, at 729.

Under Texas law, a "public servant acting under color of his office or employment commits an offense if he … intentionally subjects another … to arrest … that he knows is unlawful". TEX. PEN. CODE §39.03(a). The underlying facts in McCrary's affidavit – facts that Plaintiffs do not dispute – show that probable cause existed to charge Caldwell and Olivarez with the offense of official oppression. *See above*, at 4-6 (summarizing key facts). Those facts show that Caldwell and Olivarez applied an unreasonable interpretation to Dubs' June 9 email, failed to account for Olivarez's agreement that Dubs would ask Berlanga to turn herself in, and caused Dubs' arrest nonetheless. *See id.* One could reasonably conclude that, acting under color of public office, Caldwell and Olivarez intentionally subjected Dubs to an unlawful arrest.

Plaintiffs' complaint does not address the "malice" element. *See Complaint* (Doc. 1), at 74-84. A complaint is insufficient "to survive a motion to dismiss when it fails to allege essential

elements of a plaintiff's claim." *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 589 U.S. 327, 340-341 (2020). On the facts that are alleged, legitimate concerns about Dubs' arrest provide "more likely explanations" for the defendants' conduct – such that improper malice "is not a plausible conclusion." *Iqbal*, 556 U.S. at 681-682.

By alternatively casting the claim as one for "fabrication of evidence", Plaintiffs fare no better. *Complaint* (Doc. 1), at 74. Plaintiffs do not identify the allegedly false evidence or its materiality to those who considered the evidence. *See id.* at 74-75. Their complaint does not dispute the evidence discussed in McCrary's non-prosecution affidavit, *Complaint*, Exh. 8, at 4-15 (Doc. 1-2, at 66-77), and offers no meaningful challenge to McCrary's application of law to the facts, *see id.* at 15-30 (Doc. 1-2, at 77-92). They identify no authority that their "fabrication of evidence" claim has different elements than a malicious-prosecution claim. Nor do they provide any reason to believe that a fabrication-of-evidence claim can proceed without a criminal proceeding against them, with probable cause to support criminal charges, or without improper malice.

The complaint not only fails to allege facts showing a Fourth Amendment injury, the complaint also fails to allege facts to support the other necessary elements of any Fourth Amendment claim. The complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable" on any Fourth Amendment claims. *Iqbal*, 556 U.S. at 678. This requires dismissal, on the pleadings, of those claims. *Id.*

## C. Qualified immunity protects the individual defendants from these claims too.

As noted above, qualified immunity protects an individual defendant if either: (1) a constitutional-violation claim is inadequately pleaded; or (2) the allegedly violated right was not clearly established at the time of the challenged conduct. *See above*, at 8-9.

With this claim too, Plaintiffs have neither alleged facts sufficient to support a Fourth

Amendment claim against each individual defendant nor facts that, under existing precedent, clearly establish the allegedly violated right. Thus, qualified immunity protects each individual defendant from suit on – and requires dismissal of – Plaintiffs' Fourth Amendment claims.

## III. No plausible Fourteenth Amendment claim is pleaded.

The complaint's "Count III" and "Count IV" allege, under 42 U.S.C. §1983, claims for "stigma-plus/reputational deprivation" and deprivation of "liberty and property interests", all in violation of Fourteenth Amendment due-process rights. *Complaint* (Doc. 1), at 84-85, 92-93.

### A. The complaint does not identify any Fourteenth Amendment injury.

The Fourteenth Amendment does not "extend to [Plaintiffs] a right to be free of injury wherever the State may be characterized as the tortfeasor." *Paul v. Davis*, 424 U.S. 693, 701 (1976). The amendment protects against deprivations "of life, liberty, or property, without due process of law". U.S. CONST. Art. 14, §1. An "interest in reputation alone" is not a "liberty" or "property" interest within that protection. *Paul*, at 711-712. Thus, Fourteenth Amendment due-process protection did not extend to two police departments' allegedly defamatory inclusion of the plaintiff in a flyer identifying shoplifting suspects – even if Plaintiff's inclusion in the flyer would cause him fear when entering businesses and "would seriously impair his future employment opportunities." *Id.* at 694-697.

Plaintiffs' complaint does not identify any recognized liberty or property interest. Being subject to criminal accusations is not enough. *Paul*, 424 U.S. at 694-696. Nor is any other harm that "merely flowed from damage to [the plaintiff's] reputation." *Davis v. City of Aransas Pass*, 605 Fed. Appx. 429, 430 (5th Cir. 2015).

Even assuming that a Fourteenth Amendment injury were otherwise shown, the complaint fails to plead facts to show a causal link between each Wilson County defendant's conduct and the

injury. That too renders the claim insufficient to survive dismissal. *See above*, at 3-4.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quot. omitted). Because Plaintiffs did not plead facts showing injury to a protected liberty or property interest – or causally attribute that injury to each Wilson County defendant's conduct – their Fourteenth Amendment claims are not plausible and must be dismissed.

### B. Plaintiffs did not plead facts to show that any deprivation of a protected interest was improper or without any process that was due.

To be actionable as a due-process violation, a deprivation of a liberty or property interest must be improper. Otherwise, the absence of complained-of process causes no harm. For example, if an employee claims deprivation of a liberty interest through publication of the reasons for termination, the reasons must create a "*false and defamatory* impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (emph. added, quot. omitted). That requires that "the charges were made public". *Id.* Providing another example, deprivation of a property interest requires a "claim of entitlement" to retain the interest. *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

The complaint does not state facts that, if true, show that any deprivation was improper. While the complaint is rife with "conclusory allegations, unwarranted factual inferences, [and] legal conclusions", a court cannot accept such matters as true when deciding a motion to dismiss. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quot. omitted). By contrast, the complaint refers to and attaches McCrary's non-prosecution affidavit without disputing the underlying facts in the affidavit. *See above*, at 4-6. Those facts show a legitimate basis for the criticism and investigation of Plaintiffs' conduct. *See id.*

Another problem is that *due-process claims* are concerned with *process*, and the complaint does not allege what process was due, the plaintiffs' insistence on that process, and the denial of that process. For example, when a government employee claims liberty-interest infringement in connection with the employee's discharge, "the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name." *Bledsoe*, 449 F.3d at 653. Likewise, a discharged employee claiming property-interest infringement must "request an available hearing". *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989).

Plaintiffs cannot state a plausible due-process claim without pleading facts to show the improper deprivation of a protected interest, the process that was due, and the denial of that process. Because "only a complaint that states a plausible claim for relief survives a motion to dismiss", these omissions require dismissal of any such claim. *Iqbal*, 556 U.S. at 679.

### C. Qualified immunity protects the individual defendants from these claims.

As noted above, qualified immunity protects the individual defendants if either: (1) a constitutional-violation claim is inadequately pleaded; or (2) the allegedly violated right was not clearly established at the time of the challenged conduct. *See above*, at 8-9. Both conditions exist here. The plaintiffs have not alleged facts sufficient to support a Fourteenth Amendment claim against each individual defendant – let alone facts that, in combination with then-existing precedent, clearly establish the allegedly violated right.

Each individual defendant thus retains qualified-immunity protection from suit on any Fourteenth Amendment claims. Those claims too must be dismissed.

## IV. No plausible *Monell* claim is pleaded.

The complaint's "Count V" asserts a municipal-liability claim – that is, that the local-government entities are liable for the constitutional violations of their officials. *Complaint* (Doc.

1), at 99-100. Any local-government liability under 42 U.S.C. §1983 is governed by the framework established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "To state a *Monell* claim against [a county], [each plaintiff] was required to plead facts that plausibly establish: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quot. omitted).

Plaintiffs' *Monell* claim fails for a threshold reason: "Every *Monell* claim requires an underlying constitutional violation." *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (quot. omitted). Because Plaintiffs have not plausibly pleaded any constitutional violation, any *Monell* claim necessarily fails too. *See id.* (affirming dismissal on pleadings).

Any *Monell* claim is insufficiently pleaded for additional reasons. While the Fifth Circuit "has identified three routes to establishing an 'official policy' for the purposes of municipal liability", *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026), the pleadings satisfy none of those routes:

"First [is] a policy statement formally announced by an official policymaker." *Id.* (quot. omitted). The plaintiffs' complaint does not identify any such policy statement.

"Second [is] a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quot. omitted). As in *Ratliff*, though, the complaint here fails to show such a practice "because the only facts that [each plaintiff] alleged with any specificity relate to his" own incident. *Ratliff*, 948 F.3d at 285 (quot. omitted); *compare Complaint* (Doc. 1), at 101-102.

"And third [is] a single unconstitutional act by a final policymaker." *Cambric*, 170 F.4th at 325. The complaint, however, does not identify any such act.

Nor does the complaint allege how any policy, of any of those three types, was the "moving force" behind any constitutional violation. *Ratliff*, 948 F.3d at 285.

Without "factual content that allows the court to draw the reasonable inference that [Wison County] is liable", the *Monell* claim must be dismissed. *Iqbal*, 556 U.S. at 678.

## V. No plausible defamation claim is pleaded.

The complaint's "Count VI" alleges state-law defamation claims against Sheriff Stewart, Comal County District Attorney Tharp, and her office's chief felony prosecutor McCrary. *Complaint* (Doc. 1), at 108-109.

### A. The Texas Tort Claims Act precludes liability on this claim.

The Texas Tort Claims Act immunizes state- and local-government employees from suit on tort claims that are "(1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the Tort Claims Act." *Laverie v. Weatherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (discussing TEX. CIV. PRAC. & REM. CODE §101.106(f)); *see also Franka v. Velasquez*, 332 S.W.3d 367, 371 n. 9 (Tex. 2011) (dismissal under §101.106(f) is "based on an assertion of immunity").

Plaintiffs' defamation claims fall within the first condition. Those claims are based on the same statements as the constitutional-violation claims. *See Complaint* (Doc. 1), at 66-99 (constitutional claims), 108-111 (defamation). The constitutional-violation claims are based on the individual defendants acting "under color of state law" as government officials. *Id.* at 7, 59-60; *see also, e.g., id.* at 79, 85, 91, 93. The defamation claims are likewise based on those defendants' conduct in their governmental employment. *Id.* at 108-111; *compare Donohue v. Butts*, 516 S.W.3d 578, 582 (Tex. App. – San Antonio 2017, no pet.) (dismissal on pleadings because §101.106(f) immunity barred defamation claims against sheriff and deputies).

Any tort claim satisfies the second condition. Texas precedents "firmly establish the rule that any tort claim against the government is brought 'under' the Act for purposes of section 101.106, even if the Act does not waive immunity." *Franka*, 332 S.W.3d at 375; *Donohue*, at 581-582 (applying §101.106(f) immunity though Act does not waive governmental immunity for defamation claims). The section's effect is to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Id.* at 381.

Because Section 101.106(f) immunity applies, the defamation claim against Stewart does not "state a claim to relief that is plausible on its face" and must be dismissed. *Iqbal*, 556 U.S. at 678 (quot. omitted); *see also, e.g., Laverie*, 517 S.W.3d at 756 (dismissing defamation claim).

## B. The complained-of statements cannot support a defamation claim.

A defamation plaintiff has no plausible claim based on opinions in a publication that provides a true or substantially true statement of the underlying facts. *See, e.g., Favre v. Sharpe*, 117 F.4th 342, 347 (5th Cir. 2024) (affirming dismissal on pleadings); *Tex. Beef Group v. Winfrey*, 201 F.3d 680, 688 (5th Cir. 2000) (affirming judgment as a matter of law). "To determine whether an allegedly defamatory publication is substantially true, we consider whether it is more damaging to the plaintiff's reputation in the mind of the average person than a truthful statement would have been." *Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App. – Houston [1st Dist.] 2009, pet. denied) (citing *McIlvain v. Jacobs*, 794 S.W. 2d 14, 16 (Tex. 1990) and other authorities).

Under those principles, Plaintiffs cannot state plausible defamation claims by disputing opinions drawn from underlying facts without disputing the substantial truth of those facts. For example, Plaintiffs have not disputed the underlying facts in McCrary's affidavit, *see above*, at 4-6, and seem more concerned with the conclusions that McCrary and other defendants drew from those facts. Moreover, defamation claims cannot survive by disputing immaterial details; rather,

any claimed errors must have rendered the publication "more damaging" than an entirely accurate statement. *Vice*, at 18. Nothing in the complaint suggests this occurred.

Because the pleaded facts do not "plausibly give rise to an entitlement to relief", the defamation claims against Stewart must be dismissed. *Iqbal*, 556 U.S. at 679.

## VI. No plausible conspiracy is pleaded.

Plaintiffs' complaint contains no "count" for conspiracy but twice makes passing references to the existence of one. *Complaint* (Doc. 1), at 3, 8. Conclusory allegations of conspiracies, however, do not suffice. *See, e.g., Iqbal*, 556 U.S. at 679-680 (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Rather, a plaintiff "must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate" the plaintiff's rights. *Montgomery v. Walton*, 759 Fed. Appx. 312, 314 (5th Cir. 2019). Moreover, "a conspiracy claim is not actionable without an actual violation of section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).

Plaintiffs did not plead facts to plausibly show that any Wilson County defendant participated in a conspiracy. The failure to plead any plausible constitutional-violation claim also defeats any assertion of a conspiracy. For at least these reasons, any liability theories based on a conspiracy must be dismissed.

Qualified immunity applies here too. Qualified immunity can protect both the conduct constituting the constitutional violation, *Pfannstiel*, 918 F.2d at 1187-1188, and the conduct constituting the conspiracy. *Ziglar v. Abbasi*, 582 U.S. 120, 153-155 (2017). Here, the complaint does not adequately plead an underlying constitutional violation or a conspiracy – let alone that each individual defendant thereby violated a clearly established right. *See above*, at 8-9. The

complaint is therefore insufficient to overcome each individual defendant's qualified immunity and avoid dismissal of any conspiracy claim against that defendant.

## VII. An absolute immunity applies to some allegations.

Plaintiffs' allegations include complaints about statements to the Texas Workforce Commission, *see, e.g., Complaint* (Doc. 1), at 79, 87, 103, statements in documents filed in court proceedings, *see, e.g., id.* at 47, 68, 76, 79, 95-96, 106-107, 109, and statements to State Bar disciplinary authorities. *See, e.g., id.* at 48-49, 68, 73, 76, 79, 87-88, 95-96, 106-107, 109.

"Recognizing that Congress intended §1983 to be construed in the light of common-law principles, the [Supreme] Court has looked to the common law for guidance in determining the scope of the immunities available in a §1983 action." *Rehberg v. Paulk*, 566 U.S. 356, 362-363 (2012) (quot. omitted). One of those common-law immunities arises from the principle that "communications made during the course of judicial, quasi-judicial, or legislative proceedings are absolutely privileged." *Shanks v. AlliedSignal Inc.*, 169 F.3d 988, 992 (5th Cir. 1999) (quot. omitted). Quasi-judicial proceedings include those "where a statute confers upon the agency the power to conduct investigations and hearings." *Id.* at 993 (quot. omitted) (immunity applied to defamation claims based on statements in NTSB proceedings). This immunity also includes statements "made in a proceeding preliminary to a court proceeding" – such as statements to the EEOC or its state equivalents. *Wiggins v. Poynter Spruill LLP*, No. 24-20011, 2024 WL 4212894, *4 (5th Cir. Sept. 17, 2024) (quot. omitted) (immunity defeated defamation and fraud claims).

Absolute immunity applies to the complained-of statements to the Texas Workforce Commission, which were made in response to Olivarez's charge of discrimination. *See Exh. 1A*, at 4 (Doc. 14-1, at 7) (response); *Exh. 1B* (motion signed by Caldwell), at Exh. A (Doc. 14-1, at 16-18) (emails from and to TWC investigator) and Exh. B (Doc. 14-1, at 19-26) (Caldwell's

complaints to defense counsel and Sheriff Stewart); *see also Complaint* (Doc. 1), at 111 (referring to those complaints).[1] Absolute immunity likewise applies to any complained-of court documents, such as Dubs' use of McCrary's affidavit as an exhibit to a response. *See Complaint*, Exh. 11 (Doc. 1-2, at 104-157). And although no Wilson County defendants were involved in making the State Bar grievance, absolute immunity applies to that too. *See* TEX. GOVT. CODE §81.071 *et seq.* (process for reviewing and adjudicating grievances).

Absolute immunity renders implausible any claim based on those statements, and each such claim must be dismissed. Moreover, qualified immunity would apply – and require dismissal of any such claim against an individual defendant – if any doubt exists whether a plaintiff has a clearly established right not to be injured by statements during or preliminary to such proceedings.

## Conclusion and prayer for relief

Because no plausible claim is pleaded against any of the Wilson County defendants, each such defendant (the County, Stewart, Garza, and Dubs) asks the Court to order the dismissal, with prejudice, of the claims against that defendant. Each such defendant also asks for any other relief to which that defendant is entitled.

Respectfully submitted,

/s/ Brian Miller
Brian Miller, Attorney-in-Charge
State Bar No. 24002607

ROYSTON RAYZOR
VICKERY & WILLIAMS L.L.P.
802 N. Carancahua St., Suite 1300
Corpus Christi, TX 78401
Tel. No. (361) 884-8808

[1] "It is well-established that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Carter v. Target Corp.*, 541 Fed. Appx. 413, 416 (5th Cir. 2013) (quot. omitted).

Fax No. (361) 884-7261
Email for service: eservbmiller@roystonlaw.com

*Counsel for defendants Wilson County, Sheriff Jim Stewart, Clinton Garza, and Joseph Dubs*

## Certificate of Conference

This certifies that: (1) counsel the movants complied with the process in the *Standing Order in Civil Cases Assigned to Judge Orlando Garcia* (Doc. 2) by serving, by email on June 4, 2026, a notification letter on counsel for Plaintiffs; and (2) Plaintiffs neither amended their complaint nor filed an advisory of intent to do so.

/s/Brian Miller
Brian Miller

## Certificate of Service

I certify that this document was served on all counsel of record, shown below, using the CM/ECF system, on June 15, 2026.

Tom Caldwell
TOM CALDWELL LAW PLLC
1427 3rd St.
Floresville, TX 78114
*Pro se plaintiff and counsel for plaintiff Joshua Jayme Olivarez*

Emma Mersereau
Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
*Counsel for defendant Gregory Dickerman*

Michael Shaunessy
Adam Lowe
MICHAEL BEST & FRIEDRICH LLP
515 Congress Avenue, Suite 2500
Austin, TX 77001
*Counsel for defendants Comal County, Jennifer Tharp, Sammy McCrary, and Jessica Frazier*

Bill Helfand
Randy Lopez
LEWIS BRISBOIS BISGAARD & SMITH
24 Greenway Plaza, Suite 1400
Houston, TX 77046
*Counsel for defendant Audrey Louis*

/s/ Brian Miller
Brian Miller