**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THOMAS PAUL CALDWELL and JOSHUA JAYME OLIVAREZ,** *Plaintiff*, | § | |
| **v.** | § | |
| **AUDREY GOSSETT LOUIS, Individually; JENNIFER THARP, Individually and in her Official Capacity; JAMES STEWART, Individually; and in his Official Capacity as Sheriff of Wilson County, Texas; SAMMY MARK McCRARY, Individually; JESSICA FRAZIER, Individually; GREGORY DICKERMAN, Individually; CLINTON GARZA, Individually; JOSEPH DUBS, Individually; COMAL COUNTY, TEXAS; and WILSON COUNTY, TEXAS,** *Defendants*. | § | **Case No. 5:26-CV-02527-OLG** |

**DEFENDANTS JENNIFER THARP, SAMMY MARK MCCRARY, JESSICA FRAZIER, AND COMAL COUNTY'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

NOW COMES Defendants Jennifer Tharp ("Tharp"), Sammy Mark McCrary ("McCrary"), Jessica Frazer ("Frazier") (Tharp, McCrary, and Frazier collectively "Individual Defendants") and Comal County (Individual Defendants and Comal County collectively, "Comal County Defendants") and file this Motion to Dismiss the claims Plaintiffs Thomas Paul Caldwell ("Caldwell") and Joshua Jayme Olivarez ("Olivarez") (collectively "Plaintiffs") have brought against them in their Original Complaint (Dkt. No. 1) and, in support thereof, would show the Court the following:

## I.
## ALLEGATIONS OF THE COMPLAINT

1. Plaintiffs' Complaint implies a statewide conspiracy by county officials, prosecutors, and law enforcement personnel to investigate, accuse, and publicly characterize Plaintiffs as having engaged in criminal conduct without initiating a formal prosecution or obtaining an indictment. Dkt. No. 1 at ¶¶1-12.

2. "Caldwell served as the elected County Attorney of Wilson County, Texas through December 31, 2024." *Id.* at ¶14. "Olivarez was employed as an investigator in the Wilson County Attorney's Office through December 31, 2024." *Id.* at ¶17. Olivarez then "accepted employment with the Bee County Sheriff's Office where he was employed from January 1, 2025 until January 17, 2025." *Id.* [1]

3. Tharp is a licensed attorney in Texas, and is the Criminal District Attorney of Comal County, Texas." *Id.* at ¶19. Defendants Frazier and McCrary are attorneys licensed in Texas and employed by the Comal County Criminal District Attorney's Office. *Id.* at ¶20-21, 27.

4. Olivarez reported subjective concerns regarding law enforcement integrity, evidentiary irregularities, and potential public corruption. *Id.* at ¶270. Plaintiffs allege that, after these disclosures, various defendants became aware of their activities and participated in a coordinated effort to redirect investigative attention toward Plaintiffs themselves. *Id.* at ¶277.

5. Defendants allegedly initiated or shaped investigations, disseminated information suggesting that Plaintiffs were the subject of criminal charges, and created materials portraying Plaintiffs as having committed criminal offenses. *Id.* Plaintiffs allege that materials were circulated

[1] Allegations regarding Olivarez's "forced resignation" prove that Comal County Defendants' actions could not have proximately caused that injury as McCrary's Affidavit, which is the basis of the claim against Comal County Defendants, was completed six months after Olivarez's "forced resignation" from the Bee County Sheriff's Office. *See* Dkt. 1-2, p. 94.

outside of any judicial proceeding to third parties, including other governmental bodies and potential employers and later republished through civil litigation filings and State Bar grievance proceedings. *Id.*

6. The Complaint further alleges that no criminal prosecution was ever initiated: no indictment was returned, no information was filed, and no arrest warrant was sought or issued against either Plaintiff. Plaintiffs contend that Defendants' actions resulted in various alleged consequences, including reputational harm, Olivarez's loss of employment, and exposure to professional discipline. *Id.*

7. Plaintiffs also assert related state-law claims arising from the alleged dissemination of false and stigmatizing information. *Id.*

## II.
## LEGAL STANDARD

8. Federal Rule of Civil Procedure 12(b)(6), mandates dismissal when a complaint fails "to state a claim upon which relief can be granted[.]" To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter," which when "accepted as true," states '"a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain facts allowing the Court to reasonably infer that the defendant is liable for the alleged misconduct to be facially plausible. *Id.*

9. The court accepts all well-pled facts as true and construes the complaint in the light most favorable to the plaintiff, however, "a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do.' *Crosswell v. Rodriguez*, 120 F.4th 177, 183 (5th Cir. 2024). A complaint that "pleads facts that are merely

consistent with a defendant's liability" or consists of "naked assertions devoid of further factual enhancement" falls short of the plausibility standard. *Iqbal*, 556 U.S. at 678.

## III.
## ARGUMENT

### A. Defendants Are Absolutely Immune from Claims for Damages from Court Filings and Professional Misconduct Complaints

10. First, the Individual Defendants are absolutely immune from any claims related to Plaintiffs' allegations of statements Defendants filed in court documents (*see, e.g.,* Dkt. no. 1 at ¶¶174, 277, 309, 313, 332, 413, 427, 476, 487, 495) or Defendants' conduct in initiating or pursuing criminal prosecutions of Plaintiffs. Prosecutors are "absolutely immune from liability for damages under § 1983" for "actions taken . . . in their role as advocates in the judicial process." *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016). "A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as 'advocate for the state' in the courts, or when her conduct is 'intimately associated with the judicial phase of the criminal process.'" *Id.* at 539. Prosecutors are entitled to "qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quotation omitted). Absolute immunity applies even when a prosecutor acts "maliciously, wantonly or negligently." *Id.*[2] The Individual Defendants are all prosecutors. Plaintiffs' claims against the Individual Defendants' filing of documents in court proceedings or for the initiation or pursuit of criminal prosecutions of Plaintiffs, are barred by absolute prosecutorial immunity.

[2] Indeed, under Texas law, all attorneys, whether prosecutors or otherwise, enjoy absolute immunity for actions make in the course of a judicial proceeding. *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 301-02 (2002 Tex. App. LEXIS 5549).

11. The Complaint also alleges Comal County Defendants made statements to State Bar disciplinary authorities (*see, e.g., id.* at ¶¶179, 184, 277, 297, 313, 332, 371, 379, 413, 427, 476, 487, 495). In Texas, "professional misconduct complainants are entitled to absolute, unqualified immunity." *Moreno v. Novoa*, 676 S.W.3d 748, 751 (Tex. App. 2023) (citing Tex. Gov't Code Ann. § 81.072(g)). Thus, absolute immunity bars all of Plaintiffs' claims related to Defendants' referral of Plaintiffs' conduct to the Texas State Bar.

**B. Plaintiffs Fail to Plead a Plausible First Amendment Retaliation Claim**

12. Count I asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against all Defendants. Dkt. No. 1 at ¶¶267-300. "To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023). Plaintiff has failed to adequately plead this claim.

*a. Plaintiffs Fail to Sufficiently Identify Protected Speech*

13. To allege a First Amendment retaliation claim, a plaintiff must "specify the protected speech he claims to have engaged in." *Udeigwe v. Tex. Tech Univ.*, 733 Fed. Appx. 788, 793 (5th Cir. 2018). The Complaint fails to specify any particular protected activity in connection with this claim. The closest the Complaint comes is the allegations that (1) "Caldwell's protected activity included reporting misconduct within a law enforcement agency, communicating those concerns to government officials, documenting evidentiary irregularities, seeking state and federal intervention, and running for public office," and (2) Plaintiff Olivarez's protected activity included participating in the investigation of law enforcement misconduct, requesting and evaluating

evidence, assisting in exposing false or misleading records, and maintaining professional association with Caldwell." Dkt. No. 1 at ¶¶269-70. But a government worker's speech occurring "pursuant to the worker's official duties" lacks First Amendment protection. *Williams v. Dallas ISD*, 480 F.3d 689, 692 (5th Cir. 2007). Thus, these allegations fail to provide requisite "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*b. Plaintiffs Fail to Allege a Cognizable Injury*

14. To adequately plead an injury in connection with a First Amendment retaliation claim, a plaintiff must demonstrate that the plaintiff "'suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in' his speech or that his speech was curtailed." *Reitz*, 85 F.4th at 789. Plaintiffs allege that unspecified Defendants improperly investigated Caldwell, "caus[ed] the creation and publication of accusatory materials outside the judicial process" and "republish[ed] those materials through civil litigation and a state bar grievance." Dkt. No. 1 at ¶277. As to Olivarez, Plaintiffs allege Defendants "[d]isseminat[ed] false information that he was the subject of a pending criminal indictment," "[c]aus[ed] Bee County to rely on that false information," and "[f]orc[ed] his resignation and impair[ed] his ability to continue in law enforcement." *Id.* at ¶278. [3]

15. *Colson v. Grohman* establishes that these allegations are legally insufficient to plead a cognizable injury under the First Amendment. The *Colson* plaintiffs complained of "baseless accusations" that resulted in her "being investigated by the District Attorney's Office and a grand

[3] As to Olivarez, Plaintiffs allege Defendants "[d]isseminat[ed] false information that he was the subject of a pending criminal indictment," "[c]aus[ed] Bee County to rely on that false information," and "[f]orc[ed] his resignation and impair[ed] his ability to continue in law enforcement." *Id.* at ¶278. The Complaint establishes that the Comal County Defendants cannot be responsible for this injury as the McCary affidavit was not written until after Olivarez's "forced resignation" from Bee County. *See* Dkt. 1-2, p. 94.

jury for possible criminal violations" and that were published at the city library "in a public document designed to discredit her with her constituents." *Colson v. Grohman*, 174 F.3d 498, 502-06 (5th Cir. 1999). The Fifth Circuit held "criticism, an investigation (or an attempt to start one), and false accusations" are "all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson*, 174 F.3d at 512 (5th Cir. 1999).[4]

*c. Plaintiffs Fail to Plead Actionable Conduct of Any Particular Defendant*

16. Even if Plaintiffs had adequately alleged protected activity and a cognizable injury, this claim still fails because Plaintiffs fail to allege actionable conduct by any particular defendant. The Complaint broadly relies on "group pleading" and purports to fault defendants "as a group without factual material" specific to each defendant's conduct and state of mind. *Armstrong v. Ashley*, 60 F.4th 262, 274-275 (5th Cir. 2023). This is improper. Pleadings generally referring to a group of defendants is not "imputable to any particular individual defendant" and, thus, will not support a claim against any defendant. *Id.* (quot. omitted).

17. Plaintiffs fail to tie any particular conduct to any particular defendant relating to their First Amendment retaliation claim. For example, Plaintiffs claim that "Defendants took adverse actions" including "[s]teering investigative focus away from reported misconduct and toward Caldwell," and "[d]isseminating false information that [Olivarez] was the subject of a pending criminal indictment." Dkt. No. 1 at ¶¶267-78. The Complaint fails to plead facts to establish the necessary causal link between each of the Comal County Defendants' conduct and

[4] Similarly, in *Slegelmilch v. Pearl River County Hosp. and Nursing Home*, the Fifth Circuit reached the same conclusion in connection with a plaintiff therapist's claimed injury from allegedly false accusations that resulted in a licensing-board investigation. *Slegelmilch v. Pearl River County Hosp. and Nursing Home*, 655 Fed. Appx. 235, 239-240 (5th Cir. 2016). And, in *Reitz*, the Fifth Circuit held that a plaintiff failed to allege an injury under the First Amendment through allegations that two police officers made "threatening" and "scary" accusations to the plaintiff, including that one officer would file a case with local prosecutors. *Reitz*, 85 F.4th at 786, 789-790.

any First Amendment injury. For this reason, Plaintiffs' First Amendment claims against each of the Comal County Defendants must be dismissed.

18. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quot. omitted). Because the complaint here fails to state a sufficient First Amendment injury – and causally attribute that injury to the conduct of each Comal County Defendant – the retaliation claims are not plausible and must be dismissed. *Id.*

*d. The Complaint Fails to Allege Sufficient Facts Regarding Unlawful Retaliation*

19. The Complaint lacks factual allegations showing unlawful retaliation. Plaintiffs' alleged injuries arise from complaints about their conduct, a resulting criminal investigation, and the aftermath of that investigation. Dkt. No. 1 at ¶¶277-78. The Complaint acknowledges that McCrary prepared a 32-page non-prosecution affidavit ("McCrary Affidavit") recommending against prosecution. The McCrary Affidavit provided as follows:

- On June 6, 2023, Olivarez met with Dubs and Stewart about a warrant for Alena Berlanga's arrest. The three agreed that Dubs would contact Berlanga, ask her to turn herself in, and have a magistrate ready so that Berlanga need not undergo the normal booking process. Dkt. No. 1-2 at 66-67.

- On June 9, 2023, Dubs sent Olivarez an email reporting that Berlanga "turned herself in" at a justice of the peace's office "and that the only contact with LE [law enforcement] was being fingerprinted." *Id.* at 68.

- Shortly after that email, Caldwell opened an investigation into Dubs, demanded Sheriff Stewart's cooperation, and eventually said, "We will have an arrest warrant issued NLT [no later than] Tomorrow afternoon." *Id.* at 68-74.

- Dwayne Mercer (another of Caldwell's investigators) swore a probable-cause affidavit that complained of Dubs making a false statement to a peace officer (Olivarez) in the June 9 email. Mercer said that the statement about the "only contact with LE [law enforcement]" was false because Dubs had contacted Berlanga to turn herself in. *Id.* at 74-75.

- A justice of the peace issued a warrant for Dubs' arrest, and arrangements were made for Dubs to turn himself in. Olivarez executed the warrant at the sheriff's office. *Id.* at 75-77.

20. As the Complaint acknowledges, McCrary concluded that the facts did not support probable cause for the offense of false statement to a peace officer. Among other problems, Plaintiffs' Complaint admits McCrary did not find sufficient evidence of a false statement (because the email was about what occurred at the justice of the peace's office) and that Dubs intended to deceive Olivarez (who agreed that Dubs would ask Berlanga to turn herself in); moreover, he found that the statement was immaterial (because nothing about Berlanga's arrest was relevant to proving the criminal charge against her). *Id.* at 77-79.

21. McCrary instead found sufficient evidence that Olivarez, Mercer, and Caldwell committed official oppression by causing Dubs' arrest in the clear absence of probable cause. *Id.* at 79-87. McCrary also concluded that Caldwell violated attorney-ethics rules by pursuing that arrest. *Id.* at 91-92. McCrary nonetheless recommended against criminal prosecution. Among other conclusions, McCrary concluded the public interest was better served by "ensuring that all of the documents concerning Caldwell's conduct are preserved" rather than risking an expunction of those materials if Caldwell were to avoid conviction. *Id.* at 93-94.[5]

22. Caldwell and Olivarez have not disputed the truth of the facts underlying the McCrary Affidavit and conclusions within it. That raises multiple problems for the retaliation claims. First, the pleaded facts do not show that any Comal County Defendant's actions "were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Reitz*, 85 F.4th at 789. To avoid dismissal, the pleaded facts must allow a "reasonable inference"

[5] Plaintiffs attached the McCrary Affidavit to the Complaint; thus, the Court can consider it in ruling on the Motion to Dismiss. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, the "exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

of wrongdoing and not just "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-679. When "more likely explanations" of the defendants' conduct are inconsistent with liability, the pleaded facts do not "plausibly establish" a claim. *Iqbal*, at 681 (dismissing discrimination claim for this reason). Here, the "more likely explanation" is that the motivation for various defendants' complaints, the investigation, and the McCrary Affidavit was the arrest of Dubs which is not protected First Amendment conduct of either Plaintiff. On the facts pleaded, unlawful retaliation "is not a plausible conclusion." *Iqbal* at 682.

23. Second, the First Amendment "cannot be used as a weapon to silence" others' speech. *Houston Comm. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022). Public officials and employees are subject to criticism of their character and their governmental acts and "by necessity must accept certain limitations on [their] freedom." *Garcetti*, 547 U.S. at 418; *see also, e.g., Wilson*, 595 U.S. at 478.

24. Plaintiffs complain of retaliation for their official acts, such as investigating other county agencies and officials (including the sheriff's office) and arresting Dubs. That conduct, however, does not carry First Amendment protection. The First Amendment does not insulate Plaintiffs from criticism of their conduct or from the reporting and investigating of potential criminal violations. Thus, Comal County Defendants' conduct does not "qualify as a materially adverse action" that could support a First Amendment retaliation claim. *Wilson*, 595 U.S. at 479.[6]

*e. Qualified Immunity Bars This Claim as to the Individual Defendants*

25. To state a federal law claim against a government officer in the officer's individual capacity, a plaintiff must also overcome the officer's qualified immunity. *See, e.g., Iqbal*, 556 U.S.

[6] For the additional reasons discussed above, Plaintiffs have not pleaded "sufficient factual matter, accepted as true, to state a [First Amendment retaliation claim] that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quot. omitted). The First Amendment retaliation claims must be dismissed.

at 671-672. Qualified immunity shields government officials, in their individual capacities, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights," and this immunity is "both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Id.* at 672.

26. Qualified immunity protects an official from suit where the complaint fails to adequately allege a statutory or constitutional violation. *Iqbal*, 556 U.S. at 672-673. Here, qualified immunity protects the Individual Defendants because the Complaint's factual allegations are insufficient to state a First Amendment retaliation claim.

27. Qualified immunity also protects a government official where the allegedly violated right was not "'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014). To overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Here, the Complaint's allegations do not, under then-existing precedent, clearly establish any allegedly violated right. For that reason, the Complaint lacks sufficient facts to overcome the Individual Defendants' qualified immunity from suit on any First Amendment retaliation claim.

**C. Plaintiffs Fail to Plausibly Plead a Fourth Amendment Claim**

28. Count II alleges a fourth amendment violation claim under 42 U.S.C. § 1983 against all Defendants. Dkt. No. 1 at ¶¶301-54. This claim fails for several reasons.

*a. Plaintiffs Fail to Identify a Cognizable Fourth Amendment Injury*

29. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. Am. 4. For example, a Fourth Amendment malicious-prosecution claim requires "that the malicious prosecution resulted in a seizure of the plaintiff." *Thompson v. Clark*, 596 U.S. 36, 43 n. 2 (2022); *see also Armstrong*, at 278 (quoting this statement).

30. Here, the Complaint identifies no injury that the Fourth Amendment protects against. Setting that aside, the complaint lacks factual allegations showing any sufficient causal link between any Comal County Defendant and any purported injury. Thus, Plaintiffs' Fourth Amendment claims are not plausible, and the Court must dismiss them. *Iqbal*, 556 U.S. at 678 (only a "plausible claim" survives dismissal).

*b. Plaintiffs Fail to Show Other Necessary Elements of Fourth Amendment Claim*

31. A Fourth Amendment malicious-prosecution claim requires "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong*, 60 F.4th at 279 (quot. omitted).

32. The Complaint identifies no "criminal proceeding" against either Plaintiff. *Id.* Rather, the Complaint concedes no such criminal proceeding occurred. Dkt. No. 1 at ¶¶163-164 (admitting McCrary's decision not to prosecute). Even assuming such a proceeding occurred for the sake of argument, probable cause would have supported that proceeding. "For purposes of malicious prosecution, probable cause means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the [defendant], that the person charged was guilty of the crime for which he was prosecuted." *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002). The belief need not be "more likely true than false." *Id.* at 729. "A 'fair probability' that the suspect has committed a crime is enough to establish probable cause." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024). For malicious prosecution, "probable cause to institute criminal proceedings must be determined as of the time that charges were filed." *Gordy*, at 729.

33. Under Texas law, a "public servant acting under color of his office or employment commits an offense if he … intentionally subjects another … to arrest … that he knows is unlawful." Tex. Pen. Code § 39.03(a). The underlying facts in the McCrary Affidavit – facts that Plaintiffs do not dispute – establish probable cause that would have supported charging Caldwell and Olivarez with official oppression. *See above*, at 4-6 (summarizing key facts). These facts demonstrate Caldwell and Olivarez applied an unreasonable interpretation to Dubs' June 9 email, failed to account for Olivarez's agreement that Dubs would ask Berlanga to turn herself in, and caused Dubs' arrest nonetheless. *See id.* One could reasonably conclude that, acting under color of public office, Caldwell and Olivarez intentionally subjected Dubs to an unlawful arrest.

34. Plaintiffs' Complaint does not address the "malice" element. Dkt. No. 1 at ¶¶301-54. A complaint cannot "survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 589 U.S. 327, 340-341 (2020). On the facts that are alleged, legitimate concerns about Dubs' arrest provide "more likely explanations" for Defendants' conduct – such that improper malice "is not a plausible conclusion." *Iqbal*, 556 U.S. at 681-682.

35. Plaintiffs' attempt to recharacterize the claim as one for "fabrication of evidence" does not save the claim. Dkt. No. 1 at 74. Plaintiffs do not identify any allegedly false evidence or how any such evidence was material to those who considered it. Again, the evidence discussed in the McCrary Affidavit is accepted as true and Plaintiffs offer no meaningful challenge to McCrary's application of law to the facts. They provide no authority showing that their "fabrication of evidence" claim has different elements than a malicious-prosecution claim. Nor do they provide any reason to believe that a fabrication-of-evidence claim can proceed when: (1) there was no

criminal prosecution; (2) they admit probable cause existed to support criminal charges; and/or (3) there are no allegations of improper malice.

36. The Complaint not only fails to allege facts showing a Fourth Amendment injury, it also fails to allege facts to support the other necessary elements of any Fourth Amendment claim. The Complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable" on any Fourth Amendment claims. *Iqbal*, 556 U.S. at 678. This requires dismissal, on the pleadings, of those claims. *Id.*

*c. Qualified Immunity Bars This Claim as to the Individual Defendants*

37. As noted above, qualified immunity protects an individual defendant if either: (1) a constitutional-violation claim is inadequately pleaded; or (2) the allegedly violated right was not clearly established at the time of the challenged conduct. Again, Plaintiffs have alleged neither facts that are sufficient to support a Fourth Amendment claim against each Individual Defendant nor facts that, under existing precedent, clearly establish the allegedly violated right. Thus, qualified immunity protects each Individual Defendant from suit on – and requires dismissal of – Plaintiffs' Fourth Amendment claims.

**D. Plaintiffs Fail to Plausibly Allege a Fourteenth Amendment Claim**

38. Counts III and IV assert fourteenth amendment violation claims under 42 U.S.C. § 1983 against all Defendants. Dkt. No. 1 at ¶¶355-443. Plaintiffs specifically allege claims for "stigma-plus/reputational deprivation" and deprivation of "liberty and property interests." *Id.*

*a. Plaintiffs Fail to Allege an Actionable Fourteenth Amendment Injury*

39. The Fourteenth Amendment does not provide a "right to be free of injury wherever the State may be characterized as the tortfeasor." *Paul v. Davis*, 424 U.S. 693, 701 (1976). The amendment protects against deprivations "of life, liberty, or property, without due process of law."

U.S. CONST. Art. 14, §1. An "interest in reputation alone" is not a "liberty" or "property" interest within that protection. *Paul*, 424 U.S. at 711-12. Thus, the United States Supreme Court concluded that a plaintiff failed to show a Fourteenth Amendment violation through a police department's inclusion of the plaintiff in a flyer identifying shoplifting suspects—even if Plaintiff's inclusion in the flyer would cause him fear when entering businesses and "would seriously impair his future employment opportunities." *Id.* at 694-97.

40. Plaintiffs' Complaint identifies no recognized liberty or property interest. Being subject to criminal accusations is not enough. *Id.* at 694-696. Nor is any other harm that "merely flowed from damage to [the plaintiff's] reputation." *Davis v. City of Aransas Pass*, 605 Fed. Appx. 429, 430 (5th Cir. 2015).

41. Even if Plaintiff somehow identified a Fourteenth Amendment injury, the Complaint lacks facts showing how any Comal County Defendant caused such injury. This constitutes an adequate and independent basis for dismissal. *See above*, at 3-4.

42. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Because Plaintiffs did not plead facts showing injury to a protected liberty or property interest – or causally attribute that injury to each Comal County Defendant's conduct – their Fourteenth Amendment claims are not plausible and must be dismissed.

*b. The Complaint Lacks Facts Showing Any Improper Deprivation of Any Protected Interest*

43. To state a due process claim, a plaintiff must show an improper deprivation of a liberty or property interest. For example, if an employee claims deprivation of a liberty interest through publication of the reasons for termination, the reasons must create a "*false and defamatory* impression about him and thus stigmatizes him and forecloses him from other employment

opportunities." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (emph. added). That requires that "the charges were made public." *Id.* A deprivation of a property interest requires a "claim of entitlement" to retain the interest. *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

44. The Complaint here fails to state facts that, if true, establish any deprivation was improper. The Complaint is rife with "conclusory allegations, unwarranted factual inferences, [and] legal conclusions," however, a court cannot accept such matters as true when deciding a motion to dismiss. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). Indeed, the Complaint attaches the McCrary Affidavit without disputing its underlying facts. The facts set forth in that document demonstrate a legitimate basis for the criticism and investigation of Plaintiffs' conduct.

45. Additionally, a due-process claim is concerned with *process*, and the Complaint lacks allegations as to (1) what process was due, (2) Plaintiffs' insistence on that process, and (3) the denial of that process. For example, when a government employee claims liberty-interest infringement from his or her discharge, "the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name." *Bledsoe*, 449 F.3d at 653. Likewise, a discharged employee claiming property-interest infringement must "request an available hearing." *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989).

46. Plaintiffs cannot allege a due process claim without pleading facts showing the improper deprivation of a protected interest, the process that was due, and the denial of that process. Because "only a complaint that states a plausible claim for relief survives a motion to dismiss," these omissions require dismissal of any such claim. *Iqbal*, 556 U.S. at 679.

*c. Qualified Immunity Bars This Claim Against the Individual Defendants*

47. Again, qualified immunity protects the individual defendants if either: (1) a constitutional-violation claim is inadequately pleaded; or (2) the allegedly violated right was not

clearly established at the time of the challenged conduct. Both conditions exist here. Plaintiffs fail to allege facts sufficient to support a Fourteenth Amendment claim against any Individual Defendant or facts that, in combination with then-existing precedent, clearly establish the allegedly violated right. Thus, each Individual Defendant's qualified-immunity mandates dismissal of all Fourteenth Amendment claims.

**E. Plaintiffs Fail to Plausibly Allege a *Monell* Claim**

48. Count V alleges a *Monell* claim against Comal County under 42 U.S.C. § 1983. Dkt. No. 1 at ¶¶444-92. The framework in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) controls local-government liability under 42 U.S.C. §1983. Bringing a *Monell* claim requires alleging "facts that plausibly establish: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020). Plaintiffs' *Monell* claim fails for a threshold reason; it fails to allege an underlying constitutional violation. See *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020). Because Plaintiffs have not plausibly pleaded any constitutional violation, any *Monell* claim necessarily fails. *See id.* (affirming dismissal on pleadings).

49. Even if Plaintiffs had pleaded such a violation, the claim still fails because the Complaint does not allege the existence of an official policy. There are "three routes to establishing an 'official policy' for the purposes of municipal liability," *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026), none of which the Complaint satisfies.

50. "First [is] a policy statement formally announced by an official policymaker." *Id.*. The Complaint identifies no such policy statement. "Second [is] a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents

municipal policy." *Id.* As in *Ratliff*, though, the Complaint here fails to show such a widespread practice "because the only facts that [Plaintiffs] alleged with any specificity relate to his" own alleged injuries. *Ratliff*, 948 F.3d at 285 (quot. omitted); *compare Complaint* (Doc. 1), at 101-102. "[T]hird [is] a single unconstitutional act by a final policymaker." *Cambric*, 170 F.4th at 325. The Complaint identifies no such act.

51. Even if Plaintiffs had sufficiently alleged an official policy (they did not), the Complaint fails to allege how any policy was the "moving force" behind any constitutional violation. *Ratliff*, 948 F.3d at 285. Without such allegations of the practice being the moving force behind the alleged injury, the court cannot draw the reasonable inference that [Comal County] is liable, and the *Monell* claim must be dismissed. *See Iqbal*, 556 U.S. at 678.

**F. Plaintiffs Fail to Plausibly Allege a Defamation Claim**

52. Count VI asserts a Texas state law defamation claim against Individual Defendants. Dkt. No. 1 at ¶¶493-505.

*a. The Texas Tort Claims Act Bars This Claim*

53. The Texas Tort Claims Act immunizes governmental employees from suit on tort claims that are "(1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the Tort Claims Act." *Laverie v. Weatherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (discussing Tex. Civ. Prac. & Rem. Code §101.106(f)); *see also Franka v. Velasquez*, 332 S.W.3d 367, 371 n. 9 (Tex. 2011).

54. Plaintiffs' defamation claims fall within the first condition. Those claims are based on the same statements as the constitutional violation claims. *See* Dkt. No. 1 at 66-99 (constitutional claims), 108-111 (defamation). These claims seek relief from individual defendants acting "under color of state law" as government officials. *Id.* at 7, 59-60; *see also, e.g., id.* at 79,

85, 91, 93. Likewise, the defamation claims are based on the same defendants' conduct in their governmental employment. *Id.* at 108-111; *compare Donohue v. Butts*, 516 S.W.3d 578, 582 (Tex. App. – San Antonio 2017, no pet.) (dismissal on pleadings because § 101.106(f) immunity barred defamation claims against sheriff and deputies).

55. Any tort claim satisfies the second condition. Texas precedents "firmly establish the rule that any tort claim against the government is brought 'under' the Act for purposes of section 101.106, even if the Act does not waive immunity." *Franka*, 332 S.W.3d at 375. The section's effect is to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Id.* at 381.

56. Because Section 101.106(f) immunity applies, the defamation claim against the Individual Defendants does not "state a claim to relief that is plausible on its face" and must be dismissed. *Iqbal*, 556 U.S. at 678 (quot. omitted); *see also, e.g., Laverie*, 517 S.W.3d at 756 (dismissing defamation claim).

*b. Plaintiffs Fail to Allege Actionable Statements*

57. Even setting statutory immunity aside, the defamation claim still fails. An opinion or publication that provides a true or substantially true statement of the underlying facts cannot give rise to a defamation claim. *See, e.g., Favre v. Sharpe*, 117 F.4th 342, 347 (5th Cir. 2024) (affirming dismissal on pleadings); *Tex. Beef Group v. Winfrey*, 201 F.3d 680, 688 (5th Cir. 2000) (affirming judgment as a matter of law). To determine whether an allegedly defamatory publication is substantially true, a court considers "whether it is more damaging to the plaintiff's reputation in the mind of the average person than a truthful statement would have been." *Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App. – Houston [1st Dist.] 2009, pet. denied) (citing *McIlvain v. Jacobs*, 794 S.W. 2d 14, 16 (Tex. 1990) and other authorities). Under those principles, Plaintiffs cannot state

plausible defamation claims by disputing opinions drawn from underlying facts without disputing the substantial truth of those facts.

58. Again, Plaintiffs do not dispute the accuracy of the underlying facts in the McCrary Affidavit, *see above*, at 4-6. Plaintiffs only complain about the conclusions that McCrary and other defendants drew from those facts. Moreover, a defamation claim cannot survive by disputing immaterial details; rather, the claimed error must have rendered the publication "more damaging" than an entirely accurate statement. *Vice*, 318 S.W.3d at 18. Nothing in the Complaint alleges this occurred. Because the pleaded facts do not "plausibly give rise to an entitlement to relief," the defamation claims against Tharp and McCrary must be dismissed. *Iqbal*, 556 U.S. at 679.

**G. Plaintiffs Fail to Plausibly Allege a Conspiracy**

59. Plaintiffs do not expressly assert a claim for conspiracy but make passing references to the existence of one. Dkt. No. 1 at ¶¶11, 35. Conclusory allegations of conspiracies are insufficient. *See, e.g., Iqbal*, 556 U.S. at 679-80. Rather, a plaintiff "must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate" the plaintiff's rights. *Montgomery v. Walton*, 759 Fed. Appx. 312, 314 (5th Cir. 2019).[7]

60. Plaintiffs did not plead facts plausibly showing that any Comal County Defendant participated in a conspiracy. Indeed, the Complaint negates Comal County Defendants engaging in a conspiracy because the conclusions reached by McCrary are different than those reached by Dickerman. If Comal County Defendants had engaged in a conspiracy, then, by necessity, their conclusions would be aligned with the other defendants, including Dickerman.

[7] Moreover, "a conspiracy claim is not actionable without an actual violation of section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).

61. Once again, the Individual Defendants' qualified immunity bars the claim because it can protect both the conduct constituting the constitutional violation, *Pfannstiel*, 918 F.2d at 1187-1188, and the conduct constituting the conspiracy. *Ziglar v. Abbasi*, 582 U.S. 120, 153-155 (2017). Here, the Complaint does not adequately plead an underlying constitutional violation or a conspiracy – let alone that each Individual Defendant thereby violated a clearly established right. The Complaint is, therefore, insufficient to overcome each Individual Defendant's qualified immunity and avoid dismissal of any conspiracy claim against that defendant.

## IV.
## CONCLUSION

The Comal County Defendants move the Court to order the dismissal, with prejudice, of the claims against those defendants.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**
515 Congress Avenue, Suite 2500
Austin, Texas 78701
512.320.0601 (telephone)
512.640.3170 (telecopier)
michael.shaunessy@michaelbest.com
eric.johnston@michaelbest.com
julie.denny@michaelbest.com

By: */s/ Michael Shaunessy*
MICHAEL SHAUNESSY
State Bar No. 18134550
ERIC A. JOHNSTON
State Bar No. 24070009

***Attorneys for the Defendants Jennifer Tharp, Sammy May McCrary, Jessica Frazier and Comal County***

## CERTIFICATE OF CONFERENCE

This certifies that: (1) undersigned counsel complied with the process in the Standing Order in Civil Cases Assigned to Judge Orlando Garcia (ECF No. 2) by serving, by email on June 4, 2026, a notification letter on counsel for Plaintiffs; and (2) Plaintiffs neither amended their complaint nor filed an advisory of intent to do so.

/s/ *Michael Shaunessy*
MICHAEL SHAUNESSY

## CERTIFICATE OF SERVICE

I hereby certify that, on the 29th day of June, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and, further, that I provided service of such filing on the following party by certified mail, return receipt requested:

Tom Caldwell
TOM CALDWELL LAW PLLC
1427 Third Street
Floresville, Texas 78114
tomcaldlaw@gmail.com
***Attorneys for Plaintiffs Thomas Paul Caldwell and Joshua Jayme Olivarez***

Brian Miller
ROYSTON RAYZOR VICKERY & WILLIAMS L.L.P.
802 North Carancahua Street, Suite 1300
Corpus Christi, Texas 78401
eservbmiller@roystonlaw.com
***Attorneys for Defendants Wilson County, Sheriff Jim Stewart, Clinton Garza, and Joseph Dubs***

Emma Margaret Mersereau
ASSISTANT ATTORNEY GENERAL
LAW ENFORCEMENT DEFENSE DIVISION
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
emma.mersereau@oag.texas.gov
***Attorneys for Defendant Gregory Dickerman***

Bill Helfand
Randy Lopez
LEWIS BRISBOIS BISGAARD & SMITH
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
bill.helfand@lewisbrisbois.com
randy.lopez@lewisbrisbois.com
***Counsel for Defendant Audrey Gossett Louis***

/s/ *Michael Shaunessy*
MICHAEL SHAUNESSY