IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THOMAS PAUL CALDWELL, JOSHUA JAYME OLIVAREZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:26-cv-02527-OLG |
| | § | |
| AUDREY GOSSETT LOUIS, ET AL. | § | |
| Defendants. | § | JURY |
| | § | |

**DEFENDANT, DISTRICT ATTORNEY AUDREY GOSSETT LOUIS' MOTION TO DISMISS**

Because Plaintiff fails to allege facts which state a claim against Defendant, District Attorney Audrey Gossett Louis, including failing to overcome District Attorney Louis' immunity from suit, she moves the Court to dismiss all claims asserted against her in Plaintiff's original complaint [ECF. 1] under FED. R. CIV. P. 12(b)(6) and would show as follows:

COMPLIANCE WITH THE COURT'S PROCEDURES

On June 4, 2026, Defendants, including D.A. Louis, sent a joint letter to Plaintiff's counsel in compliance with the Court's administrative procedure I(A) and Western District local rule CV-7 (G), informing Plaintiff of the pleading deficiencies in Plaintiff's complaint which fail to state a claim against any Defendant. Defendants further informed Plaintiff of his right to correct those deficiencies in an amended complaint within the deadlines specified in this Court's procedure I(A), before all Defendants intended to file a motion to dismiss on the bases outlined in the letter. Because Plaintiff did not amend his pleading, this motion is both ripe and appropriate.

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

SUMMARY OF THE ARGUMENT ..... 1

PLAINTIFF'S PLEADING ALLEGATIONS ..... 2

PLEADING STANDARD ..... 10

ARGUMENT & AUTHORITIES ..... 10

I. Plaintiffs fail to plead facts which state a claim under the First Amendment for an alleged "retaliatory investigation" based on a citizen's allegation to the district attorney's office that Mr. Caldwell & Olivarez abused their official position to unlawfully arrest an innocent person. ..... 10

II. Plaintiff fails to allege facts which show a Fourth Amendment claim. ..... 13

- A. Plaintiffs fail to allege facts which show District Attorney Louis personally took actions against Plaintiffs which constitute an unlawful search or seizure required for this claim. None. ..... 13
- B. Plaintiffs fail to allege facts which show a claim of malicious prosecution. ..... 14

III. Plaintiffs fail to allege facts to state a claim under the Fourteenth Amendment ..... 15

- A. Plaintiffs do not allege facts which show a Fourteenth Amendment "stigma plus" claim ..... 15
- B. Plaintiffs fail to show facts which show a Fourteenth Amendment Due Process violation. ..... 17

IV. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis' immunity ..... 18

- A. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis' absolute immunity. ..... 18
- B. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis' qualified immunity. ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Ashley*,
60 F.4th 262 (5th Cir. 2023) ....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Babb v. Dorman*,
33 F.3d 472 (5th Cir. 1994) ....................19

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) ....................19

*Brower v. Inyo County*,
489 U.S. 593 (1989)....................14

*California v. Hodari D.*,
499 U.S. 621 (1991)....................14

*Codd v. Velger*,
429 U.S. 624 (1977)....................16

*Colson v. Grohman*,
174 F.3d 498 (5th Cir. 1999) ....................10, 11, 12

*Connelly v. Comptroller of the Currency*,
876 F.2d 1209 (5th Cir.1989) ....................16

*Estate of Davis*,
406 F.3d at 381 ....................13

*DePree v. Saunders*,
588 F.3d 282 (5th Cir.2009) ....................17

*Esteves v. Brock*,
106 F.3d 674 (5th Cir. 1997) ....................18

*Ferrer v. Chevron Corp.*,
484 F.3d776 (5th Cir. 2007) ....................7

*Garcia v. Reeves Cnty., Tex.*,
32 F.3d 200 (5th Cir.1994) ....................17

*Geter v. Fortenberry*,
849 F.2d 1550 (5th Cir.1988) ....................................................................................16

*Imbler v. Pachtman*,
424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)..........................................................18

*Jackson v. Duff*,
161 F.4th 343 (5th Cir. 2025) ....................................................................................13

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) ....................................................................................11

*Louis v. Delgado*,
163 F.4th 926 (5th Cir. 2026) ....................................................................................19

*Loupe v. O'Bannon*,
824 F.3d 534 (5th Cir. 2016) ....................................................................................18, 19

*Meadours v. Ermel*,
483 F.3d 417 (5th Cir. 2007) ....................................................................................13

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) ....................................................................................20

*Nieves v. Bartlett*,
587 U.S. 391 (2019)....................................................................................11, 12

*Paul v. Davis*,
424 U.S. 693 (1976)....................................................................................15, 16

*Phillips v. Vandygriff*,
711 F.2d 1217 (5th Cir. 1983) ....................................................................................16

*Pierce* v. *Smith*,
117 F.3d 866 (5th Cir. 1997) ....................................................................................20

*R2 Investments LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ....................................................................................10

*Reitz v. Woods*,
85 F.4th 780 (5th Cir. 2023) ....................................................................................11

*Rykers v. Alford*,
832 F.2d 895 (5th Cir. 1987) ....................................................................................19

*Schultea v. Wood*,
47 F.3d 1427 (5th Cir. 1995) (En Banc) ....................................................................................19

*Singleton v. Cannizzaro*,
956 F.3d 773 (5th Cir. 2020) ....................................................18

*Smith v. Heap*,
31 F.4th 905 (5th Cir. 2022) ....................................................10

*Templeton v. Jarmillo*,
28 F.4th 618 (5th Cir. 2022) ....................................................19

*Terry v. Ohio*,
392 U.S. 1 ....................................................14

*The Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972)....................................................15, 17

*Thompkins v. Belt*,
828 F.2d 298 (5th Cir. 1987) ....................................................13

*Thompson v. Steele*,
709 F.2d 381 (5th Cir. 1983) ....................................................13

*Tinoco v. City of Hidalgo, Tex.*,
No. 23-40543, 2025 WL 655079 (5th Cir. Feb. 28, 2025)(unpublished) ....................................................14

*Vulcan Materials Co. v. City of Tehuacana*,
238 F.3d 382 (5th Cir. 2001) ....................................................10

*Zorn v. Linton*,
146 S. Ct. 926 (2026)....................................................20

**Statutes**

42 U.S.C. § 1983.................................................... *passim*

Tex. Gov't Code 572.031....................................................9

Texas Public Information Act.................................................... *passim*

**Other Authorities**

First Amendment ....................................................10, 11

Fourth Amendment....................................................13, 14

Fourteenth Amendment ....................................................15, 16, 17

https://www.81stda.org/ (last visited 7/5/26)....................................................12

## SUMMARY OF THE ARGUMENT

Plaintiffs fail to state a claim upon which relief may be granted, both generally and in light of the presumption of District Attorney Louis' absolute, or at least qualified, immunity from suit. To be sure, Plaintiffs were not criminally charged, indicted, seized, arrested, or even detained for any criminal conduct and Plaintiffs fail to allege any facts to state any claimed violation of their federal rights. Plaintiffs' paranoid and conclusory assertions from wholly unidentified "internal sources" that assert, without any factual basis, that District Attorney Louis was "conducting some manner of investigation as to Caldwell," are not *facts* which show District Attorney Louis acted outside the scope of her duties as the district attorney, or facts which show District Attorney Louis participated in the Plaintiff's prosecution following her recusal. These purely conclusory allegations certainly fail to overcome the presumption of District Attorney Louis's absolute or at least qualified immunity.

Fatal to Plaintiffs' claims is the fact a special appointed prosecutor from Comal County, independent of District Attorney Louis, found probable cause to believe that Plaintiffs Caldwell and Olivarez violated Tex. Penal Code. § 39.03 by engaging in official misconduct. But that independent special prosecutor utilized his prosecutorial discretion to decline to bring criminal prosecutions. So, as much as Plaintiffs can ultimately claim is that they were investigated by an independent prosecutor whose investigation revealed there was probable cause to be believe Plaintiffs committed one or more crimes, but that the independent prosecutor chose not to prosecute. Like many criminal suspects who may not be convicted of their crimes, Plaintiffs mistakenly think these circumstances are somehow unconstitutional when, in fact, the few actual facts Plaintiffs allege show the investigation of crime and exercise of prosecutorial discretion – by an independent prosecutor – worked exactly the way it was supposed to. Lastly, Plaintiffs' qualms

with District Attorney Louis' alleged decision to decline to prosecute other, unidentified individuals, who Caldwell personally believed to be guilty of some unidentified crime not only points up an incredible irony but also finds no basis in the law in light of the same prosecutorial discretion that allowed Plaintiffs to avoid prosecution for their own crimes.

PLAINTIFF'S PLEADING ALLEGATIONS

1. Plaintiff Thomas Caldwell is the former County Attorney of Wilson County, Texas until December 31, 2024, when Caldwell ran but lost as a candidate for the 81st Judicial District Attorney's office against District Attorney Audrey Gossett Louis-the incumbent and winner of that election. ECF No. 1 at ¶¶1-18, 123.

2. Plaintiff Joshua Olivarez served under Caldwell as the Wilson County Attorney's Office chief investigator for six years. *Id* at ¶¶19-39.

3. Before Caldwell began his unsuccessful campaign for the 81st DA seat and still occupied the Wilson County Attorney office in June 2023, Caldwell's office received multiple complaints submitted by unidentified individuals that one or more unidentified individuals in the 81st district attorney's office had obtained access to unidentified individuals' cell phone information without a warrant or subpoena and other unspecified access to equally unidentified information which Plaintiffs claim – albeit without any facts - tied in some completely unspecified way to District Attorney Louis. *Id* at ¶¶40-41.

4. In May 2023, Caldwell sent District Attorney Louis materials Caldwell previously provided to the Texas Rangers concerning an unspecified complaint against District Attorney Louis. *Id* at ¶¶42-48. On June 6, 2023, an unidentified individual was arrested based on an arrest warrant obtained by the Wilson County Attorney's office as referred by the Texas Ethics Commission, which prompted Caldwell's investigator to request unidentified records and

unidentified body worn camera recordings of the arrest in response to which Lt. Dubs of the Wilson County Sherriff's Office responded that no such recording existed. ECF No. 1, at ¶¶48-55.

5. Caldwell also claims he learned of several sexual harassment complaints asserted by unidentified Wilson County employees against other equally unidentified Wilson County employees and Lt. Dubs. Mr. Caldwell claims he asked Wilson County Sheriff James Stewart and Wilson County Chief Deputy Clinton Garza about the unspecified sexual harassment complaints. *Id* at ¶¶56-65.

6. Plaintiffs allege that Sheriff Wilson and Deputy Garza sought unspecified guidance regarding matters which Plaintiffs do not identify, from District Attorney Louis. *Id* at ¶¶66-69. Caldwell copied District Attorney Louis on emails which do not identify any substance and District Attorney Louis did not meet with Caldwell after an initial attempt through an assistant. *Id*. at ¶68.

7. On or about June 27 or 28, 2023, Caldwell initiated a criminal prosecution and arrest of Lt. Dubs for an unidentified criminal offense from which Mr. Caldwell later recused the Wilson County Attorney's office, as the arresting agency, of prosecuting. *Id* at ¶¶69-74. Mr. Caldwell, believes District Attorney Louis should have inquired with the recused Mr. Caldwell instead of with the Court as to when a special prosecutor would be appointed in the case against Lt. Dubbs. *Id* at ¶¶75.

8. On July 3rd and 11th of 2023, Mr. Caldwell informed Sheriff Stewart and District Attorney Louis of unspecified misconduct in Sheriff Stewart's office and, although Mr. Caldwell initiated that conversation with District Attorney Louis, Mr. Caldwell asserted that District Attorney Louis should not be participating in the conversation. *Id* at ¶76.

9. Plaintiffs claim – again without any facts – that other unspecified individuals reported that District Attorney Louis was advising equally unidentified individuals within the Sherriff's office

about how to respond to Mr. Caldwell and other county officials regarding matters Mr. Caldwell completely fails to identify. *Id* at ¶77-78.

10. Plaintiffs conclusorily assert that, at some time Plaintiffs do not identify, District Attorney Louis was conducting a criminal investigation into Mr. Caldwell using means Mr. Caldwell does not identify, for some sort of official oppression. *Id* at ¶80.

11. In response to a public information request from the San Antonio Express news which sought communications between Mr. Caldwell and members of the Sheriff's office, the IT staff member from District Attorney Louis' office asked a staff member from Mr. Caldwell's office to gather responsive documents after which District Attorney Louis allegedly did not respond to Mr. Caldwell's correspondence. ECF No 1 at ¶¶83-86.

12. Mr. Caldwell sought unspecified assistance from the office of the Attorney General for some relief he also does not identified in connection with which Mr. Caldwell claims to have provided unidentified evidence to an Assistant Attorney General who worked in the criminal prosecution division, who Plaintiffs claim ultimately declined Mr. Caldwell's unspecified request for assistance. ECF No. 1 at ¶89-90.

13. Plaintiffs claim District Attorney Louis received two separate complaints, one from Lt. Dubs and another from a former deputy. But, like so many other vague and unspecified general grievances listed in their complaint, Plaintiffs do not identify the substance of those complaints or the significance to any purported claim in this case. *Id* at ¶¶93.

14. District Attorney Louis allegedly requested assistance from the office of the Texas Attorney General to investigate potential offenses surrounding an allegation which Plaintiffs do not specify and she allegedly offered to prosecute any unlawful conduct found in the investigation. *Id* at ¶94.

15. The Texas Office of the Attorney General ("OAG") assigned OAG Investigator Dickerman to investigate whether Mr. Caldwell had probable cause to arrest Lt. Dubs, which Mr. Caldwell subjectively believes was not a meaningful investigation based on only vague assertions of unspecified events supposedly reported by unspecified individuals to Mr. Caldwell. *Id* at ¶¶95-105. Mr. Caldwell is critical of Dickerman's report, the findings of which Mr. Caldwell fails to identify. *Id* at ¶¶105-113. Plaintiffs also complain that nobody paid attention to Mr. Caldwell's report regarding equal employment violations. *Id* at ¶114.

16. In November 2023, Mr. Caldwell allegedly learned that District Attorney Louis had initiated a grand jury investigation into Mr. Caldwell's potential criminal conduct that Mr. Caldwell does not identify. ECF No 1 at ¶¶115. The following month, Mr. Caldwell announced his candidacy against District Attorney Louis, prompting District Attorney Louis to recuse herself from any investigation involving Mr. Caldwell as early as December 2023. *Id* at ¶¶116-117.

17. A criminal assistant district attorney from Comal County, Texas was appointed to handle two complaints of official oppression against Mr. Caldwell. *Id* at ¶118.

18. Mr. Caldwell lost the election after which Mr. Caldwell claims to have continued to receive complaints regarding public corruption and other unspecified misconduct which were investigated by the Texas Rangers and the FBI. Mr. Caldwell was allegedly unhappy with those independent agencies' alleged refusal to engage with Mr. Caldwell about Mr. Caldwell's unspecified complaints of the 81st District Attorney's office and the Wilson County Sheriff's office. *Id* at ¶¶119-130. The Texas Ranger and FBI agent allegedly ignored Mr. Caldwell's unspecified evidence that Mr. Caldwell, now a private citizen having lost the election, had provided to those agents. ECF No. 1 at ¶131-133.

19. Plaintiff Olivarez eventually left the Wilson County Attorney's office in December 2024 and joined the Bee County Sheriff's office, but Olivarez later resigned that job after Bee County officials learned of an ongoing grand jury investigation by special prosecutors from Comal County into Olivarez's conduct. *Id* at ¶¶134-145.

20. The Comal County special prosecutors did not file criminal charges and no grand jury returned a true bill of indict against Mr. Caldwell or Olivarez. *Id* at ¶146-155.

21. Comal County chief felony prosecutor Sammy McCrary signed two non-prosecution affidavits in which Mr. McCrary stated that;

> [b]ased on my review of Sgt. Dickerman's investigation along with all the supporting documents such as witness statements and emails, there is certainly probable cause to believe that members of the Wilson County Attorney's office committed both criminal offenses and ethical violations in relation to the arrest of Joseph Dubs….Thomas Caldwell is the person most responsible for the Dubbs arrest.

ECF No. 1 at ¶¶156-161. That is that Plaintiff Caldwell had abused the authority of his elected office to commit a crime. Indeed, Chief Prosecutor McCrary made clear that "probable cause existed to believe Thomas Caldwell abused his public office as County Attorney," even though Mr. McCrary believed the state might not meet its burden of proof of beyond a reasonable doubt to convict Mr. Caldwell of his crime. *Id* at ¶162.

22. Lastly, Mr. Caldwell states his personal dissatisfaction that no law enforcement agency, including the, DOJ, FBI, or Texas Rangers addressed Mr. Caldwell's concerns of completely unspecified criminal conduct within the 81st District Attorney's office and the Wilson County Sheriff's office. *Id* at ¶¶163-266.

23. In short, but through repeatedly vague and conclusory assertions, unadorned by facts, Plaintiffs make clear their laundry list of gripes about the 81st District Attorney's office and the

Wilson County Sheriff's office, but they never identify any unconstitutional conduct by any defendant, let alone any conduct not protected by absolute or at least qualified immunity.

**Plaintiffs Attach Documents To Their Complaint Which Supplement Their Pleading**

24. Plaintiffs submit 12 Exhibits which contain over 150 pgs. of correspondence from public officials, publicly filed documents, and emails to which Plaintiffs makes references throughout their complaint. In so doing, Plaintiffs have invited the Court to review the documents which supplement their pleading allegations. "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp*., 484 F.3d776, 780 (5th Cir. 2007). But, to the extent the documents are relevant at all – many seem to have been included only in a feeble attempt to embarrass one or more Defendant – the documents actually belie Plaintiffs' scant factual allegations.

25. For example, although the Plaintiffs complain the Wilson County Sheriff conferred District Attorney Louis' office, and not Mr. Caldwell's office, for legal advice – most assuredly not a constitutional violation at all – the documents Plaintiffs attach explain the situation clearly, showing that Mr. Caldwell's *refusal to provide the Sheriff's Office legal advice,* despite being the County's legal officer, resulted in the contact with district attorney's office Plaintiffs somehow think was improper. The documents show the Wilson County Sheriff's office received a public information request from the San Antonio Express News requesting emails between Mr. Caldwell and members of the Wilson County Sheriff's office. [ECF No.1-2 at p.15]. Those documents revealed that Mr. Caldwell's office notified the Sheriff's office the County would not represent the Sheriff's office in response to that request after which the Sheriff's Office requested assistance on the legal issue from the 81st District Attorney's office. *Id* at p. 18 (mail dated 8/9/23 from Sheriff

Stewart to Mr. Caldwell). Sheriff Stewart sought assistance from the 81st district attorney's office and the 81st district attorney's office agreed to handle the public information request, *because the County Attorney refused to do so.* The documents show the 81st district attorney's office IT personnel emailed the request to Mr. Caldwell's office of the County attorney, which Mr. Caldwell still occupied. *Id*. Mr. Caldwell was unhappy that Mr. Caldwell was out of the loop, Mr. Caldwell admonished the IT employee, and Mr. Caldwell refused to disclose any items subject the request. *Id*.

26. The documents also reveal that, on September 29, 2023, District Attorney Louis informed the Texas Office of the Attorney General that District Attorney Louis' office received two complaints alleging Wilson County Attorney Plaintiff Tom Caldwell committed the offense of Official Oppression. ECF No. 1-2 at p.43. A Wilson County Sheriff's lieutenant submitted the first complaint to District Attorney Louis' office which alleged the Sheriff's lieutenant was unlawfully arrested by Mr. Caldwell's investigator, Plaintiff Olivarez, for the crime of False statement to a police officer. *Id*. District Attorney Louis further informed the Texas OAG that the lieutenant's complaint, and a second complaint, further alleged that, despite recusing himself, Mr. Caldwell continued to use Mr. Caldwell's position to attempt to further investigate the matter as and that Mr. Caldwell threatened the Sheriff with criminal prosecution if the Sheriff did not turn over evidence Mr. Caldwell believed the Sheriff possessed about the complainant. *Id*. District Attorney Louis requested the Texas OAG investigate the matter and District Attorney Louis offered to prosecute any criminal charges that resulted from the investigation. *Id*.

27. The records also show District Attorney Louis' *non-involvement* after her office filed a motion to recuse herself and her office from prosecuting the two complaints of official oppression against Mr. Caldwell which the court approved on December 8, 2023. ECF NO. 1-2 at p.45. On

December 14, 2023, the court appointed Comal County District Attorney Jennifer Tharp, or her assistant county attorneys, to perform the duties in lieu of the local district attorney regarding the official oppression complaints against Mr. Caldwell and Olivarez. *Id* at p. 46. Comal County Chief Felony Prosecutor, Sammy McCrary authored an affidavit of non-prosecution in favor of Messrs. Caldwell and Olivarez, summarizing TX Attorney General investigator Greg Dickerman's report into the complaints. ECF No. 1-2 at pp. 63-94, 96-100.

28. In short, after reviewing Investigator Dickerman's investigation report, Mr. McCrary believed Investigator Dickerman provided enough evidence to show probable cause that Messrs. Caldwell and Olivarez committed the offense of official oppression as it relates to the arrest of Lieutenant Dubs, but McCrary declined to prosecute Mr. Caldwell for other reasons including McCrary's belief the State would be unable to meet its higher burden of proof of beyond a reasonable doubt to convict Messrs. Caldwell and Olivarez. *Id*. In a separate report, regarding the arrest of Alena Berlanga, Mr. McCrary found that Olivarez appropriately arrested Berlanga based on probable cause that Berlanga, a political candidate, failed to file a financial statement required by Tex. Gov't Code 572.031. ECF No. 1-2 at p.98. Comal County district attorney Tharp later sent correspondence to Judge Wilson, adopting the findings in Mr. McCrary's non-prosecution affidavit, *Id* at p. 102. District Attorney Tharp later filed a grievance with the Texas State Bar against Mr. Caldwell for Mr. Caldwell's conduct regarding the arrest of Lt. Dubbs, which district attorney Tharp's office found reason to believe that Mr. Caldwell violated the Texas Disciplinary Rules of Professional Conduct regarding special duties as a prosecutor. ECF No. 1-2 at p.159-162. All of these actions, many about which Plaintiffs complain, occurred without any participation of Defendant, District Attorney Louis.

## PLEADING STANDARD

29. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court directed reviewing courts to perform "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Under the procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. Merely listing generalized legal standards, without providing substantive factual matter to support each element of a claim does not state a claim. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). Courts need not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (*quoting Southland Sec. Corp. v. Inspire Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004). "[P]leaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice." *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022).

## ARGUMENT & AUTHORITIES

### I. Plaintiffs fail to plead facts which state a claim under the First Amendment for an alleged "retaliatory investigation" based on a citizen's allegation to the district attorney's office that Mr. Caldwell & Olivarez abused their official position to unlawfully arrest an innocent person.

30. The Court's analysis of the instant case is well-informed by the Fifth Circuit's affirmance of a dismissal in a similar, albeit much more well-defined fact scenario, in *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) in which the Fifth Circuit started its analysis by "first emphasiz[ing] what did not happen: [Plaintiffs] w[ere] never arrested, indicted… Nor [was either Plaintiff]

formally reprimanded." *Colson,* at 511. Here, just as in *Colson,* "[o]n the contrary, [Plaintiffs] ha[ve] alleged only that [Plaintiffs] w[ere] the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, **are not actionable under [Fifth Circuit] First Amendment retaliation jurisprudence**." *Id* (emphasis added).

31. While the holding in *Colson* forecloses Plaintiffs' claims here as simply non-existent as a matter of law, at the very least, the holding demonstrates that, even if the Court departs from *Colson's* controlling authority, the law was not clearly established at any time relevant to this suit that the types of allegations the Plaintiffs make were actionable under the First Amendment. In fact, "[f]ollowing *Colson*, [the Fifth Circuit] ha[s] held that being subjected to and defending oneself from an investigation while suffering its concomitant stress does not satisfy the injury requirement" of a First Amendment claim. *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (collecting cases).

32. To establish a First Amendment retaliation claim, a plaintiff must show that: "(1) [he was] engaged in a constitutionally protected activity, (2) the defendant['s] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant['s] adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury'" which Plaintiffs cannot do here. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

33. At most, Plaintiff Caldwell asserts he engaged in the "protected activity" of informing the Wilson County Sheriff of alleged misconduct within the Wilson County Sheriff's office relating to sexual harassment complaints between employees of the Wilson County Sheriff's office,

sometime in June 2023 and that the Wilson County Sheriff conferred with District Attorney Louis of the sexual harassment complaints. ECF No. 1, at ¶¶56-70, 274. Plaintiff Caldwell's general unhappiness that the Sheriff may have conferred with the local district attorney on a legal matter instead of County Attorney Caldwell may have hurt Mr. Caldwell's feelings, but that is not even remotely an "adverse action that would chill a person of ordinary firmness from continuing to engage in that activity" necessary for this claim. *Nieves* , 587 U.S. at 398. Simply put, and even to a much lesser degree than the Plaintiff in *Colson,* neither Plaintiff alleges any facts at all to identify any "injury" stemming from any alleged exercise of free speech.

34. Indeed, other than personal pride, Mr. Caldwell's complaint has no basis as at all because the elected district attorney for the 81st District of Texas, the jurisdiction of which includes Wilson County,[1] where the purported sexual harassment complaints occurred, and which District Attorney Louis' office is charged by Texas statute to prosecute should any complaint rise to the level of a criminal offense. See, Tex. Code Crim. Pro. Ann. art. 2A.102.[2] All facts which surely the former county attorney of Wilson County should know but which Plaintiffs omit.

35. Plaintiffs conclusory assertions that District Attorney Louis somehow— Plaintiffs fail to allege any facts—steered investigative resources from Mr. Caldwell's investigation of the sexual harassment complaints or attempted to obtain Mr. Caldwell's communications based on a Texas Public Information Act request fair no better to show an adverse action against any Defendant, and certainly not individually as Mr. Caldwell complains of actions directed at his office, not him

---

[1] Under Fed. R. Evid. 201, the Court may take judicial notice of the Texas Counties which fall under the jurisdiction of the 81st District Attorney's office, which include Wilson, Atascosa, Frio, Karnes, and LaSalle counties, which are generally known within the trial court's territorial jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* https://www.81stda.org/ (last visited 7/5/26).

[2] "Each district attorney shall represent the state in all criminal cases in the district courts of the attorney's district and in appeals from those cases."

personally. Moreover, such inchoate assertions are belied by the documents Plaintiffs attach to and make a part of their complaint. ECF No 1-2, at pp. 12-15. Even assuming arguendo the 81st district attorney's IT employee should not have asked Mr. Caldwell's *office* for the requested information, Plaintiffs cannot state a claim against District Attorney Louis based on a theory of vicarious or *respondeat superior* liability. *See Estate of Davis*, 406 F.3d at 381; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Simply put, Not only is the Public Information Act request, directed to the office of the County Attorney, not an injury to any individual plaintiff, Plaintiffs fail to allege facts which show District Attorney Louis had personal involvement with the PIA request or its handling other than Plaintiff Mr. Caldwell copying District Attorney Louis in later emails.

36. As the Court is well-aware, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Meadours v. Ermel*, 483 F.3d 417, 421-422 (5th Cir. 2007). "After all, in a § 1983 suit, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Jackson v. Duff*, 161 F.4th 343, 348 (5th Cir. 2025) (quoting, *Iqbal*, 556 U.S. at 676). None of these scant facts, even if true, make out a factual scenario in which District Attorney Louis personally violated any Plaintiff's rights.

## II. Plaintiff fails to allege facts which show a Fourth Amendment claim.

### A. Plaintiffs fail to allege facts which show District Attorney Louis personally took actions against Plaintiffs which constitute an unlawful search or seizure required for this claim. None.

37. While entirely unclear, Plaintiffs seem to assert a Fourth Amendment claim which Plaintiffs assert as "Fabrication of Evidence/Malicious Prosecution-Type Claim)" ECF No. 1 at p.74. This Fourth Amendment "type-claim" is not a claim under the scant facts alleged. Not even close, and certainly not as to District Attorney Louis.

38. The Court's "first task is to establish at what point in this encounter the Fourth Amendment becomes relevant. That is, [the Court] must decide whether and when [District Attorney Louis] 'seized' [either Plaintiff] and whether and when [District Attorney Louis] conducted a 'search.'" *Terry v. Ohio*, 392 U.S. 1, 16(1968). Plaintiffs allege no facts which show either a "search" much less a "seizure" within the meaning of the Fourth Amendment and this claim fails for this reason. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991); *see also Brower v. Inyo County*, 489 U.S. 593, 596 (1989).

39. Lastly, "*Franks* liability extends to those who deliberately or recklessly provide false information for use in an affidavit." *Tinoco v. City of Hidalgo, Tex.*, No. 23-40543, 2025 WL 655079, at *4 (5th Cir. Feb. 28, 2025)(unpublished). The problem is, Plaintiff does not allege facts which show the existence of a warrant affidavit much less an arrest based on that tainted affidavit for a claim under *Franks*.

### B. Plaintiffs fail to allege facts which show a claim of malicious prosecution.

40. The Fifth Circuit has outlined the following elements necessary to prove a malicious prosecution claim:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages
>
> *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

41. "[P]arties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove the above elements, **in addition to the threshold element of an unlawful Fourth Amendment seizure**." Plaintiffs claims fail for the reason above which show that Plaintiffs fail to allege facts which show any Plaintiff was "seized" as recognized under the Fourth Amendment.

42. Even *arguendo* if a seizure occurred, which it did not, judicial records show that on December 8, 2023, a Court approved District Attorney Louis' motion to recuse herself and the 81st district attorney's office from any involvement which pertained to the investigation of whether Plaintiffs committed the crime of official oppression. ECF No. 1-2 at p.45. Plaintiffs fail to allege facts which show District Attorney Louis participated in any way after December 8, 2023, much less the absence of probable cause , which a special prosecutor McCrary found when he stated "there is certainly probable cause to believe that members of the Wilson County Attorney's office committed both criminal offenses and ethical violations in relation to the arrest of Joseph Dubs….Thomas Caldwell is the person most responsible for the Dubbs arrest." ECF No. 1 at ¶¶156-161. That plaintiff, like any guilty criminal, disagrees with the finding of probable cause is not a fact which eviscerates probable cause necessary for this claim.

## III. Plaintiffs fail to allege facts to state a claim under the Fourteenth Amendment

### A. Plaintiffs do not allege facts which show a Fourteenth Amendment "stigma plus" claim

43. "[T]he range of interests protected by procedural due process is not infinite." *Paul v. Davis*, 424 U.S. 693, 709 (1976) (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972)). Substantive due process claims for what Plaintiffs characterize as defamation are generally not recognized under federal constitutional law. *Paul*, 424 U.S. at 694 (holding that defamation, standing alone and apart from any other governmental action, does not state a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment). There is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty" within the meaning of the Due Process Clause of the Fourteenth Amendment. *Id*. at 702. "[R]eputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' nor 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id*. at 701.

44. Plaintiff Caldwell cannot plausibly claim any act by District Attorney Louis caused a deprivation to Mr. Caldwell's employment rights. Mr. Caldwell concedes he "decided to not run for reelection as the Wilson County Attorney and to instead run against [district attorney] Louis for her office, the 81st Judicial District Attorney." ECF No. 1 at ¶115. The people of the 81st Judicial District did not vote for Mr. Caldwell, and as a result, Mr. Caldwell was out of a job. *Id* at ¶123. That the voters forced Mr. Caldwell into private practice is not related to any action District Attorney Louis initiated, although Plaintiff Mr. Caldwell fails to allege facts of which. *Id*. Plaintiff Olivarez alleges no facts which show District Attorney Louis took any action which affected Olivarez's employment, much less Olivarez's decision to voluntarily resign. ECF No. 1 at ¶¶134-139.

45. The Fifth Circuit has applied *Paul* by requiring a claimant to show a stigma plus an infringement of another interest. *See*, *e.g.*, *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir.1989); *Geter v. Fortenberry*, 849 F.2d 1550, 1557 (5th Cir.1988); *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983). To fulfill the stigma aspect of the equation, a claimant must "prove that the stigma was caused by a false communication." *Codd v. Velger*, 429 U.S. 624 (1977). The Fifth Circuit has found sufficient "stigma" only in concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant, which District Attorney Louis could not have done given her recusal from the matter, and of which a separate prosecutor found probable cause. *See Connelly*, 876 F.2d at 1215. Plaintiffs do not allege facts showing a Fourteenth Amendment claim, much less show that District Attorney Louis violated clearly established law by executing the duties of her office in response to a complaint that Plaintiffs violated Texas law.

**B. Plaintiffs fail to show facts which show a Fourteenth Amendment Due Process violation.**

46. It is well established that "[t]he threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest. Without such an interest, no right to due process accrues." *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir.2009) (citations and internal quotation marks omitted)."The Constitution does not create property interests ... and [a plaintiff must] therefore look to [state] law for the creation of a property interest that will support [her] claim to due process rights." *Garcia v. Reeves Cnty., Tex.,* 32 F.3d 200, 203 (5th Cir.1994) (citation omitted); *see Roth,* 408 U.S. at 577 ("Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules....").

47. As *supra*, Mr. Caldwell concedes he voluntarily "decided to not run for reelection as the Wilson County Attorney and to instead run against [district attorney] Louis for her office, the 81st Judicial District Attorney." ECF No. 1 at ¶115. He lost. Mr. Caldwell cannot plausibly claim, although he alleges no facts, that he had a legally cognizable property interest in public elected office, one of which he lost and the other, he abandoned to make his unsuccessful campaign. *Id* at ¶123. At best, but still unsuccessful for this claim, Plaintiff Caldwell alleges district attorney Tharp initiated a grievance with the State Bar of Texas against Mr. Caldwell which Mr. Caldwell asserts hurts his private practice, but Plaintiff does not allege facts which show District Attorney Louis participated in that decision and this claim fails for that reason. Plaintiff Olivarez similarly fails to allege facts which show any personal involvement of District Attorney Louis in "forcing Olivarez to retire" to state a claim against District Attorney Louis.

## IV. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis' immunity

### A. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis' absolute immunity.

48. "The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020). "When determining who is entitled to absolute immunity, the [Supreme Court] has taken what has been termed a 'functional approach.'" *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016). Adhering to that functional approach, the Fifth Circuit has "held that conduct protected by absolute immunity 'is not limited 'only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.'" *Cannizzaro*, 956 F.3d at 780 (citing *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (per curiam)). "Thus, prosecutors are absolutely immune even for '[w]ilful or malicious prosecutorial misconduct . . . if it occurs in the exercise of their advocatory function.'" *Id*. A prosecutor enjoys absolute immunity from personal liability for damages under 42 U.S.C. § 1983 for actions "intimately associated with the judicial phase of the criminal process." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997). Plaintiff alleges no such facts of prosecutorial misconduct of District Attorney Louis to eviscerate absolute immunity.

49. At best, plaintiffs make the conclusory assertion that District Attorney Louis was "conducting some manner of investigation as to Mr. Caldwell" because "[Sheriff] Stewart personally was taking information to Louis for an official-oppression case against Caldwell" before Louis received the official complaints of official misconduct. ECF No. 80. But, "[u]nder the functional approach, a prosecutor is entitled to absolute immunity when, for example, she

receives information regarding the violation of criminal law and subsequently obtains an arrest warrant [which here did not even occur].” *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016). “Prosecutors enjoy absolute immunity for acts taken to initiate prosecution” and Plaintiffs do not allege District Attorney Louis took facts which fall outside the scope of her duties as a prosecutor. *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987). Even less so for the time period *after* District Attorney Louis recused herself and her office which Plaintiffs fail to allege facts which show any participation.

**B. Plaintiffs fail to allege facts which overcome the presumption of District Attorney Louis’ qualified immunity.**

50. To state a plausible claim against a [public official] who has asserted qualified immunity, a plaintiff must “plead more than conclusions” and allege facts that overcome qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1430-34 (5th Cir. 1995) (En Banc). When an officer raises immunity, “the complaint must state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.” *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Backe v. LeBlanc*, 691 F.3d 645, 649 (5th Cir. 2012). “To overcome the [public official’s] qualified immunity defense, [Plaintiffs] must allege facts showing that the officers (1) violated a statutory or constitutional right, and (2) that the right was ‘clearly established’ at the time of the challenged conduct.” *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

51. The burden of establishing these factors rests solely on the plaintiff. *Louis v. Delgado*, 163 F.4th 926, 930 (5th Cir. 2026) (citing *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)). “A court may assess the two qualified-immunity prongs in either order, and it need not address both prongs if one is dispositive.” *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

52. "The first question is whether the officer violated a constitutional right," which neither officer did as explained *supra*. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "The second question—whether [District Attorney Louis] violated clearly established law—is a **doozy**." *Id.* The second step of the analysis "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place." *Pierce* v. *Smith*, 117 F.3d 866, 882 n.5 (5th Cir. 1997). "In short, [District Attorney Louis] receive qualified immunity unless [she] could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citing *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). Plaintiffs offer no such facts which overcome the presumption of District Attorney Louis' qualified immunity.

Respectfully submitted,

*/s/ William S. Helfand*
William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
Randy E. Lopez
Texas Bar No. 24091829

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
ATTORNEYS FOR DEFENDANT
DISTRICT ATTORNEY AUDREY GOSSETT LOUIS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on July 6, 2026.

/s/ *William S. Helfand*